# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL SMITH, individually and on behalf of a class of similarly situated individuals,<br><br>    Plaintiff,<br><br>  vs.<br><br>MICROSOFT CORPORATION, a Washington corporation,<br><br>    Defendant. | CASE NO. 11-CV-1958 JLS (BGS)<br><br>**ORDER: DENYING MOTION TO DISMISS**<br><br>(ECF No. 6) |

Presently before the Court is Defendant Microsoft Corporation's (Microsoft) motion to dismiss Plaintiff Neil Smith's (Smith) Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing. (MTD, ECF No. 6.) Also before the Court are Smith's response in opposition (Opp'n, ECF No. 8), and Microsoft's reply (Reply, ECF No. 9).[1] Having considered the parties' arguments and the law, the Court **DENIES** Microsoft's motion.

## BACKGROUND[2]

Smith, a resident of Illinois, brought this putative class action against Microsoft, a Washington corporation, for sending unauthorized text messages promoting Microsoft's new Xbox

---

[1] Smith also filed two Notices of Supplemental Authority (ECF Nos. 13, 14) to inform the Court of recent Supreme Court rulings in *First American Fin. Corp. v. Edwards*, — U.S. —, 131 S.Ct. 3022 (June 20, 2011), dismissing certiorari as improvidently granted in *Edwards v. First American Corp.*, 610 F.3d 514 (9th Cir. 2010), and *Mims v. Arrow Financial Servs., LLC*, 565 U.S. —, 132 S.Ct. 740 (Jan. 18, 2012).

[2] Unless otherwise noted, all facts in the Background section are taken from the Complaint. (Compl., ECF No. 1.)

1  video game console to cellular telephones in violation of the Telephone Consumer Protection Act
2  of 1991 (TCPA or Act), 47 U.S.C. § 227.  Smith received one such message on or about
3  September 12, 2008.  The "from" field of the message identified SMS short code "88202."  The
4  body of the text message read:

> FREE XBOX GAMES CONTENT!  HTTP://XBOX.MOBI/SM1.
> PERSONALIZE YOUR PHONE WITH RINGTONES,
> WALLPAPER, TRAILERS AND GAME UPDATES.
> TO OPT-OUT REPLY END.

Microsoft and its agents apparently used one or more short codes to transmit this and other similar text messages to thousands of consumers' cellular telephones *en masse* without the prior express consent of those individuals, including Smith, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).

Smith brings this claim on behalf of himself and a class of others similarly situated, defining the class as "all persons in the United States and its Territories who received one or more unauthorized text message advertisements on behalf of Microsoft."  Allegedly, some members of the class suffered actual damages by having to pay their respective wireless carriers a fee for the receipt of the text message.  Although omitting information about his own wireless plan, Smith states that "consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam."  Further, Microsoft has caused all members of the class to suffer actual "harm and damages" by subjecting them to "the aggravation that necessarily accompanies wireless spam."  Consequently, Smith seeks an injunction requiring Microsoft to cease "all wireless spam activities" and an award of actual and statutory damages to the class members, together with costs and attorneys' fees.  Smith requests a minimum of $500.00 for each violation of the Act, up to treble damages.

**LEGAL STANDARD**

Federal courts are courts of limited jurisdiction, and as such have an obligation to dismiss claims for which they lack subject-matter jurisdiction.  *Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983).  Because the issue of standing pertains to the subject-matter jurisdiction of a federal court, motions raising lack of standing are properly brought under Federal Rule of Civil

1  Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The plaintiff bears the
2  burden of establishing he has standing to bring the claims asserted. *Takhar v. Kessler*, 76 F.3d 995,
3  1000 (9th Cir. 1996); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
4  546 F.3d 981, 984 (9th Cir. 2008) ("The party asserting jurisdiction bears the burden of
5  establishing subject matter jurisdiction on a motion to dismiss for lack of subject matter
6  jurisdiction.").

7  Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for*
8  *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts
9  that the allegations contained in a complaint are insufficient on their face to invoke federal
10 jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations
11 that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Microsoft's challenge is
12 facial because it disputes whether Smith's alleged harm is sufficiently particularized to confer
13 Article III standing. Microsoft does not rely upon extrinsic evidence, but instead relies only on the
14 pleadings. *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n. 5 (11th Cir. 2003) (identifying a
15 factual attack where the jurisdictional challenge "relied on extrinsic evidence and did not assert
16 lack of subject matter jurisdiction solely on the basis of the pleadings"). To adjudicate this facial
17 challenge, the Court will assume the truth of Plaintiff's factual allegations, and draw all reasonable
18 inferences in favor of Plaintiff. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005);
19 *Safe Air for Everyone*, 373 F.3d at 1039.

20                                    **ANALYSIS**

21 **1. Article III Standing**

22  It is axiomatic that under Article III of the United States Constitution, a federal court may
23 only adjudicate an action if it constitutes a justiciable "case" or a "controversy" that has real
24 consequences for the parties. *Raines v. Byrd*, 521 U.S. 881, 818 (1997); *Lujan v. Defenders of*
25 *Wildlife*, 504 U.S. 555, 560 (1992). One of the baseline requirements for justiciability in federal
26 court is that the plaintiff have standing to assert the claims brought. *Id.; see also DaimlerChrysler*
27 *Corp. v. Cuno*, 547 U.S. 332, 342 (2006) ("Article III standing enforces the Constitution's case-or-
28 //

controversy requirement") (citations omitted). As the sole[3] proposed class representative, Smith has the burden of showing that Article III standing exists here. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011).

The essence of the standing inquiry is to determine whether the party seeking to invoke the Court's jurisdiction has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Baker v. Carr*, 369 U.S. 186, 204 (1962). Three elements form the core, essential, or unchanging part of the standing requirement, derived directly from Article III and famously articulated as follows:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-561 (internal quotations, citations and footnote omitted). This irreducible constitutional minimum, often termed "Article III standing," seeks to limit the reach of the judiciary into matters properly reserved for other branches of government and to maintain the critical balance of power at the heart of the tripartite government established by the Constitution. *See DaimlerChrysler*, 547 U.S. at 341; *see also Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474 (1982). Although the Supreme Court has noted that "the concept of 'Art. III standing' has not been defined with complete consistency," *Valley Forge*, 454 U.S. at 475, these three "bedrock" requirements of injury, causation, and redressability are uniformly essential to federal court jurisdiction. *Raines v. Byrd*, 521 U.S. at 818-20; *see also Bennett v. Spear*, 520 U.S. 154, 164-66 (1997).

Here, Microsoft objects to Smith's standing only on the basis of the injury prong. Microsoft argues that the absence of allegations that Smith was himself charged by his wireless

---

[3] In a class action, only one named plaintiff must meet the requirements of Article III standing. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).

1  carrier for the text message he received, combined with the Complaint's reliance on general
2  allegations of a "growing problem" of "wireless spam" and other non-particularized forms of
3  harm, are insufficient to establish a cognizable injury to Smith.  (MTD 5-6.)  Smith counters that
4  he suffered—and alleged—numerous sufficiently particularized injuries, including the violation of
5  various rights to privacy, the "unwanted invasion of his private property, i.e., his wireless device,"
6  the "nuisance and inconvenience" caused by receipt of the message, "the prospect of receiving
7  future wireless spam from Microsoft and its third-party agents," and the economic injury resulting
8  from the fact that he pays his wireless service in some way to receive text messages, even if he
9  does not incur a per-text fee.  (Opp'n 8.)  Smith argues these concrete injuries confer standing on
10 him to bring this claim under the TCPA, regardless of whether the TCPA itself creates an
11 independently sufficient injury.  (*Id.* at 9.)  Smith also asserts that the TCPA provides standing for
12 plaintiffs in his position even where no economic harm is alleged.  (*Id.* at 18-19.)  The Court turns
13 first to the TCPA itself.

**2.  Sufficiently Particularized Injury under the TCPA**

Where, as here, the claim asserted is based on a federal statutory cause of action, the Court's inquiry turns upon whether the statutory provision asserted in the claim "properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. at 500.  Accordingly, the Court looks to the text of the TCPA "to determine whether it prohibited [Microsoft's] conduct; if it did, then Plaintiff has demonstrated an injury sufficient to satisfy Article III." *Edwards v. First Am. Corp.*, 610 F.3d 514 (9th Cir. 2010).  As usual, the Court's inquiry into the meaning of the TCPA starts with language of the statute itself. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("[O]ur inquiry beings with the statutory text, and ends there as well if the text is unambiguous."); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-94 (9th Cir. 2009).  Fundamentally, the Court looks at the plain, ordinary meaning of words, and may also be aided by other canons of statutory interpretation. *Perrin v. United States*, 444 U.S. 37, 42 (1979).  For example, the Court should read the words of the statute "in their context and with a view to their place in the overall statutory scheme," *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *Davis v. Michigan Dep't of*

*Treasury*, 489 U.S. 803, 809 (1989)), and may also "read statutory terms in light of the purpose of the statute." *Wilderness Soc'y v. U.S. Fish & Wildlife*, 353 F.3d 1051, 1060 (9th Cir. 2003).

The TCPA provides a private right of action for claims of calls made in violation of the Act. 47 U.S.C. § 227(b)(3). Courts are authorized to award either actual damages or statutory damages of $500 per violation. *Id.* In cases of willful or knowing violations, up to treble damages may be awarded. *Id*. Of particular relevance to Smith's claim in the instant action, it is a violation of the TCPA to make certain calls "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged to make the call[.]" 47 U.S.C. § 227(b)(1)(A)(iii). As a preliminary matter, the Court notes that it includes text messages in the definition of "calls" as used in this section under the clear binding authority of *Satterfield* and the agreement of the parties. (*See* MTD 4 n.2.) Looking to the language and purpose of the TCPA, the Ninth Circuit found that the statute is silent as to whether the word "call" includes a text message, but ultimately upheld the FCC's interpretation—that text messages are a form of communication primarily between telephones encompassed by the statute—as reasonable. *Satterfield*, 569 F.3d at 954. However, whether the TCPA imposes a requirement that the injured party be charged for the call (or text message) is an issue unaddressed by the Ninth Circuit or virtually any other federal court. One of the few courts to touch on this precise issue of statutory interpretation is a court of this district, in *Gutierrez v. Barclays Group*, 2011 WL 579238 (S.D. Cal. Feb. 9, 2011). Because the Court finds Judge Sabraw's analysis in that case thorough and well-reasoned, the Court summarizes it at length below as a helpful foundation here.

Looking to the text of the TCPA quoted above, Judge Sabraw first applied the "doctrine of last antecedent," which teaches that absent some other indicia of meaning, courts ordinarily should read a limiting clause or phrase as modifying only the noun or phrase that immediately precedes it. *Id.* at *5 (citing *United States v. Hayes*, 555 U.S. 415 (2009)). "Following this doctrine, the phrase 'for which the called party is charged for the call' modifies only 'any service,' not the preceding sections of the statute." *Id.* Next, Judge Sabraw looked to other provisions of the statute, which he found supported this reading. Specifically, the TCPA authorizes the FCC to create exemptions

1  from the requirements of § 227(b)(1)(A)(iii) for "calls to a telephone number assigned to a cellular
2  telephone service that are not charged to the called party," subject to conditions necessary to
3  preserve "the privacy rights this section is intended to protect."  47 U.S.C. § 277(b)(2)(C).
4  "Clearly, if § 227(b)(1)(A)(iii) did not include 'calls to a telephone number assigned to a cellular
5  telephone service that are not charged to the called party[,]' *i.e.*, calls for which the party was not
6  charged, there would be no need for the FCC to create an exemption."[4]  *Gutierrez*, 2011 WL
7  579238, at *6.  For these reasons, Judge Sabraw concluded "Plaintiffs need not show that they
8  were charged for the calls or text messages to their cellular phones to prevail on their TCPA
9  claims."  *Id.*

10  Although *Gutierrez* reached the interpretation of the TCPA for the purpose of determining
11  the necessary elements of a claim thereunder in the context of a motion for summary judgment, the
12  same reasoning applies to the Court's present inquiry into statutory standing.  Whether a plaintiff
13  states a cognizable claim under a statute and whether those allegations are sufficient to confer
14  constitutional standing based on that statute are related, but not identical, inquiries.  It is well
15  established that a failure to adequately plead a cause of action does not ordinarily defeat federal
16  subject-matter jurisdiction.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)
17  ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is
18  proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this
19  Court, or otherwise completely devoid of merit as not to involve a federal controversy.") (internal
20  quotations marks and citation omitted).  But where both determinations require a court to
21  determine what constitutes prohibited conduct under a particular statute, the principals of statutory
22  interpretation do not change.  Indeed, when presented with challenges to a TCPA class action
23  complaint—in which the plaintiff similarly failed to allege he was charged for the call—based on
24  both lack of standing and failure to state a claim, another district court recently noted that although
25  the inquiries are not precisely identical, the same line of statutory interpretation counseled

---

[4] In so reasoning, Judge Sabraw employed another well-established canon of statutory interpretation, which seeks to give effect to every word of a statute.  *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991) ("But of course we construe statutes, where possible, so as to avoid rendering superfluous any parts thereof.").

rejecting any charge-per-message requirement in both contexts. *Kane v. Nat'l Action Fin. Servs., Inc.*, 2011 WL 6018403, at *5, 8 (E.D. Mich. Nov. 7, 2011) (citing *Gonzalez* for the proposition that the TCPA does not require plaintiffs to show they were charged for each call placed). The Court finds the reasoning of *Gutierrez* and *Kane* persuasive, and similarly holds that the TCPA, by its unambiguous terms, does not limit protection to instances in which a plaintiff is charged individually, or even incrementally, for each text message.

The legislative history and purpose of the TCPA overwhelmingly support this conclusion. In its recent decision interpreting the TCPA, the Supreme Court noted several Congressional findings that are also significant in the present context:

> "Unrestricted telemarketing," Congress determined, "can be an intrusive invasion of privacy." In particular, Congress reported, "[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." "[A]utomated or prerecorded telephone calls" made to private residences, Congress found, were rightly regarded by recipients as "an invasion of privacy."

*Mims v. Arrow Financial Servs., LLC*, 565 U.S. — , 132 S.Ct. 740, 745 (Jan. 18, 2012) (internal citations omitted) (quoting 105 Stat. 2394, note following 47 U.S.C. § 227). Similarly, in holding the TCPA applies to text messages, the Ninth Circuit elaborated that Congress enacted the statute

> in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls. The consumers complained that such calls are a "nuisance and an invasion of privacy." The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of [automatic dialing systems] to communicate with others by telephone in a manner that would be an invasion of privacy.

*Satterfield*, 569 F.3d at 954 (internal citations omitted) (quoting S.Rep. No. 102-178 (1991), *repprinted in* 1991 U.S.C.C.A.N. 1968). Applying the statutory purpose to the issue before it, the Ninth Circuit concluded that "a voice message or text message are not distinguishable in terms of being an invasion of privacy." *Id.* Interpreting this clear statutory purpose, courts faced with the issue of standing under the TCPA in different contexts have explicitly concluded that the type of plaintiffs to whom the statute is intended to grant relief has no relation to monetary harm. For example, in finding that only the "called party" has statutory standing to bring suit under the TCPA, one district court reasoned that Congress was not concerned with protecting plaintiffs who were not the intended recipients of a call and had suffered solely an economic injury. *Cellco P'ship v. Wilcrest Health Care Mgmt. Inc.*, 2012 WL 1638056, at *8 (D.N.J. May 8, 2012) ("Their

damages are not of the vexatious and intrusive nuisance nature sought to be redressed by Congress in enacting the TCPA, but rather are indirect, economic, and inherent to their business.").

Accordingly, based on the plain language of the TCPA and supported by the legislative history as set forth above, the Court finds that by alleging he received a text message in violation of the TCPA, Smith has established a particularized injury in satisfaction of Article III premised on the invasion of his privacy, even absent any economic harm. Courts interpreting other federal statutes aimed at curbing invasions of individual privacy with similarly broad private rights of action have arrived at the same conclusion. *See, e.g.*, *In re iPhone Application Litigation*, 2012 WL 2126351, at *7 (N.D. Cal. June 12, 2012) (holding that plaintiffs established injury in fact for the purposes of Article III standing by alleging a violation of their statutory rights under the Wiretap Act); *In re Hulu Privacy Litigation*, 2012 WL 2119193, at *8 (N.D. Cal. June 11, 2012) ("Plaintiffs establish an injury (and standing) by alleging a violation of [the Video Privacy Protection Act]."); *Gaos v. Google, Inc.*, 2012 WL 1094646, at *3 (N.D. Cal. Mar. 29, 2012) ("The SCA [Stored Communications Act] provides a right to judicial relief based only on a violation of the statute without additional injury. Thus, a violation of one's statutory rights under the SCA is a concrete injury.").

Because the Court finds that Smith has alleged a concrete and particularized injury under the statutory rights created by Congress in the TCPA, the Court need not address Smith's other standing arguments.

## CONCLUSION

For the foregoing reasons, the Court rejects Microsoft's sole argument that Smith's lack of standing bars the Court's subject-matter jurisdiction over the Complaint, and **DENIES** Microsoft's motion to dismiss Plaintiff's Complaint.

**IT IS SO ORDERED**.

DATED: July 20, 2012

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge