# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEIL SMITH, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>MICROSOFT CORPORATION, a Washington corporation,<br><br>Defendant. | Case No. 11-CV-1958 JLS (BGS)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>(ECF No. 72 (sealed)) |

Presently before the Court is Defendant Microsoft Corporation's ("Defendant") Motion to Strike: (1) Declaration of Randall A. Snyder, and (2) Affidavit of John T. Taylor Filed in Support of Plaintiff's Reply in Support of his Motion for Class Certification. (ECF No. 72 (sealed).) Also before the Court are Plaintiff's Response in Opposition to (ECF No. 74) and Microsoft's Reply in Support of (ECF No. 75) the Motion. The hearing for the Motion scheduled for December 19, 2013, is **HEREBY VACATED**, and the matter taken under submission without oral argument pursuant to Civil Local Rule 7.1.d.1.[1]  Having considered the parties' arguments and the law, the Court **DENIES** Microsoft's Motion.

///

---

[1] The hearing on Plaintiff's Motion for Class Certification (ECF No. 34), however—also scheduled for December 19, 2013—remains on calendar.

- 1 -

## BACKGROUND

Smith, a resident of Illinois, brings this putative class action against Microsoft, a Washington corporation, for sending unauthorized text messages promoting Microsoft's Xbox to cellular telephones in violation of the Telephone Consumer Protection Act of 1991 ("TCPA" or "Act"), 47 U.S.C. § 227. (*See generally* Compl., ECF No. 1.)

In September 2008, Microsoft's advertising agencies used text-message advertising company Come&Stay, Inc. ("C&S") to send two versions of a text message advertising Microsoft's new Xbox website ("the Xbox Texts"). (Mot. for Class Cert. 13, ECF No. 34-1.) On September 12, 2008, SMS aggregator m-Qube sent 92,927 of these messages to 91,708 unique phone numbers ("the m-Qube List"). (*Id.*) Smith received one such message. (Compl. ¶ 16, ECF No. 1.) Smith did not request or consent to receive the message. (Mot. for Class Cert. 14, ECF No. 34-1.) Smith now brings this action on behalf of himself and a class of others similarly situated. (*Id.* at 15.)

On October 20, 2011, Microsoft moved to dismiss for lack of subject matter jurisdiction. (ECF No. 6.) The Court vacated the hearing on the motion scheduled for January 5, 2012. (ECF No. 12.) In a July 20, 2012 Order, the Court denied the motion, finding that Smith had standing to bring this action. (ECF No. 15.) On August 3, 2012, Microsoft answered the Complaint. (ECF No. 16.)

On December 14, 2012, Magistrate Judge Skomal granted the parties' joint motion for entry of a stipulated protective order. (ECF No. 23.) On April 24, 2013, Smith filed his Motion for Class Certification. (ECF No. 38.) The Motion for Class Certification requested that the Court certify as a class "the 91,708 consumers who received a text message advertising Microsoft's Xbox from short code 88202 on September 12 or 13, 2008"—in other words, the m-Qube List. (Mot. for Class Cert. 17, ECF No. 34-1.)

In its Opposition to Plaintiff's Motion for Class Certification, Microsoft argued

1  that Plaintiff's proposed class failed to satisfy the commonality, predominance,
2  superiority, and ascertainability requirements because "[a]t least 24% of the phone
3  numbers on m-Qube's list could not have received a text message in 2008," as they
4  were either landlines or cell phones without texting capability. (Def.'s Resp. in Opp'n
5  18–19, ECF No. 48 (sealed)).

6  Thereafter,

7  > Plaintiff and his expert witness engaged a third party vendor to compare, or 'scrub,' the C&S list of numbers to which the text messages were sent against a list of wireless phone numbers maintained by Neustar, Inc. and other authorities which own and operate an accurate and highly reliable nationwide real-time wireless number database.

10  (Reply 8, ECF No. 63 (sealed).) This "scrubbed" list contains 55,123 numbers, and
11  Plaintiff now claims to "narrow" the proposed class to the numbers appearing on the
12  "scrubbed" list. (*Id.*) On November 8, 2013, Microsoft filed the instant Motion to
13  Strike this "new" evidence appearing in Plaintiff's Reply in Support of its Motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). The function of a motion to strike is to avoid the unnecessary expenditures that arise throughout litigation by dispensing of any spurious issues prior to trial. *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *Cong v. State Farm Mut. Auto. Ins. Co.*, 428 F. Supp. 2d 1136, 1139 (S.D. Cal. 2006).

## ANALYSIS

Microsoft argues that portions of Plaintiff's Reply in Support of its Motion for Class Certification should be stricken for two reasons: (1) for improperly presenting new evidence in a reply brief, and (2) on various evidentiary grounds. The Court addresses each argument in turn.

///

///

## I. New Evidence

Microsoft first urges the Court to strike the Supplemental Declaration of Randall A. Snyder ("the Snyder Declaration"), the Affidavit of John T. Taylor, and any argument in Plaintiff's Reply related thereto on the grounds that this information is new evidence improperly presented in a reply brief. (Mot. to Strike 8–9, ECF No. 72-2 (sealed).) Plaintiff argues that this evidence is not "new," but merely a clarification of evidence already presented. (Pl.'s Resp. in Opp'n 10 n.2, ECF No. 74.) Moreover, Plaintiff argues that Microsoft has misstated the applicable law. (*Id.* at 10–13.) The Court agrees with Plaintiff.

The Ninth Circuit has held that "where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (alterations, internal quotation marks, and citation omitted). However, such an opportunity for rebuttal need not be in writing; rather, such opportunity might be the chance to orally rebut the new evidence during a hearing on the issue. *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1332 (Fed. Cir. 2008); *CIBC World Markets, Inc. v. Deutsche Bank Sec.*, 309 F. Supp. 2d 637, 645 n.21 (D.N.J. 2004); *Inc.*; *Alec L. v. Perciasepe*, Civil Action No. 11-cv-2235, 2013 WL 2248001, at *3 (D.D.C. May 22, 2013) (citations omitted). Because Microsoft can respond to the new evidence during the class certification hearing to be held on December 19, 2013, the Court may properly consider this evidence. Accordingly, this argument fails to support Microsoft's Motion, and the Court **OVERRULES** this objection.

## II. Evidentiary Grounds

Alternatively, Microsoft urges the Court to strike the Snyder Declaration on three evidentiary grounds. (Mot. to Strike 10, ECF No. 72-2 (sealed).) The Court addresses each in turn.

///

*A.     Legal Standard*

Federal Rule of Evidence 702 provides the requirements for admissible expert testimony. The burden of establishing satisfaction of Rule 702's requirements lies with the offering party. *Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, No. 02 CV 2258 JM (AJB), 2007 WL 935703, at *4 (S.D. Cal. Mar. 7, 2007) (citations omitted.)

At the class certification stage, "the trial court must act as a 'gatekeeper' . . . by making a preliminary determination that the expert's testimony is reliable." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145 (1999)). Ultimately, "[a] trial court has broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Ellis*, 657 F.3d at 982 (citing *Kumho Tire*, 526 U.S. at 152).

Courts consider *Daubert*'s non-exhaustive list of factors when determining the admissibility of scientific experts' testimony. *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1064 (9th Cir. 2002) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593–94 (1993); *Kumho Tire*, 526 U.S. at 141).

However, "the *Daubert* factors . . . simply are not applicable to [non-scientific] testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology behind it." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (emphasis in original) (internal quotation marks and citations omitted). In such situations, Rule 702 should be "construed liberally." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (citation omitted). Appropriate considerations include:

- Whether the opinion is based on scientific, technical, or other special knowledge;
- Whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;
- Whether the expert has appropriate qualifications—i.e., some special knowledge, skill, experience, training or education on that subject matter[;]
- Whether the testimony is relevant and reliable[;]
- Whether the methodology or technique the expert uses "fits" the conclusions (the expert's credibility is for the jury)[;]

- · Whether its probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or undue consumption of time.

*Id.* (citations omitted).

### B.   *Analysis*

1.   <u>Ascertainability of Class</u>

First, Microsoft argues that the Snyder Declaration's claim that the proposed class members are easily ascertainable lacks foundation and reliability. (Mot. to Strike 11, ECF No. 72-2 (sealed).) Snyder states that the process of identifying individual class members is a "straightforward and highly effective administrative process" that can be accomplished by subpoenaing wireless service providers' records. (*Id.* (citing Snyder Decl. ¶¶ 29, 35, 36, ECF No. 64 (sealed)).) Microsoft contends, however, that only four of the eight primary wireless service providers keep their records for five years. (*Id.* at 12–13.) Further, there are twenty-eight providers associated with the numbers on the m-Qube List, but Snyder fails to mention which of these providers' customers remain on the m-Qube List post-"scrubbing." (*Id.* at 13–14.)

Plaintiff, on the other hand, argues that the class has already been ascertained by reference to objective criteria, and that the contact information of the persons within that class is only a relevant consideration *after* a class has been certified. (Pl.'s Resp. in Opp'n 18–19, ECF No. 74.) Microsoft counters that a prerequisite to class certification is not only defining the class by reference to objective criteria, but also identifying a "reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." (Reply 4, ECF No. 75 (citations omitted).) The Court agrees with Plaintiff.

*In re Wal-Mart Stores, Inc. Wage & Hour Litigation*, cited by Microsoft in support of its position, is distinguishable. There, the court found the plaintiffs' third proposed subclass unascertainable because Wal-Mart's databases were incomplete, making it impossible to determine when individual employees quit and when they made themselves available for tender of final pay. No. C 06-2069 SBA, 2008 WL 413749,

1  \*8–9 (N.D. Cal. Feb. 13, 2008).  Here, however, the m-Qube List is not dependent on
2  one entity's records.  Rather, as Microsoft itself establishes, the records of twenty-eight
3  wireless service providers are at issue.  If Microsoft had shown that none of the
4  proposed class members could be identified, *In re Wal-Mart* would have bearing on this
5  issue; however, Microsoft has only established that four providers do not require that
6  their records be kept for the five years at issue here.  Twenty-four providers, however,
7  potentially have the necessary records.

8  More importantly, the Court is persuaded by *Agnes v. Papa John's International,*
9  *Inc.*, a highly analogous text-messaging TCPA case, which held that concerns as to
10 identifying class members and giving them notice "are more properly addressed after
11 class certification."  286 F.R.D. 559, 566 (W.D. Wash. 2012).  Accordingly, the Court
12 finds that Microsoft's concerns are premature and **OVERRULES** these objections.

13 2.    <u>Industry "Opt-in" Practices</u>

14 Second, Microsoft argues that Snyder's testimony regarding industry "opt-in"
15 practices in 2008 lacks foundation, is unreliable, and is irrelevant.  (Mot. to Strike 15,
16 ECF No. 72-2 (sealed).)  Snyder claims that the m-Qube List does not reliably contain
17 any individuals who "opted-in" and, therefore, that C&S sent unsolicited messages, but
18 Microsoft argues that Snyder fails to provide support for this conclusion, rendering it
19 merely speculative.  (*Id.* (citing Snyder Decl. ¶ 23, ECF No. 64 (sealed).))  Microsoft
20 also contends that Snyder impermissibly "expounds on TCPA case law and comes to
21 a baseless legal conclusion founded on his interpretation of the law." (*Id.* at 16.)

22 Plaintiff, on the other hand, argues that Snyder "acknowledges Microsoft's
23 evidence describing C&S's 'opt-in' practices"—which Microsoft argues evidences
24 consent—and explains why it is not really evidence of consent—namely because, even
25 if people agreed to receive messages from C&S, they did not consent to receive
26 messages from Microsoft or about the Xbox.  (Pl.'s Resp. in Opp'n 23–24, ECF No.
27 74.)  Plaintiff also argues that Snyder does not offer an improper legal conclusion
28 because he only explains that C&S's opt-in procedures violated the Mobile Marketing

1   Association's ("MMA") Consumer Best Practices and Guidelines, which suggest that
2   a person consents to receive a text message only from the specific program to which he
3   subscribes. (*Id.* at 24–26.) Microsoft counters that the C&S's opt-in language is no
4   longer available because of Plaintiff's delay in filing this action, and therefore Snyder's
5   testimony is purely speculative and improper. (Reply 9, ECF No. 75.) The Court
6   agrees with Plaintiff.

7   The evidence of industry opt-in practices is relevant to the issue of consent.
8   Microsoft is free to argue that C&S complied with the consent practices identified on
9   its website and with the warranty that C&S provided to m-Qube. However, if the
10  evidence supports such testimony, Plaintiff should be free to rebut Microsoft's evidence
11  by showing an industry practice whereby companies with similar policies and
12  warranties sent unsolicited messages. Such an industry practice would tend to support
13  the inference that C&S engaged in similar acts, thereby satisfying Federal Rule of
14  Evidence 401's low threshold. It is also helpful to the court and jury in better
15  understanding the issue of consent.

16  The Court also finds that Snyder's opinions are not improper legal conclusions.
17  It is uncontested that Snyder is unqualified to analyze a Ninth Circuit case and state a
18  legal conclusion by applying the facts of this case to his interpretation of the law. *Gable*
19  *v. Nat'l Broad. Co.*, 727 F. Supp. 2d 815, 835–36 (C.D. Cal. 2010); *see also Pinal*
20  *Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1043–44 (D. Ariz. 2005).
21  However, Snyder merely discusses a case for which he served as an expert witness.
22  (*See* Snyder Decl. ¶ 26, ECF No. 64 (sealed).) He does not draw any legal conclusions
23  or principles, much less apply the facts of this case to one, nor does he suggest that the
24  Court is bound to analyze *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir.
25  2009), as he does. Microsoft has distinguished the case. (Reply 9, ECF No. 75.)
26  Accordingly, at this stage in the proceedings, the Court sees no harm in allowing this
27  testimony. The Court finds no reason to doubt the reliability, relevance,
28  ///

1  or foundation of Snyder's testimony regarding industry opt-in procedures, and therefore
2  **OVERRULES** these objections.

3  3.   ComplancePoint's Methodology

4  Lastly, Microsoft argues that Snyder fails to provide the necessary foundation for his testimony that CompliancePoint's analysis of the m-Qube List is trustworthy or that 55,123 numbers purportedly received the Xbox Texts. (Mot. to Strike 17, ECF No. 72-2 (sealed).) Microsoft claims that Snyder provides no evidence that he independently verified CompliancePoint's data and that Snyder fails to explain why data from the Do Not Call Registry ("the DNCR") was not included in arriving at the 55,123 numbers comprising the "scrubbed" list. (*Id.* at 18.) Microsoft also argues that Snyder does not explain why the data from the two lists he did utilize in creating the "scrubbed" list—the Direct Marketing Association Wireless Block List ("the DMA List") and the Neustar Wireless Portability List ("the Neustar List")—is reliable, and that Snyder fails to show that he has personal knowledge of that information. (*Id.* at 18–19.) Conversely, Plaintiff argues that paragraphs ten to seventeen of the Snyder Declaration establish the reliability of the lists of wireless numbers. (Pl.'s Resp. in Opp'n 27–28, ECF No. 74.) The Court agrees with Plaintiff.

In his declaration, Snyder explains that Neustar, Inc. owns and operates "by far the most authoritative" real-time database of telephone numbers, and that, "[d]ue to the critical nature of this service, the reliability of Neustar's telephone number database is among the highest in the telecommunications industry." (Snyder Decl. ¶¶ 12, 13, ECF No. 64 (sealed).) Snyder explains that this database identifies whether a telephone number is wireless or wireline. (*Id.* ¶¶ 13, 15.) Snyder also states that the DMA List is Neustar's list of numbers that have always been wireless numbers, and that the Neustar List shows the numbers that were changed from a wireline to wireless numbers at least 31 days before September 12, 2008. (*Id.* ¶ 17.) Accordingly, Snyder explains why these lists are reliable and why these lists would demonstrate which of the m-Qube List's numbers were wireless on the relevant date, and therefore the proper foundational

showing has been made. Snyder's failure to address the DNCR implicitly suggests that the list is irrelevant.[2] The Court will reserve addressing the issue of "receipt" versus "sending" of the Xbox Texts until the December 19, 2013 hearing on the Motion for Class Certification. Accordingly, the Court **OVERRULES** Microsoft's objections to the CompliancePoint evidence.

## CONCLUSION

In sum, the Court finds Microsoft's argument that "new" evidence is inadmissible unavailing, as Microsoft will have the opportunity to rebut this evidence at the December 19, 2013 hearing on class certification. Moreover, the Court finds that the evidentiary objections to the Snyder Declaration should be overruled. Accordingly, Microsoft's Motion to Strike is hereby **DENIED**.

**IT IS SO ORDERED**.

DATED: December 10, 2013

Honorable Janis L. Sammartino
United States District Judge

---

[2]This assumption of irrelevance is legitimized by the DNCR website, which explains that the list encompasses both personal cell and home numbers. *See Tell Me More About the National Do Not Call Registry*, FTC CONSUMER INFORMATION, **http://www.consumer.ftc.gov/articles/0108-national-do-not-call-registry** (go to "Can I register my cell phone on the National Do Not Call Registry?" under "What Phone Numbers Can I Register?") (last updated Sept. 2009).