1                    THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF CALIFORNIA
2

3                    HONORABLE JANIS L. SAMMARTINO
                UNITED STATES DISTRICT JUDGE PRESIDING
4

5       ------------------------------------------------------------

6       NEIL SMITH, INDIVIDUALLY AND ON )
        BEHALF OF A CLASS OF SIMILARLY  )
7       SITUATED INDIVIDUALS,           )
                                        )
8                       PLAINTIFF,      )
                                        )
9       VS.                             )   NO. 11-CV-1958-JLS
                                        )
10      MICROSOFT CORPORATION, A        )
        WASHINGTON CORPORATION,         )
11                                      )
                        DEFENDANT.      )
12

13      ------------------------------------------------------------

14                           MOTION HEARING

15

16      ------------------------------------------------------------

17

18                   REPORTER'S TRANSCRIPT OF PROCEEDINGS
                          DECEMBER 19, 2013
19                        SAN DIEGO, CALIFORNIA

20

21

22

23                   GAYLE WAKEFIELD, RPR, CRR
                      OFFICIAL COURT REPORTER
24                   UNITED STATES COURTHOUSE
                          619-239-0652
25                   WAKEFIELDGAYLE@GMAIL.COM

```
1        APPEARANCES:

2


3        FOR THE PLAINTIFF:        MICHAEL J. MCMORROW
                                   MCMORROW LAW, P.C.
4                                  ONE NORTH LASALLE STREET
                                   44TH FLOOR
5                                  CHICAGO, IL  60604

6
                                   EVAN M. MEYERS
7                                  MCGUIRE LAW, P.C.
                                   161 N. CLARK STREET, 47TH FLOOR
8                                  CHICAGO, IL  60601

9


10
         FOR THE DEFENDANT:        CHARLES B. CASPER
11                                 MONTGOMERY MCCRACKEN WALKER
                                     & RHOADS, LLP
12                                 123 SOUTH BROAD STREET, 24TH FLOOR
                                   PHILADELPHIA, PA  19109

13

14                                 THOMAS W. MCNAMARA
                                   CHRYSTA L. ELLIOTT
15                                 BALLARD SPAHR, LLP
                                   655 WEST BROADWAY, SUITE 1600
16                                 SAN DIEGO, CA  92101-8494

17

18

19

20

21

22

23

24

25
```

2

```
 1    DECEMBER 19, 2013

 2                         MORNING SESSION

 3         THE CLERK:  NUMBER ONE ON THE CALENDAR, 11-CV-1958,

 4    SMITH VS. MICROSOFT, FOR MOTION HEARING.

 5         THE COURT:  APPEARANCES, PLEASE.

 6         MR. MCMORROW:  GOOD MORNING, YOUR HONOR, MIKE MCMORROW

 7    ON BEHALF OF THE PLAINTIFF.

 8         MR. MEYERS:  GOOD MORNING, YOUR HONOR, EVAN MEYERS ON

 9    BEHALF OF THE PLAINTIFF.

10         MR. MCNAMARA:  GOOD MORNING, TOM MCNAMARA ON BEHALF OF

11    MICROSOFT.  WITH ME IS CHRYSTA ELLIOTT.

12         MS. ELLIOTT:  GOOD MORNING, YOUR HONOR.

13         MR. MCNAMARA:  AND CHUCK CASPER, WHO WILL BE ADDRESSING

14    THE COURT THIS MORNING.

15         MR. CASPER:  GOOD MORNING, YOUR HONOR.

16         THE COURT:  GOOD MORNING.

17         WHAT WE'RE GOING TO DO THIS MORNING, COUNSEL, IS THE

18    FOLLOWING:  I HAVE A TENTATIVE RULING.  IT'S SEVERAL PAGES.

19    I'LL READ IT SLOWLY SO YOU CAN ABSORB IT AS I READ, AND THEN I

20    HAVE A NUMBER OF QUESTIONS FOR BOTH SIDES IN THIS MATTER.

21    PLEASE BE VERY SPECIFIC AND PRECISE AND ANSWER THE QUESTION

22    THAT I ASK BECAUSE AT THE CONCLUSION OF THE QUESTIONS I WILL

23    GIVE YOU AN OPPORTUNITY TO ADDRESS THE COURT AND TELL ME

24    ANYTHING THAT YOU THINK HASN'T BEEN COVERED OR ANYTHING YOU

25    WOULD LIKE TO HIGHLIGHT, SO HERE'S THE TENTATIVE.
```

1          YES?

2          MR. MCMORROW:  WHEN WE ADDRESS THE COURT, YOUR HONOR,

3     WOULD YOU RATHER THAT WE GO TO THE PODIUM?

4          THE COURT:  YES, PLEASE.

5          MR. MCMORROW:  OKAY.  THANK YOU.

6          THE COURT:  THE COURT HAS PREPARED A TENTATIVE RULING

7     ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION.  AS THE PARTIES

8     ARE WELL AWARE, CLASS CERTIFICATION IS GOVERNED BY FEDERAL RULE

9     OF CIVIL PROCEDURE 23.  UNDER RULE 23, THE PARTIES SEEKING

10    CERTIFICATION BEARS THE BURDEN OF SHOWING THAT EACH OF THE FOUR

11    REQUIREMENTS OF RULE 23(A) AND AT LEAST ONE OF THE THREE

12    REQUIREMENTS OF 23(B) HAVE BEEN MET.  IN ADDITION TO THE RULE

13    23 REQUIREMENTS, THE PARTY SEEKING CLASS CERTIFICATION MUST

14    PROVIDE A WORKABLE CLASS DEFINITION BY SHOWING THAT THE MEMBERS

15    OF THE CLASS ARE IDENTIFIABLE.

16         TO BEGIN, THE COURT FINDS THAT PLAINTIFF HAS SET FORTH

17    AN IDENTIFIABLE AND ASCERTAINABLE CLASS AND HAS MADE A

18    SUFFICIENT SHOWING TO SATISFY THE REQUIREMENTS OF RULE 23(A),

19    INCLUDING NUMEROSITY, COMMONALITY, TYPICALITY AND ADEQUACY.

20    FIRST, THE PROPOSED CLASS CONSISTS ENTIRELY OF INDIVIDUALS

21    WHOSE PHONE NUMBERS HAVE BEEN IDENTIFIED THROUGH DISCOVERY AND

22    ARE READILY ASCERTAINABLE BY REFERENCE TO THE SCRUBBED M-QUBE

23    LIST.  BECAUSE THIS IS A CLOSED SET OF NUMBERS ALREADY

24    COMPILED, THE COURT NEED NOT DELVE INTO THE MERITS OF THE CASE

25    SIMPLY TO IDENTIFY THE CLASS.

1          SECOND, THE PLAINTIFF HAS DEMONSTRATED THAT THIS CASE

2     INVOLVES AT LEAST ONE COMMON ISSUE; NAMELY, WHETHER COME & STAY

3     USED AN AUTOMATIC TELEPHONE DIALING SYSTEM TO SEND THE XBOX

4     TEXT MESSAGES TO THE CELL PHONES OF PLAINTIFF AND THE PROPOSED

5     CLASS MEMBERS.  THIS ISSUE CAN BE RESOLVED ON A CLASS-WIDE

6     BASIS, WHICH IS SUFFICIENT TO SATISFY THE COMMONALITY

7     REQUIREMENT.

8          THIRD, PLAINTIFF'S CLAIM IS TYPICAL OF THE CLASS'S

9     CLAIM BECAUSE THEY ALL ALLEGE VIOLATIONS OF THE TELEPHONE

10    CONSUMER PROTECTION ACT AND MAINTAIN THAT THEY DID NOT PROVIDE

11    PRIOR EXPRESS CONSENT TO RECEIVE THE XBOX TEXT MESSAGES.  THUS,

12    PLAINTIFF'S CLAIM IS ESSENTIALLY THE SAME AS THE PROPOSED

13    CLASS'S CLAIM AND RESTS ON THE SAME GENERAL LEGAL THEORIES.

14    THE COURT IS NOT SWAYED IN THIS CONCLUSION BY MICROSOFT'S

15    ARGUMENT THAT PLAINTIFF IS UNIQUELY SUBJECT TO A LACHES

16    DEFENSE.  BECAUSE PLAINTIFF FILED THIS ACTION WITHIN THE

17    FOUR-YEAR FEDERAL CATCHALL STATUTE OF LIMITATIONS APPLICABLE TO

18    TCPA, THERE IS A PRESUMPTION THAT LACHES IS INAPPLICABLE.

19    FURTHER, ALL POTENTIAL CLASS MEMBERS RECEIVED THE XBOX TEXT

20    MESSAGES ON THE SAME DAY, MAKING THEIR DELAY EQUALLY LONG AND

21    RENDERING THEM ALSO POTENTIALLY VULNERABLE TO MICROSOFT'S

22    LACHES DEFENSE.

23          FOURTH, PLAINTIFF AND HIS COUNSEL ARE ADEQUATE

24    REPRESENTATIVES FOR THE CLASS.  AS ALREADY EXPLAINED, THERE IS

25    A PRESUMPTION THAT PLAINTIFF AND HIS COUNSEL DID NOT

1    UNREASONABLY DELAY IN BRINGING THE SUIT.  MOREOVER, PLAINTIFF'S

2    INTERESTS ARE NOT ANTAGONISTIC TO THOSE OF THE CLASS.

3    PLAINTIFF'S CLAIMS TO -- PLAINTIFF CLAIMS TO RESENT THE

4    PURPORTED INVASION OF HIS PRIVACY, AND THUS HE SEEMS TO HAVE

5    SUFFICIENT INCENTIVE TO VIGOROUSLY ADVOCATE ON THE CLASS'S

6    BEHALF.  AND, IN LIGHT OF PROPOSED CLASS COUNSEL'S EXPERIENCE,

7    THERE SEEMS NO REASON TO QUESTION THEIR ADEQUACY.

8         FINALLY, NUMEROSITY IS NOT DISPUTED BY THE PARTIES, BUT

9    THE COURT NOTES THAT THIS REQUIREMENT IS ALSO CLEARLY

10   SATISFIED, GIVEN THE PROPOSED CLASS CONSISTS OF MORE THAN

11   55,000 INDIVIDUALS.

12        THE COURT IS TENTATIVELY INCLINED, HOWEVER, TO DENY

13   PLAINTIFF'S MOTION BECAUSE PLAINTIFF HAS FAILED TO MAKE AN

14   ADEQUATE SHOWING THAT CERTIFICATION IS WARRANTED UNDER

15   23(B)(3).

16        FIRST, IT IS UNCLEAR WHETHER COMMON OR INDIVIDUAL

17   QUESTIONS PREDOMINATE, BECAUSE THE PARTIES HAVE FAILED TO

18   PROVIDE SUFFICIENT EVIDENCE FOR THE COURT TO MAKE A DEFINITIVE

19   FINDING.  FOR EXAMPLE, AS TO PRIOR EXPRESS CONSENT, PLAINTIFF

20   ARGUES THAT THE ABSENCE OF CONSENT CAN BE PROVEN ON A

21   CLASS-WIDE BASIS.  PLAINTIFF FAILS, HOWEVER, TO SUBSTANTIATE

22   THIS CLAIM.  HE OFFERS ONLY THE TESTIMONY OF HIS EXPERT AS TO

23   TYPICAL INDUSTRY PRACTICES IN 2008.  HE DOES NOT, AND LIKELY

24   CANNOT, PROVIDE EVIDENCE OF COME & STAY'S PRACTICES.

25        LIKEWISE, MICROSOFT ARGUES THAT THE CONSENT ISSUE

1    REQUIRES INDIVIDUAL PROOF, BUT FAILS TO PROVIDE EVIDENCE FOR

2    THIS CLAIM.  IN FACT, WHAT EVIDENCE MICROSOFT OFFERS SUGGESTS

3    THAT CONSENT MAY BE A COMMON QUESTION, AS MICROSOFT OFFERS

4    TESTIMONY THAT COME & STAY USED A DOUBLE ACTIVE OPT-IN PROCESS

5    IN ACQUIRING SUBSCRIBERS.  ACCORDINGLY, THE COURT IS

6    TENTATIVELY INCLINED TO CONCLUDE THAT PLAINTIFF HAS ESTABLISHED

7    PREDOMINANCE, BUT THE COURT IS BY NO MEANS SETTLED IN THIS

8    FINDING.

9         SECOND, THE COURT IS TENTATIVELY INCLINED TO FIND THAT

10    A CLASS ACTION IS NOT THE SUPERIOR METHOD OF ADJUDICATING THIS

11    CONTROVERSY.  IN ARRIVING AT THIS DETERMINATION, THE COURT

12    CONSIDERS THE FOUR FACTORS LISTED IN RULE 23(B)(3).

13         THE COURT FINDS THE FIRST FACTOR, THE CLASS MEMBERS'

14    INTERESTS IN INDIVIDUALLY CONTROLLING THE PROSECUTION OF

15    SEPARATE ACTIONS, NEUTRAL.  THE TELEPHONE CONSUMER PROTECTION

16    ACT PERMITS LITIGANTS TO SEEK STATUTORY DAMAGES OF $500 PER

17    VIOLATION, POTENTIALLY TREBLED.  THESE LITIGANTS MAY SUE IN

18    SMALL CLAIMS COURT WITHOUT AN ATTORNEY, THUS, THERE IS ANOTHER

19    REALISTIC POSSIBILITY FOR REDRESS.  ON THE OTHER HAND, IT IS

20    EASIER FOR PLAINTIFFS TO LITIGATE THE ISSUE ON THEIR BEHALF AND

21    RECEIVE A SMALLER PAYDAY WITHOUT EXPENDING PERSONAL EFFORT.

22         THE COURT FINDS THE SECOND FACTOR, THE EXTENT AND

23    NATURE OF ANY PENDING LITIGATION CONCERNING THE CONTROVERSY,

24    ALSO TO BE NEUTRAL, AS THE PARTIES HAVE PRESENTED NO EVIDENCE

25    ON THIS POINT.

1    THE COURT FINDS THE THIRD FACTOR, THE DESIRABILITY OR

2    UNDESIRABILITY OF CONCENTRATING THE LITIGATION OF THE CLAIMS IN

3    THE PARTICULAR FORUM, TO WEIGH AGAINST CERTIFICATION.  THIS IS

4    A DIFFERENT INQUIRY FROM WHETHER THE VENUE WAS PROPER.

5    INSTEAD, THE COURT ASKS IF IT IS FAIR AND WISE TO CONCENTRATE

6    THE LITIGATION HERE.  THE COURT MUST ANSWER IN THE NEGATIVE.

7    IT DOES NOT SEEM CONVENIENT TO ANYONE TO HAVE THE CASE HEARD

8    HERE.  NEITHER ARE EVIDENCE OR WITNESSES LIKELY TO BE FOUND IN

9    THIS DISTRICT.

10    ALTHOUGH IN 2008 COME & STAY RESIDED IN AND SENT THE

11    XBOX TEXT MESSAGES FROM THIS DISTRICT, COME & STAY'S UNITED

12    STATES OFFICE CLOSED IN 2009, AND THE COMPANY DISSOLVED

13    ENTIRELY IN 2012.  COME & STAY'S PARENT COMPANY RESIDES IN

14    PARIS.  ALL THAT REMAINS OF COME & STAY'S BUSINESS RECORDS OR

15    ITS ACCOUNTING RECORDS, WHICH ARE ALSO IN PARIS.  THE COME &

16    STAY EMPLOYEES WHO PROVIDED DECLARATIONS FOR MICROSOFT NOW

17    RESIDE IN FLORIDA.  PLAINTIFF IS A RESIDENT OF ILLINOIS.  THE

18    POTENTIAL CLASS MEMBERS ARE SCATTERED ACROSS THE NATION.  AND

19    WHILE MICROSOFT DOES BUSINESS NATIONWIDE, MICROSOFT IS A

20    WASHINGTON CORPORATION WITH ITS PRINCIPAL PLACE OF BUSINESS IN

21    WASHINGTON.  IT SEEMS LIKELY THAT MICROSOFT HAS THE MOST

22    EVIDENCE AND WITNESSES RELEVANT TO THIS DISPUTE.  AND, THUS,

23    WASHINGTON SEEMS A FAIR AND MORE CONVENIENT FORUM FOR THIS

24    CASE.

25    FINALLY, THE COURT FINDS THE FOURTH FACTOR, THE LIKELY

1    DIFFICULTIES IN MANAGING THE CLASS ACTION, TO ALSO WEIGH

2    AGAINST CERTIFICATION.  THE COURT HAS SIGNIFICANT EVIDENTIARY

3    CONCERNS GIVEN THE ABSENCE OF COME & STAY'S BUSINESS RECORDS.

4    EXPRESS PRIOR CONSENT IS ONE OF THE THREE ELEMENTS OF A

5    TELEPHONE CONSUMER PROTECTION ACT CLAIM.  BUT WITHOUT COME &

6    STAY'S RECORDS, IT IS UNLIKELY THAT THE PARTIES CAN DETERMINE

7    WHAT THE PROPOSED CLASS MEMBERS CONSENTED TO, IF ANYTHING.

8    THUS, PLAINTIFF LIKELY CANNOT PROVE HIS TELEPHONE CONSUMER

9    PROTECTION ACT CLAIM, AND MICROSOFT LIKELY CANNOT DEFEND

10   AGAINST THESE CHARGES THAT CAN NEITHER BE PROVED NOR DISPROVED.

11       THE COURT ALSO HAS GRAVE CONCERNS ABOUT IDENTIFYING AND

12   PROVIDING NOTICE TO CLASS MEMBERS.  THE SCRUBBED M-QUBE LIST

13   IDENTIFIES CELL PHONE NUMBERS THAT COULD HAVE RECEIVED THE XBOX

14   TEXT MESSAGES, BUT THIS IS DIFFERENT FROM KNOWING WHICH NUMBERS

15   ACTUALLY RECEIVED THEM.  SUBSCRIBERS MAY HAVE HAD TEXT

16   MESSAGING BLOCKED AT THE TIME.  MANY MEMBERS OF THE CLASS HAVE

17   LIKELY CHANGED NUMBERS DURING THE PAST FIVE YEARS.  BEFORE

18   PLAINTIFF SCRUBBED THE M-QUBE LIST, A MICROSOFT EXPERT

19   CALCULATED THAT APPROXIMATELY 25 PERCENT OF THE NUMBERS WERE

20   DISCONNECTED OR NO LONGER IN SERVICE.

21       AND, GIVEN THE LAPSE IN TIME, MEMBERS OF THE PROPOSED

22   CLASS ARE UNLIKELY TO RECALL WHETHER THEY RECEIVED ONE OF THE

23   XBOX TEXT MESSAGES.  THUS, WHILE THE PARTIES POSSESS THE PHONE

24   NUMBERS THAT WERE SENT THE XBOX TEXT MESSAGES FIVE YEARS AGO,

25   THEY DO NOT KNOW THE IDENTITIES OF THOSE INDIVIDUALS OR THEIR

1   CURRENT CONTACT INFORMATION.  THE EVIDENCE MICROSOFT PRESENTED

2   CONCERNING CELLULAR SERVICE PROVIDERS' RECORD RETENTION

3   POLICIES SUGGESTS THIS INFORMATION MAY BE DIFFICULT OR

4   IMPOSSIBLE TO OBTAIN.

5        THE COURT NOTES BY WAY OF CONCLUSION THAT PLAINTIFF HAS

6   FILED EVIDENTIARY OBJECTIONS TO VARIOUS DOCUMENTS AND EXHIBITS.

7   THE COURT DENIES THESE OBJECTIONS.  THE COURT NEED NOT STRICTLY

8   ADHERE TO THE FEDERAL RULES OF EVIDENCE AND MAY CONSIDER

9   INADMISSIBLE EVIDENCE IN DETERMINING WHETHER TO CERTIFY A

10  CLASS.

11       I WOULD LIKE TO REMIND BOTH SIDES THAT THIS IS ONLY THE

12  COURT'S TENTATIVE THIS MORNING.  I HAVE QUITE A FEW QUESTIONS

13  FOR BOTH SIDES.  AS I'VE ALREADY INDICATED, I WILL GIVE BOTH

14  SIDES AN OPPORTUNITY TO ADDRESS THE COURT AT THE CONCLUSION OF

15  QUESTIONS AND TELL ME ANYTHING YOU WOULD LIKE TO TELL ME.  AT

16  THAT POINT I WILL DEEM THIS MOTION SUBMITTED AND I'LL TAKE IT

17  UNDER ADVISEMENT.  I'LL GO BACK THROUGH EVERYTHING AGAIN, IN

18  LIGHT OF YOUR COMMENTS, ANSWERS TO QUESTIONS THIS MORNING, AND

19  YOU'LL RECEIVE A WRITTEN DECISION FROM THE COURT.  IT SOUNDS

20  FAR AWAY, BUT I'M GOING TO SAY PROBABLY NEXT YEAR GIVEN THAT

21  THERE IS SOME TIME OFF BETWEEN NOW AND THEN.

22       SO WITH THAT, I WOULD LIKE TO GO INTO QUESTIONS.  I

23  WOULD LIKE TO START WITH PLAINTIFF, SO WHOEVER IS GOING TO

24  START WITH THE QUESTIONS.  YOU CAN FIELD THEM BACK AND FORTH,

25  BUT WHOEVER IS GOING TO START, IF YOU WOULD TAKE THE PODIUM,

1        PLEASE.

2                MR. MCMORROW:  THANK YOU, YOUR HONOR.

3                THE COURT:  GOOD MORNING, COUNSEL.  YOU CONCEDE IN YOUR

4        RESPONSE TO MICROSOFT'S SUPPLEMENTAL AUTHORITY THAT THE

5        PLAINTIFF HAS THE BURDEN OF DEMONSTRATING A LACK OF PRIOR

6        EXPRESS CONSENT.  HOWEVER, YOU ARGUE THAT THIS BURDEN IS

7        SATISFIED IF THE DEFENDANT IS UNABLE TO SHOW A SINGLE INSTANCE

8        OF PRIOR EXPRESS CONSENT.  DOESN'T THAT ACTUALLY PLACE THE

9        BURDEN ON THE DEFENDANT, AND IF IT DOESN'T, EXPLAIN, PLEASE.

10               MR. MCMORROW:  YOUR HONOR, IN A CERTAIN SENSE THE

11       BURDEN OF SHOWING CONSENT IS ON THE DEFENDANT FROM THE GET-GO.

12       AS YOUR HONOR POINTED OUT IN THE FIRST OF THE *HILTON* OPINIONS,

13       AFFIRMATIVE -- CONSENT IS AN AFFIRMATIVE DEFENSE TO A TCPA

14       CLASS ACTION.  SO IN THE ABSENCE OF CONSENT -- IN THE ABSENCE

15       OF ANY EVIDENCE OF CONSENT, THE DEFENDANT HASN'T MET THE BURDEN

16       OF SHOWING THAT AFFIRMATIVE DEFENSE.  SO IN A CERTAIN SENSE,

17       THAT BURDEN IS QUITE CLEARLY ON THE DEFENDANT.

18               NOW, AS MICROSOFT POINTED OUT IN ITS RESPONSE TO OUR

19       CLASS CERTIFICATION MOTION, THE COURT CAN CERTAINLY CONSIDER

20       THAT AFFIRMATIVE DEFENSE WITHIN THE CONTEXT OF THE CLASS

21       CERTIFICATION MOTION, AND THEY HAVE PURPORTED TO TRY TO PUT

22       EVIDENCE ON OF CONSENT.  I THINK THERE COMES A POINT WHERE IF

23       THE DEFENDANT HAS PUT FORWARD SUFFICIENT EVIDENCE THAT THAT

24       BURDEN WOULD NECESSARILY SHIFT TO THE PLAINTIFF, BUT IN THIS

25       CASE THAT BURDEN HAS -- THAT BURDEN HASN'T SHIFTED TO US.  TO

THE EXTENT THAT IT HAS SHIFTED TO THE PLAINTIFFS, I THINK WE'VE
ADEQUATELY SHOWN THE ABSENCE OF CONSENT.

THE EVIDENCE THAT MICROSOFT HAS ATTEMPTED TO PUT
FORWARD ON CONSENT, EVEN IF THE COURT ACCEPTS ALL OF THAT
EVIDENCE, WITH THE EXCEPTION OF THE OWEN GREGORY DECLARATION --
I MEAN, THE OWEN GREGORY DECLARATION IS ONE CLASS MEMBER WHO
STATES QUITE EQUIVOCALLY THAT HE THINKS HE MIGHT HAVE GIVEN
CONSENT TO SOMEBODY AT SOME TIME FOR SOMETHING.  AS WE POINT
OUT IN OUR OBJECTION, AND IN OUR REPLY BRIEF, THAT SIMPLY
DOESN'T MEET THE REQUIREMENTS OF FEDERAL RULE 602.  HE QUITE
CLEARLY DOESN'T HAVE ANY PERSONAL KNOWLEDGE ON WHICH HE'S
TESTIFYING.

ASIDE FROM THAT ONE INSTANCE, THAT ONE CLASS MEMBER OF
THE 1,300 THAT THEY CONTACTED, THE REST OF THEIR SO-CALLED
EVIDENCE OF CONSENT CONSISTS ENTIRELY OF THE STATEMENTS OF THE
FORMER COME & STAY EMPLOYEES AS TO WHAT COME & STAY'S PRACTICES
WERE AT THE TIME.  EVEN TAKING ALL OF THAT AT FACE VALUE, WHICH
I THINK THE COURT SHOULD NOT, BUT EVEN TAKING ALL OF THAT
SUPPOSED EVIDENCE AT FACE VALUE, THE EVIDENCE OF CONSENT CAN
STILL BE DETERMINED -- THE QUESTION OF CONSENT COULD STILL BE
DETERMINED ON A CLASS-WIDE BASIS.

IF THE COURT WERE TO GIVE FULL WEIGHT TO THE PROFFERED
TESTIMONY OF MR. RICHMOND AND MR. MCNAMARA, THE COURT COULD
STILL MAKE THE DETERMINATION AS TO WHETHER THERE WAS CONSENT OR
NOT LATER ON IN THE CASE ON A CLASS-WIDE BASIS, BECAUSE

1    MICROSOFT HAS NO -- MICROSOFT'S COME FORWARD WITH ABSOLUTELY NO

2    INDIVIDUALIZED EVIDENCE OF CONSENT.  ALL OF THE SUPPOSED

3    EVIDENCE OF CONSENT THAT MICROSOFT HAS COME FORWARD WITH, EVEN

4    IF THE COURT ACCEPTS THAT EVIDENCE, IS ALL GENERAL AND WOULD BE

5    -- AND COULD BE DECIDED IN ONE FELL SWOOP AS TO EVERY MEMBER OF

6    THE CLASS.

7         THE COURT:  THERE'S BEEN NO DIRECT EVIDENCE OF COME &

8    STAY'S CONSENT PRACTICES, EITHER WITH REGARD TO THE XBOX TEXT

9    MESSAGING CAMPAIGN OR IN GENERAL, TRUE?

10        MR. MCMORROW:  CORRECT.

11        THE COURT:  SO HOW WOULD YOU PROVE CONSENT?  I MEAN,

12   YOU ARGUE THAT CONSENT IS A COMMON QUESTION -- I'LL GO THERE

13   WITH YOU -- SO HOW WOULD YOU PROVE IT WITHOUT THAT?

14        MR. MCMORROW:  WELL, YOUR HONOR, AS I SAID AT THE

15   BEGINNING, THE INITIAL BURDEN OF PROVING THIS AFFIRMATIVE

16   DEFENSE LIES WITH MICROSOFT.  MICROSOFT HAS THE BURDEN OF

17   SAYING THE PLAINTIFFS CONSENTED HERE.  THE ACTUAL LANGUAGE OF

18   THE STATUTE I THINK SHOWS THAT THE BURDEN IS ON THE DEFENDANT,

19   AND THE AUTHORITIES THAT YOUR HONOR CITED IN THE FIRST *HILTON*

20   CASE I THINK ALSO DEMONSTRATE THAT, THAT CONSENT -- THE BURDEN

21   OF CONSENT AT THE OUTSET IS ON THE DEFENDANT.

22        NOW, IF THE DEFENDANT CAN COME FORWARD WITH SOME

23   EVIDENCE, THEN IT'S AN ISSUE, BUT IF THE DEFENDANT SIMPLY CAN'T

24   PROVE THEIR AFFIRMATIVE DEFENSE OF CONSENT, THEN THERE'S NO

25   QUESTION AT ALL ON CONSENT.  I WOULD LIKE TO POINT OUT, YOUR

1     HONOR, THE ONLY EVIDENCE ON THE ISSUE -- THE ONLY

2     INDIVIDUALIZED, COMPETENT EVIDENCE, ON THE ISSUE OF CONSENT ARE

3     THE STATEMENTS OF THE PLAINTIFF HERE, WHO STATED THAT HE DID

4     NOT CONSENT.

5          THE COURT:  LET ME GO IN A DIFFERENT DIRECTION.  YOU

6     ARGUE THAT A CLASS ACTION IS SUPERIOR TO ANY OTHER METHOD OF

7     ADJUDICATING THIS CONTROVERSY.

8          MR. MCMORROW:  YES, YOUR HONOR.

9          THE COURT:  WHY ARE THE STATUTORY DAMAGES PROVIDED

10    UNDER THE TCPA AN INADEQUATE INCENTIVE FOR AN INDIVIDUAL

11    PLAINTIFF TO LITIGATE THEIR CLAIM?

12         MR. MCMORROW:  YOUR HONOR, THERE ARE SEVERAL WAYS TO

13    RESPOND TO THIS, AND I NOTE THAT THE COURT IN ITS -- IN THE

14    PRELIMINARY RULING MENTIONED SMALL CLAIMS COURT, THAT PEOPLE

15    COULD BRING THESE CASES IN SMALL CLAIMS COURT.

16         ALTHOUGH THEY COULD BRING THE CASES IN SMALL CLAIMS

17    COURT, AN INDIVIDUAL PLAINTIFF COULDN'T GET THE RELIEF REQUIRED

18    BY THE STATUTE -- THE RELIEF OFFERED IN THE STATUTE IN SMALL

19    CLAIMS COURT.  YES, A PLAINTIFF COULD GET THE $500, BUT THERE'S

20    ALSO AN INJUNCTIVE REMEDY THAT'S SET FORTH IN THE STATUTE, AND

21    MOST SMALL CLAIMS COURTS YOU SIMPLY CANNOT GET INJUNCTIVE

22    RELIEF.

23         SO THE IDEA OF GOING TO SMALL CLAIMS COURT, AND I'VE

24    HEARD IT SAID BEFORE, THAT THAT'S WHAT -- I'VE HEARD PEOPLE

25    SUGGEST THAT THAT'S WHAT CONGRESS INTENDED, BUT IF CONGRESS

1    REALLY INTENDED THAT THESE CLAIMS BE BROUGHT IN SMALL CLAIMS

2    COURT, THERE WOULDN'T BE INJUNCTIVE RELIEF AVAILABLE BECAUSE

3    SMALL CLAIMS COURTS GENERALLY CAN'T GIVE THAT KIND OF RELIEF.

4    SO THAT'S ONE --

5            THE COURT:  CAN'T OR DON'T?

6            MR. MCMORROW:  I THINK IN MOST CASES THEY CAN'T.

7            THE COURT:  CAN'T, OKAY.

8            MR. MCMORROW:  FOR EXAMPLE, IN COOK COUNTY, ILLINOIS,

9    WHERE MY HOMETOWN -- IN MY HOMETOWN, THE SMALL CLAIMS COURTS

10   CANNOT DO THAT.

11           THE COURT:  OKAY.

12           MR. MCMORROW:  SO ALSO THE -- I KIND OF LOST MY TRAIN

13   OF THOUGHT HERE FOR A SECOND, YOUR HONOR.

14           THE SECOND QUESTION IS THAT $500 -- THE $500 IN DAMAGES

15   FOR PURPOSES OF TRYING TO PROVE A CASE LIKE THIS IS AN

16   INSIGNIFICANT SUM.  IT'S NOT SIMPLY A MATTER OF -- IT'S AN

17   INSIGNIFICANT SUM WHEN YOU COMPARE IT TO THE COST OF LITIGATING

18   THAT CASE.  IN ORDER TO PROVE A CASE AGAINST MICROSOFT UNDER

19   THE TCPA, AN INDIVIDUAL PLAINTIFF WOULD NOT ONLY HAVE TO PROVE

20   THAT THEY WERE SENT THE MESSAGE AND THAT THEY DIDN'T CONSENT,

21   THEY WOULD ALSO HAVE TO PROVE THAT MICROSOFT SENT IT USING AN

22   AUTOMATIC TELEPHONE DIALING SYSTEM, AND THAT'S A FAIRLY

23   SIGNIFICANT UNDERTAKING.  TO PROVE THAT AN AUTOMATIC DIALING

24   SYSTEM WAS USED, THE PLAINTIFF WOULD HAVE TO PROVE THAT IT USED

25   EQUIPMENT -- IT WAS SENT USING EQUIPMENT THAT HAD THE CAPACITY

1    TO -- I'M SORRY, I'M LOSING THE WORDS OF THE STATUTE HERE.

2    (DISCUSSION HELD OFF THE RECORD.)

3         MR. MCMORROW:  TO SEND MESSAGES USING A -- GENERATE

4    NUMBERS USING A RANDOM OR SEQUENTIAL NUMBER GENERATOR AND TO

5    SEND THOSE MESSAGES.  SO THERE'S A LOT OF TECHNOLOGY THAT HAS

6    TO BE PROVEN IN ORDER TO PROVE A TCPA CASE.

7         SO TO SAY THAT AN INDIVIDUAL CLAIM FOR $500 OR A

8    MAXIMUM OF $1,500 IS AN ADEQUATE REMEDY, IT JUST SIMPLY ISN'T

9    THE CASE, PARTICULARLY WHEN IN THE STATUTE THERE IS NO

10   ATTORNEY'S FEE PROVISION.  SO PROVING A SIGNIFICANT CASE

11   AGAINST A MAJOR CORPORATION FOR $1,500 IN AN INJUNCTION, THAT'S

12   JUST SIMPLY NOT SOMETHING THAT -- THAT'S NOT ENOUGH INCENTIVE

13   FOR ANYBODY TO BRING AN INDIVIDUAL CLAIM.

14        SO IN THAT OTHER -- FOR THAT OTHER REASON, I THINK IT'S

15   QUITE CLEAR THAT THE ALTERNATIVE TO A CLASS ACTION IN A TCPA

16   CLAIM LIKE THIS IS NOT 55,000 INDIVIDUAL ACTIONS.  THE

17   ALTERNATIVE TO A CLASS ACTION HERE IS NONE, IS NO SUITS

18   WHATSOEVER.

19        THE COURT:  AS I STATED, COUNSEL, IN MY TENTATIVE, EVEN

20   IF VENUE IS PROPER HERE, THE DESIRABILITY FACTOR OF THE

21   SUPERIORITY ANALYSIS IS DIFFERENT.  WHY IS IT DESIRABLE TO HAVE

22   THIS LITIGATION IN THIS DISTRICT?

23        MR. MCMORROW:  WELL, AT THIS POINT, YOUR HONOR, THE

24   CASE HAS BEEN PENDING HERE FOR OVER TWO YEARS, AND THIS COURT

25   HAS BECOME VERY FAMILIAR WITH THE CASE.  YOUR HONOR IS

1    CERTAINLY MUCH MORE FAMILIAR WITH THIS CASE AT THIS POINT THAN

2    ANY OTHER JUDGE IN ANY OTHER DISTRICT COURT IN THE COUNTRY.

3         NOW, I THINK AT THE OUTSET, WHEN THE CASE WAS FILED,

4    THERE'S NO REASON TO SAY THAT THIS COURT WAS ANY MORE DESIRABLE

5    THAN ANY OTHER COURT, BUT OVER --

6         THE COURT:  WOULDN'T WASHINGTON HAVE BEEN BETTER?

7         MR. MCMORROW:  YOUR HONOR, AS WE SIT HERE RIGHT NOW, I

8    DON'T --

9         THE COURT:  BETTER'S NOT THE RIGHT WORD, BUT WHAT WOULD

10   BE THE ARGUMENT AGAINST GOING THERE?

11        MR. MCMORROW:  I DON'T KNOW THERE WOULD BE AN ARGUMENT

12   AGAINST GOING THERE.  I THINK IF WE HAD FILED THE CASE THERE, I

13   THINK THAT WOULD HAVE BEEN A PROPER PLACE TO FILE THE CASE.  I

14   THINK IF WE HAD FILED THE CASE IN ANY NUMBER -- THERE ARE A

15   NUMBER OF DIFFERENT COURTS WHERE VENUE IS PROPER.  THE QUESTION

16   OF WHETHER -- THE QUESTION OF WHETHER VENUE WAS PROPER THOUGH,

17   VENUE IS PROPER HERE.

18        THE COURT:  RIGHT, BUT THE DESIRABILITY FACTOR IS A

19   DIFFERENT ANALYSIS, SO THE CONVENIENCE AND FAIRNESS OF GOING

20   THIS ROUTE --

21   (DISCUSSION HELD OFF THE RECORD.)

22        THE COURT:  COUNSEL, I APOLOGIZE FOR INTERRUPTING.  I'M

23   GOING TO TAKE A BRIEF BREAK, AND YOU CAN THINK FOR A MOMENT AS

24   TO WHY YOU SHOULD BE HERE RATHER THAN IN WASHINGTON BECAUSE THE

25   CONVENIENCE AND THE FAIRNESS ISSUE IS SIGNIFICANT TO THE COURT.

1          MR. MCMORROW:  I'M HAPPY TO ADDRESS THAT AFTER YOU TAKE

2     YOUR BREAK, YOUR HONOR, IF YOU'D LIKE.  I THINK I CAN ADDRESS

3     IT FAIRLY ADEQUATELY NOW.

4          THE COURT:  THERE'S SOMETHING I NEED TO TURN TO OF A

5     SOMEWHAT URGENT MATTER.  SO LET ME TAKE CARE OF THAT AND I'LL

6     BE RIGHT BACK, COUNSEL, I'M SORRY.

7          MR. MCMORROW:  THANK YOU, YOUR HONOR.

8     (COURT WAS AT RECESS.)

9          THE COURT:  MY APOLOGIES FOR THE INTERRUPTION.  COME

10    BACK TO THE PODIUM, AND YOU WANTED TO RESPOND.

11         MR. MCMORROW:  YES, AND NO APOLOGIES NECESSARY, YOUR

12    HONOR.

13         ACTUALLY, IF IT'S OKAY WITH YOUR HONOR, I WOULD LIKE TO

14    ADD ONE MORE POINT ON THE DISCUSSION OF BURDEN AND

15    INDIVIDUALIZED QUESTIONS OF CONSENT.

16         THE COURT:  OF COURSE.

17         MR. MCMORROW:  WHICH I KIND OF NEGLECTED TO MENTION.

18         THE COURT:  SINCE YOU'RE GOING TO BACK UP TO THAT

19    POINT, LET ME JUST REMIND YOU THAT MY *HILTON* OPINION PREDATED

20    THE NINTH CIRCUIT *MEYER* OPINION.

21         MR. MCMORROW:  *MEYER* IS ACTUALLY WHAT I WAS GOING TO

22    DISCUSS, YOUR HONOR.

23         THE COURT:  OKAY.

24         MR. MCMORROW:  YOUR HONOR, I THINK AS THE *MEYER* OPINION

25    SHOWED, AND HAS ALSO BEEN SHOWN IN *LEE VS. STONEBRIDGE*, AND IN

1     THE CASE OF *AMERICAN HOME SERVICES VS. A FAST SIGN*, ALL OF

2     WHICH WERE CITED IN OUR REPLY BRIEF, REGARDLESS OF WHERE THE

3     BURDEN LIES, IF THE DEFENDANT HAS ABSOLUTELY NO EVIDENCE TO

4     SHOW THAT ANYONE GAVE IT CONSENT, THE *MEYER* OPINION STANDS FOR

5     THE PROPOSITION THAT REGARDLESS OF WHERE THAT BURDEN LIES, WHEN

6     IT'S BEEN SHOWN THAT THEY CAN'T MEET IT, THEN IT'S PROPER TO

7     CERTIFY THE CLASS.

8        HERE, EVEN TAKING EVERYTHING THAT MICROSOFT HAS PUT

9     FORWARD, HAS PROFFERED, AT FACE VALUE, NONE OF IT SHOWS, NONE

10    OF IT SHOWS THAT ANY OF THE CLASS MEMBERS GAVE CONSENT TO

11    MICROSOFT.  EVEN IF THE MISSING EVIDENCE OF THE

12    CONSENT-GATHERING PROCEDURES FROM COME & STAY, EVEN IF THE

13    COURT FOUND THAT THAT MISSING EVIDENCE WERE HERE, AND COULD

14    ASSUME SOME LANGUAGE IN IT, NONE OF THAT LANGUAGE SHOWS THAT

15    ANY OF THOSE CLASS MEMBERS GAVE CONSENT TO RECEIVE TEXT

16    MESSAGES FROM MICROSOFT.

17       SO IN LIGHT OF THAT, IN LIGHT OF THE *MEYER* OPINION, AND

18    THOSE OTHER OPINIONS THAT ALSO SAID THE SAME THING, I THINK

19    IT'S FAIRLY CLEAR THAT WHERE THERE IS ABSOLUTELY NO EVIDENCE,

20    WHERE THE DEFENDANT HAS ABSOLUTELY NO EVIDENCE OF CONSENT, THEN

21    IT'S PROPER TO PROCEED ON A CLASS BASIS THERE.

22       NOW, TURNING BACK TO THE QUESTION OF SUPERIORITY AS IT

23    RELATES TO THIS PARTICULAR COURT, UNLESS YOU HAD SOME FOLLOW-UP

24    QUESTIONS ON THAT, YOUR HONOR.

25       THE COURT:  NO, NO, GO AHEAD.

1          MR. MCMORROW:  WHEN YOUR HONOR READ THE TENTATIVE YOU

2     MENTIONED THAT FACTOR AS A NEGATIVE, AND YOU MENTIONED THAT IT

3     WAS A NEGATIVE BECAUSE THIS COURT WASN'T ANY BETTER SITUATED TO

4     -- WASN'T NECESSARILY A BETTER VENUE THAN, SAY, THE WESTERN

5     DISTRICT OF WASHINGTON OR SOME OTHER COURT, AND FACTUALLY, YOUR

6     HONOR, I THINK THE IDEA THAT THE COURTS IN WASHINGTON WOULD BE

7     A BETTER PLACE THAN THIS COURT, I THINK THERE'S VERY LITTLE TO

8     SUPPORT THAT.  THERE ARE ONLY, AT BEST, GOING TO BE A COUPLE OF

9     WITNESSES FROM MICROSOFT.  MICROSOFT MORE OR LESS OUTSOURCED

10    THIS ENTIRE PROCESS, AND SO THE RELEVANT WITNESSES AREN'T

11    REALLY, FOR THE MOST PART, MICROSOFT WITNESSES.  THE COME &

12    STAY WITNESSES, THEY'RE IN FLORIDA.  THE PLAINTIFF IS IN

13    CHICAGO.  MICROSOFT'S IN WASHINGTON.  THE DEFENSE COUNSEL'S IN

14    PHILADELPHIA AND HERE, AND THE PLAINTIFF'S COUNSEL IS IN

15    CHICAGO AND IN LOS ANGELES.  SO TO SAY THAT WASHINGTON WOULD BE

16    A BETTER COURT THAN THIS, IT MIGHT BE A SLIGHTLY MORE

17    CONVENIENT COURT FOR MICROSOFT, BUT OTHER THAN THAT THERE'S

18    REALLY NO REASON THAT WASHINGTON WOULD BE A BETTER COURT.

19          AND SO WHILE THE COURT IN ITS TENTATIVE STATED THAT

20    THIS WAS A NEGATIVE FACTOR, I THINK AT WORST IT'S A NEUTRAL

21    FACTOR BECAUSE THIS COURT HAS -- AS I MENTIONED, THIS COURT HAS

22    OVER TWO YEARS WITH THIS CASE AND HAS A LOT OF SPECIFIC

23    KNOWLEDGE AND EXPERTISE THAT THE COURT'S DEVELOPED ABOUT THIS

24    CASE.  THIS COURT'S ALREADY ISSUED A VERY SIGNIFICANT RULING IN

25    THIS CASE ON THE MOTION TO DISMISS, AND WE'VE HAD VERY

1    SIGNIFICANT BRIEFING AND ARGUMENT HERE ON THE CLASS

2    CERTIFICATION MOTION.  SO I THINK THIS COURT'S EXPERIENCE, IN

3    MY ESTIMATION, WOULD TIP THAT TO BEING A POSITIVE FACTOR FOR

4    CLASS CERTIFICATION, BUT I THINK AT WORST IT'S A NEUTRAL

5    FACTOR.

6         THIS IS TRULY A NATIONAL CASE.  THE WITNESSES, THE

7    COUNSEL AND EVERYBODY ARE FROM ALL OVER.  AND, OF COURSE, VENUE

8    WAS PROPER HERE, IT WAS NEVER CHALLENGED WHEN THE CASE WAS

9    FILED HERE, AND I THINK EFFECTIVELY REVISITING THE VENUE

10   DECISION TWO YEARS AFTER THE FACT, FOR PURPOSES OF SIMPLY

11   DENYING THE CLASS CERTIFICATION ON THAT BASIS, I THINK WOULD BE

12   UNFAIR TO THE CLASS MEMBERS.

13        THE COURT:  MY NEXT QUESTION, COUNSEL, IS REALLY MORE A

14   POINT OF CLARIFICATION, AND IT'S THIS, DOES THE SCRUBBED LIST

15   IDENTIFY ONLY CELL PHONE NUMBERS THAT COULD HAVE RECEIVED THE

16   XBOX TEXT MESSAGES OR DOES IT MERELY IDENTIFY CELL PHONE

17   NUMBERS GENERALLY, INCLUDING THOSE THAT COULD NOT HAVE RECEIVED

18   THE MESSAGE, FOR EXAMPLE, BECAUSE THEY HAD TEXT MESSAGING

19   DISABLED ON THEIR PHONES?

20        MR. MCMORROW:  CAN YOU REPEAT THE QUESTION.

21        THE COURT:  LET ME SAY IT AGAIN.  I'M TALKING ABOUT THE

22   SCRUBBED LIST.  DOES IT IDENTIFY ONLY CELL PHONE NUMBERS THAT

23   COULD HAVE RECEIVED THE XBOX TEXT MESSAGE OR DOES IT IDENTIFY

24   CELL PHONE NUMBERS MORE GENERALLY, INCLUDING THOSE THAT

25   COULDN'T HAVE RECEIVED IT BECAUSE, FOR EXAMPLE, THEY HAD TEXT

1          MESSAGING CAPABILITY DISABLED ON THEIR PHONE.

2                  MR. MCMORROW:  WELL, YOUR HONOR --

3                  THE COURT:  DO WE KNOW WHAT THAT LIST REPRESENTS?

4                  MR. MCMORROW:  THE LIST REPRESENTS ALL CELL PHONE

5          NUMBERS, AND ALL OF THOSE CELL PHONE NUMBERS COULD HAVE

6          RECEIVED THE MESSAGE.  NOW, MICROSOFT HAS COME FORWARD WITH A

7          SINGLE CLASS MEMBER WHO CLAIMS THAT HE HAD TEXT MESSAGING

8          BLOCKED ON HIS PHONE AS OF SEPTEMBER 12, 2008, BUT THERE'S --

9          AT THE SAME TIME THERE'S NO DOCUMENTARY EVIDENCE OF THAT.

10         THERE'S NO EVIDENCE FROM HIS CARRIER SAYING THAT HE HAD TEXT

11         MESSAGED BLOCK, AND THERE'S NO EVIDENCE THAT HE DIDN'T RECEIVE

12         THIS TEXT MESSAGE.

13                 I WOULD CONTEND THAT ALL OF THE 55,123 CELL PHONE

14         NUMBERS THAT ARE ON THAT LIST WERE CAPABLE OF RECEIVING THE

15         TEXT MESSAGE.  NONETHELESS, YOUR HONOR, THE VIOLATION OF THE

16         TCPA IS COMPLETE UPON THE SENDING OF THE MESSAGE.  IT'S

17         COMPLETE UPON TRANSMISSION.  AND SO IT'S REALLY -- I THINK IT'S

18         REALLY NEITHER HERE NOR THERE WHETHER YOU TALK ABOUT THE

19         MESSAGE BEING SENT OR BEING RECEIVED.  I THINK WE COULD -- IT

20         WOULD HAVE BEEN NO DIFFERENT HAD IT BEEN STATED IN THE CLASS

21         CERTIFICATION MOTION AS THE NUMBERS TO WHICH MICROSOFT SENT THE

22         TEXT MESSAGE.

23                 THE COURT:  AS I STATED IN MY TENTATIVE, COUNSEL, I

24         HAVE SIGNIFICANT CONCERNS ABOUT THE MANAGEABILITY OF THIS

25         LAWSUIT, IN PARTICULAR WITH REGARD TO IDENTIFYING AND NOTIFYING

```
 1        THE MEMBERS OF THE CLASS.

 2              MR. MCMORROW:  YES, YOUR HONOR.

 3              THE COURT:  SO HOW CAN YOU ALLAY THOSE MISGIVINGS?

 4              MR. MCMORROW:  WELL, I THINK, AS MR. SNYDER POINTED OUT

 5        IN HIS SUPPLEMENTAL DECLARATION, THERE ARE A NUMBER OF WAYS IN

 6        WHICH WE CAN, AFTER CERTIFICATION, PUT NAMES AND ADDRESSES TO

 7        THE PHONE NUMBERS THAT ARE ON THAT LIST.  KEEP IN MIND, WHETHER

 8        -- YOU MENTIONED IN YOUR TENTATIVE RULING THAT MICROSOFT'S

 9        EXPERT TESTIFIED THAT AS MANY AS 25 PERCENT OF THOSE NUMBERS

10        MAY NO LONGER BE IN SERVICE, AND ASSUMING THAT THAT PERCENTAGE

11        IS CORRECT, IT REALLY DOESN'T MATTER.  THE PEOPLE WHO ARE ON

12        THAT LIST -- THE PHONE NUMBERS THAT ARE ON THAT LIST ARE THE

13        PHONE NUMBERS FOR THE PEOPLE WHO OWNED THOSE PHONE NUMBERS AS

14        OF SEPTEMBER 12TH, 2008.

15              WHETHER THE PHONES ARE STILL IN SERVICE OR NOT, THOSE

16        PEOPLE CAN BE IDENTIFIED, AND MR. SNYDER MENTIONED IN HIS

17        DECLARATION SEVERAL DIFFERENT WAYS IN WHICH THEY CAN BE

18        IDENTIFIED.  THEY CAN BE IDENTIFIED THROUGH THE CARRIERS.  THE

19        CARRIERS WILL HAVE THAT INFORMATION FOR THE MOST PART.  AND TO

20        THE EXTENT THAT THE CARRIERS -- THAT SOME OF THE CARRIERS DON'T

21        HAVE THAT INFORMATION, THERE ARE THIRD-PARTY SERVICES OUT

22        THERE, INCLUDING THERE ARE TWO THAT I BELIEVE HE IDENTIFIED

23        SPECIFICALLY, NEWSTAR INFORMATION SERVICES AND A.B. DATA, THAT

24        CAN DO REVERSE LOOKUPS AND CAN GET THAT KIND OF INFORMATION.

25              I WOULD ALSO POINT OUT TO YOUR HONOR THAT WHEN WE'VE
```

1    SETTLED CASES LIKE THIS IN THE PAST, WHEN WE'VE SETTLED TCPA

2    CLASS ACTIONS FOR TEXT MESSAGES THAT WERE SENT SEVERAL YEARS

3    AGO, WE'VE HAD NO PROBLEM GOING TO THESE SAME THIRD-PARTY

4    SERVICES AND DOING REVERSE LOOKUPS TO FIND OUT ACCURATE

5    INFORMATION ABOUT THOSE CLASS MEMBERS.

6         THE COURT:   OKAY.  I HAVE SOME GRAVE CONCERNS REGARDING

7    THE AVAILABILITY OF EVIDENCE THAT SEEMS TO NO LONGER EXIST,

8    GIVEN THE XBOX TEXT MESSAGES WERE SENT MORE THAN FIVE YEARS

9    AGO, AND COME & STAY NO LONGER EXISTS, AND ITS BUSINESS RECORDS

10   SEEMED TO HAVE BEEN LOST OR DESTROYED, NOBODY CAN LOCATE.  WHY

11   ARE THESE EVIDENTIARY CONCERNS NOT FATAL?

12        MR. MCMORROW:   I'M GLAD YOU ASKED THAT QUESTION, YOUR

13   HONOR.  THEY'RE NOT FATAL FOR A NUMBER OF REASONS.  THE FIRST

14   OF THE REASONS IS, AND I THINK WE'VE POINTED IT OUT IN OUR

15   REPLY BRIEF IN RESPONSE TO THE LACHES ARGUMENT THAT MICROSOFT

16   RAISED, MICROSOFT AND COME & STAY, TO THE EXTENT THAT THEIR

17   RECORDS HAVE BEEN DESTROYED, THEY'RE THE ONES WHO DESTROYED

18   THEM.  YOU KNOW, THE PLAINTIFF HAD NOTHING TO DO WITH THAT.

19   THAT'S ONE REASON THAT I THINK THAT SHOULD ALLAY YOUR CONCERNS.

20        THE FACT THAT THE EVIDENCE IS MISSING IS BECAUSE OF THE

21   FAULT OF THE DEFENDANT AND ITS AGENTS.  BUT MORE IMPORTANTLY,

22   YOUR HONOR, THE THING THAT SHOULD ALLAY YOUR CONCERNS ABOUT

23   THAT MISSING EVIDENCE -- THAT SO-CALLED MISSING EVIDENCE FROM

24   COME & STAY, IS THAT IT'S QUITE OBVIOUS THAT THAT EVIDENCE,

25   EVEN IF IT WERE HERE, IT WOULD NOT, AND MICROSOFT CAN'T

1    POSSIBLY CONTEND, THAT IT WOULD SHOW THAT ANY OF THE 55,123

2    CLASS MEMBERS GAVE CONSENT TO RECEIVE TEXT MESSAGES FROM

3    MICROSOFT.

4         SO EVEN IF THAT SO-CALLED MISSING EVIDENCE REALLY

5    EXISTED, AND I THINK THERE'S PLENTY OF CONCERN AS TO WHETHER

6    THAT EVIDENCE EVER REALLY DID EXIST, BUT EVEN IF IT DID EXIST,

7    AND EVEN IF IT STILL EXISTED NOW, AND EVEN IF IT WAS BEFORE THE

8    COURT, WHAT SHOULD ALLAY YOUR CONCERNS, YOUR HONOR, IS THAT

9    THERE'S NO QUESTION, NONE OF THAT EVIDENCE, NONE, WOULD SHOW

10   THAT ANY OF THE 55,123 MEMBERS ON THAT LIST, IF THEY HAD GIVEN

11   CONSENT TO COME & STAY, NONE OF THEM HAD GIVEN CONSENT TO

12   RECEIVE TEXT MESSAGES FROM MICROSOFT.

13        THE BEST CASE SCENARIO FOR THAT EVIDENCE, WERE IT HERE,

14   HAD IT EVER EXISTED, AND IF IT STILL EXISTED, THE BEST CASE

15   SCENARIO WOULD BE THE SAME ARGUMENT THAT THE DEFENDANTS MADE

16   AND LOST IN THE *SATTERFIELD* CASE.  IN THE *SATTERFIELD* CASE, THE

17   DEFENDANT AND ITS AGENTS ACTUALLY HAD EVIDENCE OF CONSENT THAT

18   WAS PURPORTEDLY GIVEN TO NEXTONES, WHICH WAS THE TEXT MESSAGE

19   MARKETER IN THAT CASE, AND NEXTONES ACTUALLY CAME FORWARD WITH

20   EVIDENCE THAT THEY SAID PURPORTED TO BE CONSENT FOR THE CLASS

21   MEMBERS TO RECEIVE TEXT MESSAGES FROM SIMON & SCHUSTER, AND IN

22   THAT SCENARIO, WHERE THEY HAD THE EVIDENCE, THE NINTH CIRCUIT

23   SAID, "WE LOOKED AT THIS EVIDENCE, IT'S CLEARLY NOT CONSENT TO

24   RECEIVE TEXT MESSAGES FROM SIMON & SCHUSTER."

25        AND SO IF THAT EVIDENCE THAT WE'RE TALKING ABOUT HERE,

1          YOUR HONOR, IF IT WERE HERE BEFORE THE COURT, THE BEST CASE

2     SCENARIO THAT MICROSOFT WOULD HAVE WOULD BE THAT SAME LOSING

3     SCENARIO FROM SIMON & SCHUSTER.  BECAUSE THERE'S NO QUESTION,

4     AND MICROSOFT HASN'T SUGGESTED IN ANY WAY, THAT THE CONSENTS

5     THAT COME & STAY PURPORTEDLY OBTAINED WERE CONSENTS FOR PEOPLE

6     TO RECEIVE TEXT MESSAGES FROM MICROSOFT.

7          AND MICROSOFT ITSELF KNOWS HOW TO OBTAIN CONSENT FOR

8     PEOPLE TO RECEIVE TEXT MESSAGES FROM MICROSOFT.  ANOTHER

9     MISSING PIECE OF EVIDENCE IS THIS MISSING LIST OF 25,000 PEOPLE

10    THAT MICROSOFT SAYS THAT IT GATHERED WHO GAVE CONSENT TO

11    MICROSOFT TO RECEIVE TEXT MESSAGES FROM MICROSOFT.  AND NOW

12    MICROSOFT HAS LOST THAT LIST, BUT THERE'S NO SUGGESTION THAT

13    ANY OF THE NUMBERS ON THE LIST IN FRONT OF THE COURT WERE THOSE

14    25,000 NUMBERS, AND WE ADDRESSED THAT IN OUR REPLY BRIEF.

15          SO MICROSOFT KNOWS WHAT CONSENT TO RECEIVE TEXT

16    MESSAGES FROM MICROSOFT WOULD LOOK LIKE, AND THERE'S JUST

17    SIMPLY NO QUESTION THAT THE MISSING COME & STAY EVIDENCE, HAD

18    IT EVER EXISTED, WHICH I THINK IS A QUESTION, AND WERE IT STILL

19    IN EXISTENCE TODAY, NONE OF THAT WOULD SHOW THAT ANY OF THE

20    CLASS MEMBERS CONSENTED TO RECEIVE TEXT MESSAGES FROM

21    MICROSOFT.

22          THE COURT:  FINALLY, COUNSEL, BEFORE YOU SIT DOWN, I

23    WANT TO GO BACK TO THE ISSUE OF INJUNCTIVE RELIEF, AND I'M

24    WONDERING WHY YOU THINK THAT'S NECESSARY WHEN THESE MESSAGES

25    ARE FIVE YEARS OLD.  WHY DO WE NEED INJUNCTIVE RELIEF?

1        MR. MCMORROW:  IN THIS CASE SUBSTANTIVELY, WELL --

2        THE COURT:  I MEAN, THAT ALSO GOES BACK TO WHY ISN'T

3    SMALL CLAIMS COURT ADEQUATE?  NOBODY HERE NEEDS INJUNCTIVE

4    RELIEF, DO THEY?

5        MR. MCMORROW:  I THINK INJUNCTIVE RELIEF IS WARRANTED

6    HERE.  I THINK INJUNCTIVE RELIEF IS MORE IMPORTANT IN THIS CASE

7    THAN IT IS IN MOST TCPA TEXT MESSAGES CASE, BECAUSE OF WHO

8    MICROSOFT IS.  MICROSOFT IS A VERY LARGE COMPANY WITH A VERY

9    LARGE ADVERTISING BUDGET, AND IT CURRENTLY LICENSES, AS FAR AS

10   I CAN, FOUR DIFFERENT SHORT CODES FROM NEWSTAR FOR THE SENDING

11   OF TEXT MESSAGES.  MICROSOFT SEEMS TO BE ACTIVE IN TEXT MESSAGE

12   MARKETING.  WHEREAS OTHER COMPANIES WHO SIMPLY AREN'T IN

13   EXISTENCE ANYMORE OR WHO DON'T ADVERTISE IN THE SAME WAY

14   ANYMORE, WHEREAS AN INJUNCTION MIGHT NOT BE THE MOST USEFUL

15   RELIEF AGAINST THEM, I THINK IT'S A MUCH MORE USEFUL TYPE OF

16   RELIEF AGAINST MICROSOFT.  MICROSOFT'S NOT GOING ANYWHERE.  I

17   DON'T SEE ANY REASON TO THINK THAT MICROSOFT IS GOING TO STOP

18   ADVERTISING BY TEXT MESSAGES.  SO I THINK INJUNCTIVE RELIEF

19   WOULD BE MUCH MORE EFFECTIVE AGAINST MICROSOFT THAN THE TYPICAL

20   DEFENDANT.

21       MOREOVER, YOUR HONOR, I MEAN, THE STATUTE PROVIDES FOR

22   THE AVAILABILITY OF INJUNCTIVE RELIEF.  TO SAY THAT SOMEBODY

23   SHOULDN'T BE ABLE TO GET THE RELIEF THAT'S SET OUT IN THE

24   STATUTE, THAT THAT SHOULDN'T BE AVAILABLE TO THEM, YOU KNOW, I

25   THINK THAT WOULD BE ALTERING THE STATUTE, AND I THINK IT WOULD

1    BE GOING AGAINST WHAT CONGRESS -- THE WILL OF CONGRESS WHEN

2    THEY ENACTED IT.

3         THE COURT:  MY POINT WAS PRIMARILY, GIVEN THAT THESE

4    MESSAGES WERE AT LEAST FIVE YEARS OLD, IT DOESN'T REALLY

5    MANIFEST MUCH OF A NEED.  I'M JUST INQUIRING.  I KNOW THAT IT'S

6    PERMITTED.  I KNOW IT'S OUT THERE.  I WAS JUST INQUIRING, GIVEN

7    THE FACTS OF THIS CASE.

8         MR. MCMORROW:  SURE, AND I THINK IF THE ONLY -- IF THE

9    DEFENDANT IN THIS CASE WERE A COMPANY THAT WERE OUT OF BUSINESS

10   BECAUSE THE TEXT MESSAGES AT THIS POINT WERE SENT FIVE YEARS

11   AGO, AND THE DEFENDANT WERE NO LONGER SENDING TEXT MESSAGES, I

12   COULD SEE THAT BEING A REASONABLE CONCERN, BUT WHERE THE

13   DEFENDANT HERE IS MICROSOFT, AND MICROSOFT HAS A LOT OF AD

14   AGENCIES THAT DO A LOT OF ADVERTISING FOR THEM, AND WITH A BIG

15   COMMITMENT TO MOBILE IN GENERAL, AS SEEN BY SOME OF THEIR

16   PHYSICAL PRODUCTS.  SO I THINK MORE THAN OTHER DEFENDANTS, I

17   THINK INJUNCTIVE RELIEF AGAINST MICROSOFT WOULD BE VERY

18   EFFECTIVE.

19        THE COURT:  THANK YOU, COUNSEL.  THOSE ARE THE ONLY

20   QUESTIONS I HAVE FOR PLAINTIFF AT THIS TIME.

21        WHOEVER WOULD LIKE TO TAKE THE QUESTIONS ON BEHALF OF

22   MICROSOFT.

23        MR. MCMORROW:  THANK YOU, YOUR HONOR.

24        THE COURT:  THANK YOU, SIR.

25        MR. CASPER:  YOUR HONOR, I'M CHUCK CASPER HERE

```
 1        REPRESENTING MICROSOFT, AND I WOULD BE HAPPY TO ANSWER THE

 2        COURT'S QUESTIONS.

 3               THE COURT:  THANK YOU, SIR.

 4               MY FIRST QUESTION IS THIS, YOU ARGUE THAT CONSENT IS AN

 5        ISSUE REQUIRING INDIVIDUAL ASSESSMENT.

 6               MR. CASPER:  YES.

 7               THE COURT:  HOWEVER, YOU ALSO OFFER EVIDENCE SUGGESTING

 8        THAT COME & STAY USED A DOUBLE ACTIVE OPT-IN PROCEDURE IN

 9        OBTAINING THE CONSENT OF SUBSCRIBERS, SUGGESTING A COMMON

10        QUESTION; WHY DO YOU THINK THIS IS AN INDIVIDUALIZED ISSUE?

11               MR. CASPER:  IT'S AN INDIVIDUALIZED ISSUE, YOUR HONOR,

12        BECAUSE THERE'S LOTS OF EVIDENCE OF CONSENT HERE, AND IT CAN'T

13        BE DETERMINED ON A CLASS-WIDE BASIS.

14               LET ME RESPOND TO THE COMMENTS YOU JUST HEARD SAYING

15        THAT THERE IS ABSOLUTELY NO EVIDENCE OF CONSENT HERE

16        WHATSOEVER.  MICROSOFT HAS NO EVIDENCE OF CONSENT BECAUSE IT

17        GOES RIGHT TO THE HEART OF THE COURT'S QUESTIONS.  SO WHAT WAS

18        THE EVIDENCE OF CONSENT HERE?  THERE'S PLENTY OF EVIDENCE OF

19        CONSENT THAT REQUIRES THE NEED FOR INDIVIDUAL EVIDENCE.  FOR

20        EXAMPLE, YOUR HONOR, OUT OF 55,000 TEXT MESSAGES THAT WERE

21        SENT, ONLY SEVEN PEOPLE OPTED OUT.  NOW, IT WOULD BE VERY EASY

22        FOR THE PEOPLE TO OPT OUT SIMPLY BY PRESSING A FEW KEYS ON

23        THEIR CELL PHONE.  ONLY SEVEN OPTED OUT.

24               THE NORTH CAROLINA COURT OF APPEALS TOOK THAT INTO

25        ACCOUNT -- WHEN THEY FOUND OUT THERE WAS ONLY ONE COMPLAINT
```

1   FROM 978 MEMBERS, THEY TOOK THAT INTO ACCOUNT IN DENYING -- IN

2   AFFIRMING THE DENIAL OF CLASS CERTIFICATION, SO YOU HAVE THAT

3   COMPELLING EVIDENCE THAT THERE WAS CONSENT FROM THE PEOPLE WHO

4   GOT THE MESSAGES.

5          YOU ALSO HAVE MR. MCNAMARA, NOT THIS MR. MCNAMARA BUT

6   THE MR. MCNAMARA IN FLORIDA -- AND BY THE WAY I SHOULD ALSO

7   TELL YOUR HONOR THAT COME & STAY WAS ALWAYS IN FLORIDA.  COME &

8   STAY NEVER HAD ANY CONNECTION TO THIS DISTRICT WHATSOEVER.

9   THERE'S NO CONNECTION WHATSOEVER BETWEEN ANYTHING IN THIS

10  DISTRICT.  MR. MCNAMARA, WHO WAS THE CEO OF COME & STAY BETWEEN

11  2006 AND 2008, SAID THAT HE KNEW THAT YOU HAD TO HAVE CONSENT,

12  ALONG WITH EVERYBODY ELSE IN THE INDUSTRY, WHEN YOU SENT TEXT

13  MESSAGES.

14         AND HE SAID DESPITE THE FACT THAT THEY DID THIS ALL THE

15  TIME, THAT HE NEVER HAD A SINGLE COMPLAINT ABOUT A TEXT MESSAGE

16  GOING OUT AND NOT HAVING CONSENT.  AND HE SAID THAT THEY ONLY

17  HAD 40 PEOPLE WORKING IN THE OFFICE AT THE TIME HERE IN THE

18  U.S., AND HE KNEW ALL OF THEM, AND HE SAID, "THERE'S NO DOUBT

19  THAT IF WE HAD BEEN SENDING MESSAGES WITHOUT CONSENT THAT I

20  WOULD HAVE HEARD ABOUT IT, THAT MY CLIENTS WHO WERE PAYING GOOD

21  MONEY FOR THIS WOULD HAVE DEMANDED A REFUND, BUT NONE OF THAT

22  EVER HAPPENED."

23         MICROSOFT ALSO WAS ASKED TO LOOK THROUGH ITS RECORDS

24  FOR EVIDENCE OF COMPLAINTS, PEOPLE WHO SAY THEY DIDN'T CONSENT,

25  AND FOUND NONE WHATSOEVER.  SO THAT'S ALL SUBSTANTIAL EVIDENCE

1    OF CONSENT THAT'S IN THE RECORD HERE IN THIS CASE.

2            NOW, IN ADDITION TO THAT, WE HAVE MR. GREGORY.  NOW,

3    MR. GREGORY WAS ASKED DID HE CONSENT, AND HE DID THE BEST HE

4    COULD AFTER FIVE YEARS, AND HE TESTIFIED IN A WAY THAT THE JURY

5    WOULD BE ENTITLED TO HEAR, HE SAID, "I THINK IT'S LIKELY THAT I

6    DID CONSENT TO RECEIVE THAT TYPE OF TEXT MESSAGE."  HE SAID, "I

7    DO BELIEVE THAT I MORE THAN LIKELY CONSENTED TO RECEIVE

8    ADVERTISING TEXT MESSAGES BACK IN 2008."

9            SO IF THIS CASE WERE TO BE TRIED, WE WOULD, OF COURSE,

10   HAVE THE EVIDENCE FROM COME & STAY, BUT WE WOULD ALSO HAVE

11   TESTIMONY FROM PEOPLE LIKE MR. GREGORY.  MR. GREGORY IS ONE

12   PERSON, BUT WE ONLY TALKED TO 163 PEOPLE.  THERE ARE -- THIS IS

13   A CLASS OF 55,123, AND THERE ARE MANY, MANY, MANY MR. GREGORIES

14   OUT THERE AND THE JURY WOULD BE ENTITLED TO HEAR THEIR EVIDENCE

15   AND THEIR TESTIMONY AND DECIDE WHETHER OR NOT, BASED ON THAT,

16   THEY MORE THAN LIKELY DID NOT CONSENT.  SO I THINK WHEN YOU ADD

17   ALL THAT UP, THAT ADDS UP TO SUBSTANTIAL EVIDENCE OF CONSENT.

18           I SHOULD ALSO ADD THAT COME & STAY WAS NOT A

19   FLY-BY-NIGHT OPERATION.  COME & STAY WAS PART OF A BIG

20   INTERNATIONAL COMPANY, WITH OFFICES IN 14 COUNTRIES, AND THEY

21   DID TEXT MESSAGING CAMPAIGNS FOR VERY SOPHISTICATED COMPANIES.

22   THE U.S. NAVY, FOOT LOCKER, A COMPANY THAT LATER BECAME PART OF

23   TICKETMASTER.  YOU KNOW, THOSE ARE NOT THE KIND OF COMPANIES

24   THAT THEY WOULD HAVE BEEN WORKING FOR IF, AS THE PLAINTIFFS

25   CONTEND, THERE WAS NO CONSENT WHATSOEVER.  BECAUSE EVERY ONE OF

1    THOSE COMPANIES WOULD HAVE BEEN INUNDATED WITH COMPLAINTS AND

2    WOULD HAVE GONE RIGHT BACK TO MR. MCNAMARA AND SAID, "WHAT ARE

3    YOU DOING HERE?  YOU'RE VIOLATING THE LAW.  I WANT MY MONEY

4    BACK."

5            DOES THAT ANSWER THE COURT'S QUESTIONS ABOUT THE KIND

6    OF EVIDENCE WE WOULD PUT ON?

7            THE COURT:  IT DOES.  THANK YOU, COUNSEL.

8            DESPITE THE FACT THAT EXPRESS PRIOR CONSENT IS

9    OSTENSIBLY AN ELEMENT TO A TCPA CLAIM, THE 2008 FCC DECLARATORY

10   RULING PLACES THE BURDEN OF PROVING EXPRESS PRIOR CONSENT IN

11   THE DEBT COLLECTION CONTEXT ON THE DEFENDANT BECAUSE THE

12   CREDITORS ARE IN THE BEST POSITION TO HAVE RECORDS KEPT IN THE

13   USUAL COURSE OF BUSINESS SHOWING SUCH CONSENT.  THIS IS TRUE

14   EVEN IF THE CALLS ARE PLACED BY A THIRD PARTY ON THE CREDITOR'S

15   BEHALF.  DOESN'T THE SAME LOGIC HOLD HERE?  WHY ARE YOU NOT

16   RESPONSIBLE FOR KEEPING RECORDS OF THE TEXT MESSAGING -- OR

17   TEXT MESSAGES, I SHOULD SAY, THAT COME & STAY SENT ON YOUR

18   BEHALF?

19           MR. CASPER:  SO THE FCC RULING, YOUR HONOR, WAS A VERY

20   SPECIFIC RULING DESIGNED TO ASK A VERY NARROW QUESTION ABOUT

21   CREDITORS.  SO THE QUESTION THAT WENT TO THE FCC WAS, IF YOU'RE

22   COLLECTING DEBTS, AND YOU HAVE A SITUATION WHERE WHEN THE

23   DEBTOR FILLED OUT THE CREDIT APPLICATION THEY GAVE THEIR CELL

24   PHONE NUMBER OR EVEN THEIR HOME NUMBER, AND THEN THEY DEFAULT

25   ON THEIR DEBT, AND YOU WANT TO CALL THEM TO COLLECT, OR I

1    SUPPOSE YOU COULD SEND THEM A TEXT MESSAGE BUT IT'S MAINLY

2    CALLS I THINK IN THAT CONTEXT, BUT THE CREDITORS WANTED TO

3    KNOW, YOU KNOW, "IS IT OKAY FOR US TO USE THE NUMBER THAT WAS

4    GIVEN TO US AS PART OF THE CREDIT APPLICATION?"  THE ONLY

5    QUESTION THE FCC ANSWERS IN THAT RULING IS THAT VERY QUESTION,

6    IT SAYS, "YES, THE CREDITOR -- IT'S OKAY FOR THE CREDITOR TO

7    MAKE CALLS IN THAT SITUATION."  THE FCC SAYS, "YES, THAT'S GOOD

8    ENOUGH.  IF THEY GAVE YOU THEIR CELL PHONE NUMBER, THEY DEFAULT

9    ON THE DEBT, YOU CAN CALL THEM, NO PROBLEM."  BUT THEN THE FCC

10   WENT ON TO SAY, "IN THIS CASE, BECAUSE YOUR CLAIM IS THAT THE

11   PERSON GAVE YOU THE NUMBER, YOU HAVE TO KEEP A RECORD OF WHAT

12   THEY GAVE YOU, THE APPLICATION THEY FILLED OUT OR WHATEVER

13   ELSE."  IT SAYS, "THE CREDITOR SHOULD BE RESPONSIBLE FOR

14   DEMONSTRATING EXPRESS CONSENT."

15        BUT IT DOESN'T APPLY IN THE BROADER CONTEXT HERE

16   BECAUSE MICROSOFT NEVER HAD THE EVIDENCE OF CONSENT THAT COME &

17   STAY, AND THE COMPANY THAT PROVIDED THE LIST TO COME & STAY,

18   HAD.  THERE'S NOTHING MICROSOFT COULD DO TO RETAIN THE EVIDENCE

19   BECAUSE MICROSOFT NEVER HAD IT.  AND SO I THINK THERE'S NO

20   REASON TO TRY TO APPLY THAT FCC RULING ANY MORE BROADLY THAN IT

21   WAS INTENDED TO THE CREDITOR/DEBTOR SITUATION WHERE YOU'VE GOT

22   THAT SPECIFIC TRANSFER OF INFORMATION THAT IT WAS GOING.

23        I SHOULD ALSO ADD, YOUR HONOR, THAT THE *MEYER* COURT --

24   WHEN THE NINTH CIRCUIT DECIDED THAT IT'S AN ELEMENT OF THE

25   PLAINTIFF'S CLAIM TO DEMONSTRATE THAT THE CALL WAS MADE WITHOUT

1    THE RECIPIENT'S PRIOR EXPRESS CONSENT, THE *MEYER* COURT CITED

2    THE FCC RULING, WAS VERY MUCH AWARE OF IT, AND NONETHELESS

3    RULED THAT IT WAS AN ELEMENT OF THE PLAINTIFF'S CLAIM.  AND

4    JUDGE ALSUP, IN THE *FIELDS* CASE, DID THE SAME THING.  I MEAN,

5    HE RECOGNIZED THAT AND DECIDED THAT IT WAS, IN FACT, AN ELEMENT

6    OF THE PLAINTIFF'S CLAIM.  OF COURSE, IF IT'S AN ELEMENT OF THE

7    PLAINTIFF'S CLAIM, LIKE *MEYERS* SAID, AFTER YOUR HONOR'S RULING

8    IN THE *HILTON* CASE, IT CAN'T BE AN AFFIRMATIVE DEFENSE.  THOSE

9    TWO ARE MUTUALLY EXCLUSIVE.

10         THE COURT:  YOU STATED IN THE OPPOSITION THAT YOU

11   PRESENTED THAT YOU WERE STILL INVESTIGATING SOME OF THE NAMES

12   IN THE ACCOUNTING EXPERT'S REPORT IN THE HOPES THAT THIS MIGHT

13   LEAD YOU TO EVIDENCE AS TO EXPRESS PRIOR CONSENT AND/OR CLASS

14   MEMBERS' IDENTITIES.  HAVE YOUR INVESTIGATIONS OVER THE LAST

15   COUPLE OF MONTHS, COUNSEL, YIELDED ANYTHING NEW?

16         MR. CASPER:  THEY'VE TURNED INTO DEAD ENDS.  WHEN THIS

17   CASE WAS FILED AND WE -- AS QUICKLY AS WE COULD IDENTIFIED COME

18   & STAY, BECAUSE, AS THE COURT KNOWS, IT TOOK US A COUPLE MONTHS

19   TO EVEN FIND OUT THAT COME & STAY WAS INVOLVED, AND TWO DAYS

20   AFTER WE FOUND THAT OUT THAT MR. FUCHS DIED, BY A TERRIBLE

21   QUIRK OF FATE AT AGE 45, COMPLETELY UNEXPECTEDLY.  WE HAVE NOT

22   BEEN -- WE ASSUMED, OKAY, WE'LL GET THE RECORDS BECAUSE WE KNOW

23   THAT WHAT COME & STAY WAS DOING WAS THEY WERE GATHERING CONSENT

24   FROM THIRD-PARTY COMPANIES, SOME OF THEIR OWN BUT ALSO FROM

25   THIRD-PARTY COMPANIES, AND THAT CONSENT WAS CONSENT TO RECEIVE

1    MESSAGES FROM OTHERS.  THE CONSENT WAS FOR THIRD-PARTY

2    ANNOUNCEMENTS.  THAT'S THE CONSENT THAT WAS -- THAT'S IN

3    EXHIBIT 3 TO THE RICHMOND DECLARATION, THE CONSENT FOR

4    THIRD-PARTY ANNOUNCEMENTS.

5         SO WE KNOW THAT CONSENT IS OUT THERE.  WE FIGURE WE'LL

6    GO TALK TO WHOEVER GOT THE CONSENT AT COME & STAY.  WE'LL FIND

7    OUT WHAT COMPANIES THEY GOT THE CONSENTS FROM.  WE'LL FIND OUT

8    ABOUT THE ONES THEY GOT THEMSELVES, AND WE'LL SIMPLY GO EITHER

9    TALK TO OR SUBPOENA THE COMPANIES AND GET THE RECORDS, AND THIS

10   WILL BE NO PROBLEM.  WELL, IT TURNS OUT, OF COURSE, THE RECORDS

11   HAD BEEN SENT TO FRANCE AND DESTROYED.  SO THE MINIMAL RECORDS

12   THAT WERE AVAILABLE IN FRANCE, AFTER A YEAR OF LITIGATION IN

13   THE FRENCH COURT SYSTEM, TURNED OUT TO BE NOT HELPFUL,

14   UNFORTUNATELY.

15        THE COURT:  IS THERE ANY LIKELIHOOD THAT COME & STAY'S

16   RECORDS -- ANY BUSINESS RECORDS WILL TURN UP?

17        MR. CASPER:  I THINK IT'S NOT LIKELY THAT WE'LL GET ANY

18   MORE FROM COME & STAY THAN WE ALREADY HAVE.

19        THE COURT:  WITH REGARD TO ACCOUNTING EXPERTS' REPORTS

20   IDENTIFYING THIRD-PARTY INFORMATION PERTINENT TO THE ISSUES OF

21   PRIOR EXPRESS CONSENT, NO LIKELIHOOD THAT YOU'RE GOING TO FIND

22   ANYTHING MORE?

23        MR. CASPER:  NO.  THE INFORMATION FROM COME & STAY

24   APPEARS TO BE A DEAD END RIGHT NOW.

25        THE COURT:  LET ME ASK THIS, HAVE YOU BEEN SUBJECT TO

```
 1        ANY OTHER LITIGATION CONCERNING THE XBOX TEXT MESSAGES?
 2             MR. CASPER:  NO, YOUR HONOR.
 3             THE COURT:  I TALKED WITH OPPOSING COUNSEL ABOUT THE
 4    THE DAMAGES PROVIDED BY THE TELEPHONE CONSUMER PROTECTION ACT,
 5    AND I GUESS HE WOULD PROBABLY CHARACTERIZE THEM AS SOMEWHAT
 6    PALTRY OR MINOR, AND GOING TO SMALL CLAIMS COURT CAN'T GET YOU
 7    INJUNCTIVE RELIEF.  LET ME ASK YOU THIS, COUNSEL, WHAT
 8    ARGUMENTS COULD YOU OFFER THAT THERE ARE OTHER REALISTIC
 9    POSSIBILITIES FOR REDRESS IF THE COURT DIDN'T CERTIFY THIS?
10    WHAT ARE THESE PEOPLE TO DO?  IF I DON'T CERTIFY IT, THEY HAVE
11    NO REDRESS.  WHAT REDRESS DO THEY HAVE, IN YOUR OPINION?
12             MR. CASPER:  IN THE FIRST PLACE, WE HAVE TO ASSUME THAT
13    THERE ARE PEOPLE OUT THERE WHO DIDN'T CONSENT, BECAUSE IF THEY
14    DID CONSENT, OF COURSE, THEY'RE NOT ENTITLED TO REDRESS.
15             THE COURT:  UNDERSTOOD.
16             MR. CASPER:  AND HOW MANY OF THOSE THERE ARE WE HAVE NO
17    IDEA.  WE KNOW THAT MANY DID CONSENT, FROM WHAT COME & STAY
18    SAID, AND FROM MR. GREGORY'S TESTIMONY, AND FROM MR. MCNAMARA'S
19    TESTIMONY, AND THE LIKE, THAT THERE WERE A FEW OPT-OUTS.  SO
20    YOU FIRST HAVE TO KNOW HOW MANY REALLY ARE ENTITLED TO SOME
21    REMEDY, BUT THOSE WHO WANT IT COULD EASILY GO TO SMALL CLAIMS
22    COURT IN WHATEVER THEIR HOME COUNTY IS.  MICROSOFT DOES
23    BUSINESS IN EVERY COUNTY IN THE COUNTRY, AND ANYBODY CAN WALK
24    INTO THE SMALL CLAIMS COURT IN THEIR JUDICIAL DISTRICT AND SUE
25    MICROSOFT AND THEY CAN GET THEIR $500.
```

1          THE COURT:  WHAT ABOUT INJUNCTIVE RELIEF, COUNSEL SAYS

2     YOU'RE SO BIG AND YOU'RE SO POWERFUL, I GUESS, THAT THIS IS

3     WHAT YOU DO, AND SO THAT IN THE CIRCUMSTANCES OF THIS CASE,

4     WITH THE TYPE OF DEFENDANT THAT YOU REPRESENT, THAT MAYBE

5     INJUNCTIVE RELIEF IS MORE WARRANTED HERE THAN IN OTHER

6     SITUATIONS, AND THEY COULDN'T DO THAT IN SMALL CLAIMS COURTS.

7          MR. CASPER:  IN THE FIRST PLACE, I'M NOT AN EXPERT ON

8     WHAT THE POWERS OF THE SMALL CLAIMS COURTS ARE IN ALL 50

9     STATES.  IT'S NOT SOMETHING I'VE LOOKED INTO.  YOU KNOW, I'M

10    NOT AWARE OF WHETHER SMALL CLAIMS COURTS CAN OR CANNOT ISSUE

11    INJUNCTIONS.  THAT'S A MATTER I HAVE TO PLEAD IGNORANCE ON AT

12    THIS POINT.

13         BUT LET'S SUPPOSE FOR A MOMENT THAT YOU COULD GET AN

14    INJUNCTION FROM THAT COURT, WOULD IT BE APPROPRIATE TO GET AN

15    INJUNCTION?  IS IT APPROPRIATE FOR THIS COURT TO GIVE AN

16    INJUNCTION?  NO, IT'S NOT APPROPRIATE FOR EITHER THIS COURT OR

17    EVEN A SMALL CLAIMS COURT TO GIVE AN INJUNCTION ON THE FACTS OF

18    THIS CASE BECAUSE THERE'S NO EVIDENCE THAT MICROSOFT IS DOING

19    ANYTHING WRONG AT ALL.

20         IN ORDER TO GET THE INJUNCTION THAT THE STATUTE

21    AUTHORIZES, YOU HAVE TO MEET THE NORMAL TEST FOR AN INJUNCTION,

22    YOU KNOW, NO ADEQUATE REMEDY OF LAW AND ALL THE REST, AND HERE

23    YOU HAVE A ONE-OFF SITUATION WHERE MICROSOFT USED THIS COMPANY

24    BACK IN 2008, THAT'S NOW DEFUNCT.  THERE'S NO EVIDENCE THAT

25    MICROSOFT HAS DONE ANYTHING WRONG IN THE TCPA ARENA SINCE THEN.

1      I CAN ASSURE THE COURT THAT IF MICROSOFT HAD BEEN DOING

2      THINGS WRONG, MY FRIENDS ON THE RIGHT WOULD HAVE BROUGHT IT TO

3      THE COURT'S ATTENTION.  THEY HAVEN'T.

4          IN ADDITION TO THAT, PART OF THE RECORD IN THIS CASE

5      ARE THE CONTRACTS THAT MICROSOFT HAS WITH ITS VENDORS WHO

6      PROVIDE ADVERTISING SERVICES, AND THOSE CONTRACTS SPECIFICALLY

7      REQUIRE THE VENDORS TO COMPLY WITH THE APPLICABLE LAWS,

8      INCLUDING THE LAWS THAT REQUIRE CONSENT BEFORE ANY CALL IS MADE

9      OR ANY TEXT MESSAGE IS MADE.  SO THERE'S ABSOLUTELY NO BASIS

10     FOR ANY COURT TO ENJOIN MICROSOFT HERE.

11         THE COURT:  THOSE ARE THE ONLY QUESTIONS I HAD FOR THE

12     DEFENSE THIS AFTERNOON, AND I WOULD LIKE TO GIVE BOTH SIDES AN

13     OPPORTUNITY TO TELL ME ANYTHING THEY WOULD LIKE TO TELL ME

14     ABOUT THE CASE, AND I'LL SIT BACK AND TAKE IT IN AS OPPOSED TO

15     ASKING QUESTIONS AT THIS POINT.  MAYBE I'LL GO BACK AND START

16     WITH THEM, COUNSEL, AND THEN I'LL COME BACK TO YOU.

17         MR. CASPER:  THANK YOU, YOUR HONOR.

18         MR. MCMORROW:  CAN I HAVE JUST ONE MOMENT TO CONFER

19     WITH MY COLLEAGUE?

20         THE COURT:  OF COURSE.

21     (DISCUSSION HELD OFF THE RECORD.)

22         MR. MCMORROW:  THANK YOU, YOUR HONOR.

23         THE COURT:  CERTAINLY.

24         MR. MCMORROW:  I WOULD LIKE TO ADDRESS JUST A COUPLE OF

25     POINTS THAT MR. CASPER RAISED.  IN PARTICULAR, HE MENTIONS --

MR. CASPER SAYS THAT THERE IS EVIDENCE OF CONSENT, AND YOU
ASKED THE QUESTION OF WHY DOES THAT RAISE INDIVIDUALIZED
QUESTIONS, AND WHAT HE STATED WAS -- THE EVIDENCE THAT HE
TALKED ABOUT HE SAID THERE WERE ONLY SEVEN OPT-OUTS AND THAT
NOBODY COMPLAINED.

FIRST OF ALL, THAT'S NOT EVIDENCE OF CONSENT.  THAT'S
NOT EVIDENCE THAT ANYBODY ACTUALLY SAID, "PLEASE SEND US THESE
TEXT MESSAGES, MICROSOFT."  EVEN IF IT IS EVIDENCE OF CONSENT,
IT'S NOT INDIVIDUALIZED.  MAYBE IT SUPPORTS THE IDEA THAT -- TO
THE EXTENT THAT THEY WANT TO SAY THAT THE DOG THAT DID NOT BARK
SUPPORTS THE IDEA THAT THEY HAD CONSENT, BECAUSE OTHERWISE
THERE WOULD HAVE BEEN MORE COMPLAINTS, IT DOESN'T RAISE ANY
INDIVIDUALIZED QUESTIONS OF CONSENT.  FRANKLY, I WOULD SAY THAT
THE DOG THAT DID NOT BARK ISN'T EVIDENCE OF CONSENT AT ALL.
IT'S NOT EVIDENCE OF ANYTHING.

THEY ALSO MENTION THAT OWEN GREGORY -- THEY SAY THAT
OWEN GREGORY'S TESTIMONY SHOWS THAT HE GAVE CONSENT, AND THAT
THERE ARE OTHER OWEN GREGORIES OUT THERE.  ASIDE FROM OUR
EVIDENTIARY OBJECTIONS TO MR. GREGORY'S TESTIMONY, LET'S SAY
THAT MR. GREGORY DID GIVE CONSENT, UNDER MICROSOFT'S THEORY OF
THE CASE, HE WOULD HAVE GIVEN THAT CONSENT TO COME & STAY.  AS
WE'VE POINTED OUT BEFORE, HAD MR. GREGORY GIVEN CONSENT TO COME
& STAY, AS THEY CONTEND THAT ALL THE CLASS MEMBERS DID, THAT
CONSENT DOESN'T RAISE AN INDIVIDUALIZED QUESTION.  YOU CAN
STILL MAKE THE DETERMINATION ON A CLASS-WIDE BASIS BY MAKING A

1    DETERMINATION AS TO WHETHER OR NOT THE LANGUAGE, IF IT EVER

2    APPEARS, THAT COME & STAY HAD, GAVE CONSENT TO RECEIVE TEXT

3    MESSAGES FROM MICROSOFT.

4         THE COURT:  WE'RE NEVER GOING TO HAVE ANY OF THAT, ARE

5    WE, COUNSEL?  BASED ON WHAT I HEAR --

6         MR. MCMORROW:  THE THING IS, EVEN IF THERE WERE SUCH

7    EVIDENCE, YOUR HONOR, EVEN IF THERE WERE EVIDENCE OF THE COME &

8    STAY OPT-IN LIST, IT'S STILL A COMMON QUESTION BECAUSE THE

9    COURT, LIKE THE COURT IN *SATTERFIELD*, COULD STILL DETERMINE ON

10   A CLASS-WIDE BASIS.

11        THE COURT:  I SAID I WOULDN'T ASK QUESTIONS, BUT I

12   CAN'T HELP MYSELF, COUNSEL, WE'RE NEVER GOING TO KNOW ANYTHING

13   FROM COME & STAY, ARE WE?  I MEAN, I'M HEARING IT'S GONE.

14   EVERYTHING'S GONE, WHATEVER HAPPENED TO IT.  WE DON'T KNOW.

15        MR. MCMORROW:  THAT'S RIGHT, YOUR HONOR.

16        THE COURT:  SO WE'RE NEVER GOING TO KNOW WHAT EVER

17   HAPPENED HERE.  SO WHAT CAN YOU PROVE AND WHAT CAN THEY

18   DISPROVE, NOBODY CAN DOING ANYTHING.  THAT'S TROUBLING TO ME.

19        MR. MCMORROW:  YOUR HONOR, IF THE DEFENDANT --

20        THE COURT:  I MEAN, SAYING IT DOES NOT MAKE IT SO.

21   YOU'RE SAYING THERE WAS NO CONSENT.  THEY'RE GOING TO SAY,

22   "YES, THERE WAS," AND WE'RE NEVER GOING TO HAVE ANYTHING HERE

23   AND THAT'S TROUBLING, SO HELP ME WITH THAT.

24        MR. MCMORROW:  WELL, THERE'S TWO THINGS I WOULD LIKE TO

25   SAY ON THAT.

1          THE COURT:  SURE.

2          MR. MCMORROW:  FIRST OF ALL, IF THE DEFENDANT DOESN'T

3     HAVE ANY AFFIRMATIVE RESPONSIBILITY TO SHOW THAT THERE WAS

4     CONSENT, THEN A DEFENDANT COULD SIMPLY DEFEAT A CLASS ACTION OR

5     ANY TCPA CLAIM SIMPLY BY DESTROYING ANY EVIDENCE OF CONSENT

6     THAT THEY HAD.  IF THE ONLY PLACE THAT THERE'S GOING TO BE

7     EVIDENCE OF CONSENT IS WITH THE DEFENDANT OR THE DEFENDANT'S

8     AGENTS WHO GATHERED THAT EVIDENCE, AND THE DEFENDANT CAN DEFEAT

9     A CLAIM SIMPLY BY DESTROYING IT, WELL, THEN THE STATUTE

10    COULDN'T POSSIBLY BE EFFECTUATED.  PEOPLE COULD NOT SEEK RELIEF

11    UNDER THE STATUTE IF ALL THEY HAD TO DO WAS GET READ OF ANY

12    EVIDENCE OF CONSENT.

13         SO I THINK PUTTING THAT BURDEN ENTIRELY ON THE

14    PLAINTIFF TO SHOW THAT -- TO PROVE THE NEGATIVE, TO PROVE THAT

15    THERE WASN'T CONSENT, YOU KNOW, I THINK ENTIRELY PUTTING THAT

16    BURDEN ON THE PLAINTIFF IS A LITTLE BIT UNFAIR.  BUT EVEN IF

17    SOME OF THAT BURDEN RUNS TO THE PLAINTIFF, I THINK WE'VE MET

18    THAT BURDEN HERE BECAUSE THAT MISSING EVIDENCE, EVEN IF IT WAS

19    HERE, IT WOULD STILL RAISE A COMMON QUESTION, AND THE QUESTIONS

20    ABOUT THAT CONSENT -- ABOUT THE EFFECTIVENESS OF THAT CONSENT,

21    YOU KNOW, ARE EVIDENT.

22         37,00 OF THE PEOPLE THAT COME & STAY CONTENDS GAVE

23    CONSENT TO RECEIVE TEXT MESSAGES WEREN'T CELL PHONES, AND SO

24    THE SAME EVIDENCE, THE SAME PEOPLE THAT THEY'RE RELYING ON

25    HERE, THE SAME TESTIMONY THAT THEY'RE RELYING ON HERE TO SHOW

1    EVIDENCE OF CONSENT IN A GENERAL SENSE, IS FROM THE SAME PEOPLE

2    WHO TOLD THEM THAT THESE WERE ALL CELL PHONES, AND 37,00 OF

3    THEM WERE NOT.

4          ANOTHER POINT ABOUT THE LACK OF COMPLAINTS, YOUR HONOR,

5    MR. CASPER MENTIONED THAT COME & STAY WORKED FOR ALL THESE

6    OTHER REPUTABLE COMPANIES BEFORE, AND THEY WOULD HAVE HEARD IT

7    FROM THEM IF THERE WERE ANY PROBLEMS.  I WOULD POINT OUT THAT

8    TWO OF THE THREE COMPANIES THAT HE MENTIONED, THE U.S. NAVY AND

9    FOOT LOCKER, THERE HAVE BEEN TEXT MESSAGES TCPA CLAIMS BROUGHT

10   AGAINST THOSE -- FOR TEXT MESSAGES FROM THOSE ENTITIES.

11   THERE'S A CASE IN FRONT OF THE NINTH CIRCUIT RIGHT NOW

12   INVOLVING TEXT MESSAGES RECEIVED FROM THE NAVY.  AND THERE WAS

13   A CASE BROUGHT IN THE NORTHERN DISTRICT AND SETTLED, IN I

14   BELIEVE THE NORTHERN DISTRICT OF CALIFORNIA, AGAINST FOOT

15   LOCKER OVER SPAM TEXT MESSAGES.  SO I THINK THAT NEEDS TO BE

16   POINTED OUT IN TALKING ABOUT HOW GOOD AND REPUTABLE A COMPANY

17   THAT COME & STAY WAS.

18          FINALLY, YOUR HONOR, EVEN IF THE BURDEN ON CONSENT --

19   EVEN IF THERE'S SOME BURDEN ON CONSENT THAT RUNS TO THE

20   PLAINTIFF, WE'VE MET THAT.  WE HAVE THE PLAINTIFF'S TESTIMONY

21   THAT HE DIDN'T CONSENT, AND WE HAVE MR. SNYDER'S TESTIMONY

22   ABOUT WHAT THE INDUSTRY STANDARDS WERE IN 2008 ABOUT OPT-IN

23   CONSENT FOR TEXT MESSAGES.

24          GOING BACK TO THE EARLIER POINT, COME & STAY'S

25   TESTIMONY, EVEN IF IT'S ACCEPTED, IT DEMONSTRATES NO CONSENT TO

1        RECEIVE MESSAGES -- IT DEMONSTRATES NO CONSENT TO MICROSOFT TO

2        RECEIVE TEXT MESSAGES FROM MICROSOFT, AND THERE'S BEEN NO

3        EVIDENCE TO CONTRADICT THAT.

4                THIS EVIDENCE ON CONSENT, EVEN IF THE BURDEN IS OURS,

5        IS PLENTY TO DEMONSTRATE A PREPONDERANCE OF THE EVIDENCE.

6                THE COURT:  THANK YOU.

7                MR. MCMORROW:  THANK YOU, YOUR HONOR.

8                THE COURT:  MR. CASPER.

9                MR. CASPER:  THANK YOU, YOUR HONOR.

10               YOUR HONOR, THE COURT IS RIGHT TO BE CONCERNED ABOUT

11       THE MANAGEABILITY ISSUES THAT THE COURT HAS RAISED.  THOSE

12       MANAGEABILITY ISSUES REALLY DO MAKE IT IMPROPER, I BELIEVE, TO

13       CERTIFY A CLASS HERE, AND LET ME EXPLAIN WHY THAT IS.

14               THE PLAINTIFF HAS BEEN SPEAKING OF WHAT HAPPENED IN

15       *SATTERFIELD* AS AN EXAMPLE OF WHY IT IS THAT THIS EVIDENCE IS

16       ALL COMMON AND WHY IT IS THAT THERE'S REALLY NOT GOING TO BE

17       ANYTHING FOR THE COURT TO MANAGE BECAUSE THE EVIDENCE IS ALL

18       SORT OF CUT AND DRIED THAT IT WAS IMPROPER FOR MICROSOFT TO DO

19       WHAT THEY DID.  THAT'S JUST NOT SO.

20               IN *SATTERFIELD*, THE QUESTION THERE WAS DID CONSENT

21       EXTEND TO SIMON & SCHUSTER WHEN THE CONSENT WAS TO GIVE -- TO

22       RECEIVE TEXT MESSAGES FROM AFFILIATES OR BRANDS OF NEXTONES.

23       SO THERE THE VERY CONSENT ITSELF WAS LIMITED TO AFFILIATES OR

24       BRANDS OF NEXTONES.  OF COURSE, SIMON AND SCHUSTER WAS NOT AN

25       AFFILIATE OR BRAND OF NEXTONES SO THAT WAS KIND OF AN OPEN AND

1     SHUT CASE AS A RESULT OF THAT.

2           I SHOULD ALSO ADD THAT THERE THE INTERMEDIARY, WHO SENT

3     OUT 100,000 TEXT MESSAGES ON BEHALF OF SIMON & SCHUSTER, WAS SO

4     OVERWHELMED WITH COMPLAINTS ABOUT TEXT MESSAGES SENT OUT

5     WITHOUT CONSENT, THAT IT CUT OFF THE MARKETER AND WOULDN'T

6     ALLOW THEM TO SEND TEXT MESSAGES ANYMORE THROUGH THAT SERVICE.

7           HERE, THE CONSENT WAS GATHERED, ACCORDING TO THE

8     EVIDENCE FROM COME & STAY, IT WAS GATHERED TO EXTEND TO

9     THIRD-PARTY ANNOUNCEMENTS.  THE EVIDENCE IS NOT BY ANY MEANS,

10    AS IT WAS IN SIMON & SCHUSTER, THAT CONSENT WAS ONLY GIVEN TO

11    AFFILIATES OR BRANDS OF COME & STAY OR AFFILIATES OR BRANDS OF

12    THE COMPANIES THAT COME & STAY ACQUIRED IT FROM.  IN FACT, IF

13    THAT WERE THE CASE, COME & STAY REALLY COULDN'T HAVE BEEN IN

14    BUSINESS BECAUSE THEIR BUSINESS WAS TO MAKE THE LISTS AVAILABLE

15    TO THIRD PARTIES, AND SO THEY HAD TO HAVE CONSENT FOR

16    THIRD-PARTY ANNOUNCEMENTS.

17          IF WE HAD ALL THE COME & STAY RECORDS AND COULD FIND

18    ALL OF THOSE COMPANIES THAT ULTIMATELY ACQUIRED THE CONSENT,

19    I'M SURE WE WOULD HAVE A SITUATION VERY MUCH LIKE THE COURT

20    FACED IN THE *HILTON* -- THE RECENT *HILTON* SITUATION, WHERE YOU

21    HAVE THE CONSENT COMING FROM DIFFERENT SOURCES, DIFFERENT

22    COMPANIES PROVIDING THE CONSENT, USING SLIGHTLY DIFFERENT

23    LANGUAGE, AND PROVIDING IT TO COME & STAY, WHICH THEN USES IT

24    WITHIN THE BOUNDS OF THE CONSENT.  BUT THIRD-PARTY

25    ANNOUNCEMENTS IS HOW IT WAS DESCRIBED, NOT ONLY BY COME & STAY

BUT ALSO IN THE TRADE JOURNALS THAT WERE GOING ON.  SO THIS IS NOT A CASE IN WHICH YOU CAN SIMPLY DECIDE THAT THERE'S NO EVIDENCE OF CONSENT LIKE THERE WAS THERE.

IT'S ALSO A CASE VERY MUCH DIFFERENT THAN THOSE IN WHICH A COMPANY HAS SENT TEXT MESSAGES USING A LIST FOR WHICH IT'S CLEAR THERE'S NO CONSENT.  SO, FOR EXAMPLE, YOUR HONOR CITED THE *AGNE VS. PAPA JOHN'S* CASE IN THE RECENT OPINION ON THE MOTION TO STRIKE FROM UP IN THE WESTERN DISTRICT OF WASHINGTON.  JUDGE COUGHENOUR HAD THAT CASE.  THAT WAS A CASE THAT RESTED ON JUST A MISTAKE OF LAW.  THE PAPA JOHN'S PEOPLE THOUGHT IT WAS OKAY TO SEND TEXT MESSAGES TO ANY CUSTOMER WHO HAD EVER DONE BUSINESS WITH THEM.  THEY DIDN'T ASK THEIR LAWYER -- OR MAYBE THEY DID, BUT DIDN'T ASK THE RIGHT LAWYER, AND SO THEY WENT OUT AND SENT ALL THESE TEXT MESSAGES OR MADE CALLS TO PEOPLE WHO HAPPENED TO BE IN THEIR DATABASE.  WELL, THERE WAS NO EVIDENCE OF CONSENT BECAUSE THEY PROCEEDED ON THE BASIS OF A MISTAKE OF LAW THAT THEY DIDN'T NEED IT, AND SO THEY WENT OUT AND DID IT.  IT'S PERFECTLY UNDERSTANDABLE WHY JUDGE COUGHENOUR DID WHAT HE DID THERE.

THERE'S OTHER CASES LIKE THAT, TOO.  THE SO-CALLED B2B CASES FROM CHICAGO, THERE'S KIND OF A COTTAGE INDUSTRY GOING ON IN THE NORTHERN DISTRICT OF ILLINOIS RIGHT NOW WHERE THIS WOMAN NAMED ABRAHAM WENT OUT AND GATHERED LISTS, INCLUDING FROM A COMPANY IN ROMANIA, AND NEVER GOT ANY CONSENT TO ANYBODY AND RENTED THEM OUT, AND THERE, OF COURSE, IT'S PRETTY EASY TO

1    CERTIFY A CLASS ON THE CONSENT GROUND BECAUSE NOBODY CONSENTED.

2         HERE, BY CONTRAST, WE'VE GOT GOOD EVIDENCE THAT THERE,

3    IN FACT, WAS CONSENT, THE EVIDENCE THAT I DESCRIBED BEFORE,

4    AND, THEREFORE, WE HAVE TO ASK THE QUESTION OF, OKAY, SO HOW IS

5    THE TRIAL GOING TO PROCEED?  HOW COULD THE COURT MANAGE A TRIAL

6    LIKE THAT?  WELL, WHEN YOU CONSIDER THE STEPS THAT YOU WOULD

7    HAVE TO GO THROUGH TO MANAGE THAT CASE, YOU CAN SEE THAT IT

8    WOULD BE BASICALLY IMPOSSIBLE TO DO IT ON A CLASS-WIDE BASIS.

9         THE WHOLE IDEA OF A CLASS ACTION IS THAT THE PROOF BY

10   THE NAMED PLAINTIFF IS PROOF AS TO ALL.  THAT'S THE FUNDAMENTAL

11   RATIONALE FOR A CLASS ACTION.  SO THE ONLY PROOF THAT THE

12   PLAINTIFFS HAVE HERE IS MR. SMITH HIMSELF, WHO WILL SIT IN THE

13   CHAIR RIGHT THERE, OR IN WHATEVER DISTRICT WOULD BE THE RIGHT

14   ONE, AND SAY, "I DIDN'T CONSENT," AND THE JURY MIGHT VERY WELL

15   BELIEVE THAT.  BUT WITH THE EVIDENCE BEFORE THIS COURT, THERE

16   IS NO WAY THAT THE JURY COULD DETERMINE FROM THAT THAT NOBODY

17   HAD CONSENT.  IN LIGHT OF THE EVIDENCE THAT I'VE POINTED OUT

18   ABOUT ALL THE CONSENT EVIDENCE THAT THERE IS, THE JURY COULD

19   NEVER CONCLUDE THAT JUST BECAUSE MR. SMITH DIDN'T CONSENT,

20   NOBODY ELSE DID EITHER.  SO THE MANAGEABILITY OF PROVING

21   CONSENT ON A CLASS-WIDE BASIS IT JUST IS NOT THERE IN THIS

22   CASE.

23        I WOULD ALSO POINT OUT, YOUR HONOR, THAT THE EVIDENCE

24   OF MANAGEABILITY THAT THE COURT'S CONCERNED ABOUT ALSO RELATES

25   TO THE PREDOMINANCE ELEMENT, AND IT RELATES TO THE

ASCERTAINABILITY ELEMENT AS WELL BECAUSE THE EVIDENCE, JUST ON
CONSENT ALONE, WOULD DEFEAT THE PREDOMINANCE TEST BECAUSE THERE
WOULD BE -- IF THIS CASE WERE TRIED, THERE WOULD BE OWEN
GREGORIES COMING INTO COURT TESTIFYING THAT THEY THOUGHT THEY
GAVE THEIR CONSENT.  WE MIGHT EVEN FIND SOME PEOPLE WITH GOOD
MEMORIES WHO CAN REMEMBER, "YES, I SUBSCRIBED TO SOMETHING OR
OTHER AND I REMEMBER CHECKING THE BOX FOR CONSENT."  WE'LL
PROBABLY FIND A LOT OF OTHER PEOPLE LIKE MR. GREGORY WHO SAY,
"YEAH, I GOT TEXT MESSAGES ABOUT THAT TIME AND I THINK I
CONSENTED," BUT THE JURY WILL HAVE TO WEIGH ALL THAT, BUT
THAT'S ALL VERY INDIVIDUAL EVIDENCE.

        ON THE ASCERTAINABILITY POINT, WHICH IS CLOSELY RELATED
TO THIS, THE COURT AGAIN IS RIGHTLY CONCERNED ABOUT IDENTIFYING
THE CLASS MEMBERS AND GIVING THEM NOTICE, AND WE'VE
DEMONSTRATED THAT THE PLAINTIFFS SIMPLY HAVEN'T PROVIDED THE
EVIDENCE -- ANY EVIDENCE THAT IT'S POSSIBLE TO IDENTIFY THESE
CLASS MEMBERS AND TO FIGURE OUT WHO THEY ARE.  WHAT THE
PLAINTIFFS HAVE DONE IS THEY'VE PROVIDED A LIST OF PHONE
NUMBERS.  NOW, THE COURT ASKED MY FRIENDS ON THE RIGHT HERE IF
THE BEING ON THE LIST MEANT THAT THE TEXT MESSAGE COULD BE
RECEIVED, AND THE ANSWER TO THAT IS NO.

        IF YOU TAKE A LOOK AT THE DECLARATION OF LECIA
KASLOFSKY, WHO SUPERVISED THE COLLECTION OF THE INTERVIEWS THAT
WERE DONE, SHE FOUND SIX PEOPLE ON THE LIST WHO ALL SAID THAT
THEY DID NOT HAVE THEIR TEXT MESSAGING ENABLED AND SO THEY

1    COULDN'T POSSIBLY HAVE RECEIVED THE TEXT MESSAGE.  AND SO WHEN

2    YOU MULTIPLY THAT OVER 55,000 THAT'S A TREMENDOUSLY LARGE

3    NUMBER.  WE HAVE A DECLARATION FROM ONE OF THEM, DAVID BROWN,

4    WHO SAYS HE ALWAYS HAD TEXT MESSAGING DISABLED, AND YET HE'S ON

5    THE LIST.

6         SO THE PLAINTIFFS HAVE NO WAY WHATSOEVER TO DETERMINE

7    WHO HAD TEXT MESSAGING TURNED ON OR WHO HAD IT BLOCKED, AND

8    THEREFORE, THAT GOES NOT ONLY TO THE MANAGEABILITY THE COURT'S

9    CONCERNED ABOUT, BUT IT ALSO GOES TO THE PREDOMINANCE ELEMENT

10   AND ALSO TO THE ASCERTAINABILITY ELEMENT BECAUSE THAT PERSON

11   CAN'T BE A CLASS MEMBER IF THEY HAD THEIR TEXT MESSAGING

12   BLOCKED.

13        ON THE MORE FUNDAMENTAL NOTION OF JUST FIGURING OUT WHO

14   THEY ARE, THE PLAINTIFFS INTRODUCED A PAGE FROM A DEPARTMENT OF

15   JUSTICE EXHIBIT, AND THE DEPARTMENT OF JUSTICE HAS THIS PAGE,

16   WHICH IT'S EXHIBIT 2 TO THE SUPPLEMENTAL DECLARATION OF THE

17   PLAINTIFF'S EXPERT, AND IT SAYS AT THE BOTTOM "FOR LAW

18   ENFORCEMENT USE ONLY," AND IT'S DATED MARCH 2011.  AND THAT IS

19   THE SUM AND SUBSTANCE OF THEIR EVIDENCE THAT THEY COULD

20   SUBPOENA CELL PHONE PROVIDERS AND GET THE INFORMATION AS TO WHO

21   THE SUBSCRIBERS ARE.

22        WHEN YOU LOOK AT THAT EVIDENCE, IT JUST DOESN'T STAND

23   UP.  FOR EXAMPLE, VERIZON, WHICH HAD 4,795 NUMBERS ON THE LIST,

24   KEEPS THEIR SUBSCRIBERS INFORMATION FOR THREE TO FIVE YEARS.

25   WELL, IT'S PAST FIVE YEARS ALREADY.  THEY ONLY KEEP THEIR TEXT

1    MESSAGING RECORDS FOR ONE YEAR.  WE WENT THROUGH, ACTUALLY, AND

2    FIGURED OUT HOW MANY NUMBERS IN THE 55,000 WERE IN -- BELONGED

3    TO THE CARRIERS, AND WE DID THIS BECAUSE YOU REMEMBER THAT THE

4    PLAINTIFFS KIND OF POOH-POOHED THE NOTION THAT THERE WERE 28

5    CARRIERS.  I SAID, "WELL, A FEW OF THEM ONLY HAD ONE OR TWO,"

6    AND SO WE WENT THROUGH AND FIGURED THAT OUT AND FOUND OUT THERE

7    ARE EIGHT CARRIERS THAT HAVE ALMOST ALL OF THE 55,000.

8         VERIZON IS ONE WITH 4,795, THREE TO FIVE YEAR

9    RETENTION.  THE NEXT LARGEST, ASIDE FROM CINGULAR, IS SPRINT

10   AND NEXTEL, WHICH HAVE COME TOGETHER, AND THEY HAVE ABOUT

11   4,500, WHEN YOU ADD THEM UP, 3,900 FOR SPRINT AND 678 FOR

12   NEXTEL.  THERE THE PLAINTIFFS MIGHT ACTUALLY BE ABLE TO GET

13   SOME RECORDS BECAUSE THEY KEEP THEIR SUBSCRIBER INFORMATION FOR

14   SEVEN YEARS, BUT THEY ONLY KEEP TEXT MESSAGING RECORDS FOR

15   18 MONTHS.  THEY DON'T KEEP THEM AT ALL FOR SOME NEXTEL PHONES.

16   SO EVEN IF YOU COULD FIGURE OUT WHO THE SUBSCRIBER WAS, FINDING

17   OUT FROM THEM WHETHER TEXT MESSAGES WAS ACTIVE OR BLOCKED IS

18   PROBABLY IMPOSSIBLE.  THERE'S NO EVIDENCE THAT IT COULD BE

19   DONE.

20        U.S. CELLULAR HAD ONLY 1,500, AND, AGAIN, THEY KEEP

21   SUBSCRIBER INFO AND BILL COPIES FOR 12 YEARS, SO IN THEORY YOU

22   COULD GET IT FROM THEM, BUT THAT'S ONLY 1,500 CALLS OUT OF THE

23   55,000.  AND THEN YOU'VE GOT AT&T, WHICH HAD 998.  THE EVIDENCE

24   THERE IS IT DEPENDS ON THE LENGTH OF SERVICE.  YOU'VE GOT

25   VIRGIN MOBILE HAD 281, NO INFO.  YOU HAD BOOST MOBILE, 86, NO

1        INFORMATION.  AND THEN YOU HAD CINGULAR, WHICH HAD 38,585.

2        WELL, THERE'S NO INFORMATION IN WHAT THE PLAINTIFFS SUBMITTED

3        AS TO WHETHER OR NOT AT&T HAS RECORDS GOING BACK TO 2008 FOR

4        CINGULAR CUSTOMERS.  WE SIMPLY DON'T HAVE ANY WAY TO KNOW THAT.

5             WHAT MAKES THAT EVEN MORE SUBJECT TO DOUBT IS THAT THE

6        PLAINTIFF'S EXPERT SAID THAT 75,000 OF THE NUMBERS ON THE

7        ORIGINAL LIST WERE CINGULAR NUMBERS, SO IT'S THE BIG KAHUNA.

8        OKAY, BUT NOW WE KNOW THAT ONLY 55,000 OF THEM WERE CELL PHONE

9        NUMBERS, BUT CINGULAR IS A WIRELESS COMPANY, HOW CAN 75,000

10       NUMBERS ON THE LIST BE CINGULAR WIRELESS NUMBERS WHEN ONLY

11       55,000 OF THEM ARE EVEN WIRELESS NUMBERS?  SO IT DOESN'T ADD

12       UP.

13            THE RESULT OF ALL OF THAT IS THAT THE PLAINTIFFS HAVE

14       NOT MET THEIR BURDEN TO DEMONSTRATE THAT ISSUES WILL

15       PREDOMINATE -- THAT COMMON ISSUES WILL PREDOMINATE TO

16       DEMONSTRATE THAT THE CASE IS MANAGEABLE IF TRIED AS A CLASS

17       ACTION OR THAT THE CASE IS ASCERTAINABLE AS A CLASS ACTION

18       EITHER BECAUSE OF THESE ISSUES ABOUT FIGURING OUT WHO THE

19       SUBSCRIBER WAS.

20            THE PLAINTIFFS ARE OPERATING ON THE PRESUMPTION THAT A

21       NUMBER EQUALS A CLASS MEMBER, BUT THAT'S NOT SO.  THE CLASS

22       MEMBER HAS TO BE THE SUBSCRIBER, NOT THE NUMBER, AND WE HAVE TO

23       FIGURE OUT WHO THAT PERSON WAS, AND THEN WE HAVE TO FIND OUT

24       THAT THEY HAD TEXT MESSAGING ENABLED AT THE TIME.  THE

25       PLAINTIFFS HAVE GIVEN US NO EVIDENCE THAT THAT CAN BE DONE.

1          THE COURT ASKED THE QUESTION, IN THE ORDER THAT WAS

2     ISSUED TWO WEEKS AGO, ABOUT WHEN THAT SHOULD BE DONE, AND CITED

3     THE *PAPA JOHN'S* CASE SAYING, "WELL, MAYBE WE COULD DEAL WITH

4     THIS AFTER WE CERTIFY THE CLASS." WELL, IT'S PRETTY PLAIN NOW

5     THAT ASCERTAINABILITY IS AN ELEMENT THAT HAS TO BE PROVED AT

6     THE TIME OF CLASS CERTIFICATION.

7          SO WE'VE GOT THE SUPREME COURT'S CASES FROM *DUKES VS.*

8     *WAL-MART*, AND WE'VE GOT THE RECENT *COMCAST VS. BEHREND CASE*,

9     WHICH POINTED OUT THAT THE PLAINTIFF MUST ESTABLISH ALL RULE 23

10    ELEMENTS WITH EVIDENTIARY PROOF. THEY HAVE THE BURDEN ON ALL

11    RULE 23 ELEMENTS.

12         THE COURTS -- ALMOST EVERY CIRCUIT AND DISTRICT COURT

13    CONCEDE THAT PROVING ASCERTAINABILITY, ALTHOUGH IT'S NOT

14    WRITTEN IN RULE 23, IS AN IMPLIED ELEMENT OF RULE 23, AND IT IS

15    SOMETHING THAT HAS TO BE PROVED, LIKE EVERYTHING ELSE, AT THE

16    TIME OF CLASS CERTIFICATION.

17         THE CASES THAT MAKE THAT THE MOST CLEAR ARE THE THREE

18    THIRD CIRCUIT DECISIONS. THE COURT OF APPEALS HAS KIND OF

19    TAKEN THIS ISSUE ON IN THE LAST YEAR AS THE THIRD CIRCUIT, AND

20    IT'S ISSUED THREE DECISIONS BETWEEN 2012 AND 2013, ONE CALLED

21    *MARCUS VS. BMW*, ONE CALLED *HAYES VS. WAL-MART*, AND THEN ANOTHER

22    ONE CALLED *CARRERA*, AND IN THOSE CASES THE COURT MADE IT

23    ABSOLUTELY CLEAR THAT ASCERTAINABILITY WAS AN ESSENTIAL

24    PREREQUISITE FOR CLASS CERTIFICATION THAT HAD TO BE PROVED BY

25    EVIDENCE AT THE TIME OF CLASS CERTIFICATION. MANY, MANY

1    DISTRICT COURTS HAVE DENIED CLASS CERTIFICATION FOR WONT OF

2    PROOF OF ASCERTAINABILITY.

3         NOW, THE COURT IN ITS DECISION SAID, "WELL, JUDGE

4    COUGHENOUR UP IN SEATTLE ON THE *PAPA JOHN'S* CASE SAID CAN'T WE

5    DEAL WITH THIS AFTER CLASS CERTIFICATION," AND THE COURT SEEMED

6    TO BE PERSUADED BY THAT.  IN THAT CASE, I WOULD AGREE WITH

7    THAT.  I HAVE NO QUARREL WITH WHAT JUDGE COUGHENOUR DID IN THAT

8    CASE AT ALL, BUT THE DIFFERENCE THERE WAS THAT THE DEFENDANT

9    DID, IN FACT, HAVE RECORDS THAT WERE SUFFICIENT TO IDENTIFY THE

10   CLASS MEMBERS.  THE RECORDS -- IT WAS A LITTLE BIT HARD TO DO,

11   BUT THERE WERE RECORDS THERE.  THEY FIRST CLAIMED THEY DIDN'T

12   HAVE THE RECORDS.  ONE OF THE DEFENDANTS WAS CALLED THE RAIN

13   CITY DEFENDANTS OR -- AND IF YOU'RE IN SEATTLE I GUESS THAT'S A

14   PRETTY GOOD NAME FOR YOUR COMPANY, BUT THEY CLAIMED THEY DIDN'T

15   HAVE RECORDS, BUT JUDGE COUGHENOUR POINTED OUT THAT, IN FACT,

16   THE PLAINTIFFS SHOWED THAT THEY DID HAVE RECORDS.  AND PAPA

17   JOHN'S HAD SAID EXACTLY THE SAME THING THAT THE PLAINTIFF SAID

18   ABOUT HOW THE RECORDS REALLY WERE THERE.

19        WHEN THE PLAINTIFFS HAD ATTEMPTED TO IMPOSE SANCTIONS

20   ON PAPA JOHN'S FOR DESPOILING EVIDENCE, AND AS JUDGE COUGHENOUR

21   SAID DEFENDANTS CAN'T HAVE IT BOTH WAYS, THEY DID, IN FACT,

22   HAVE THE EVIDENCE, BUT JUDGE COUGHENOUR THEN SAID, "WELL, BUT

23   IT WOULD BE HARD,  AND THAT HARD TASK SHOULD BE RESERVED FOR

24   AFTER CLASS CERTIFICATION."  PERFECTLY APPROPRIATE IF THE

25   EVIDENCE IS THERE, BUT HERE THE EVIDENCE ISN'T THERE.  THE

1         PLAINTIFFS SIMPLY HAVEN'T MET THEIR BURDEN OF PROOF THAT THEY

2    CAN ESTABLISH WHO THE SUBSCRIBERS WERE OR WHETHER TEXT

3    MESSAGING WAS BLOCKED, WHICH AFFECTS ASCERTAINABILITY, AND IT

4    AFFECTS PREDOMINANT, AND IT AFFECTS THE MANAGEABILITY THAT THE

5    COURT HAS BEEN SO CONCERNED ABOUT.

6         YOUR HONOR, WE RESPECTFULLY REQUEST THAT THE COURT

7    STICK WITH ITS TENTATIVE RULING.  WE THINK THAT THE TENTATIVE

8    RULING IS RIGHT HERE.  WE THINK THAT THIS CASE SIMPLY ISN'T

9    SUITED FOR CLASS CERTIFICATION IN THIS COURT OR REALLY IN ANY

10   COURT, FOR THAT MATTER.  THIS DISTRICT HAS NO CONNECTION

11   WHATSOEVER WITH THIS CASE.  THE PLAINTIFF DOESN'T LIVE HERE.  A

12   FEW PEOPLE ON THE LIST LIVE AROUND HERE.  MICROSOFT IS IN

13   SEATTLE.

14        AND I'M NOT SURE IF THE COURT HAS PICKED UP ON THIS

15   FROM THE PAPERS THAT WERE FILED, BUT THE VAST BULK OF THE CLASS

16   MEMBERS -- THE PROPOSED CLASS MEMBERS LIVE IN THE MIDWEST.  MR.

17   SMITH HIMSELF LIVES IN CHICAGO, AND THE VAST MAJORITY OF THE

18   PHONE NUMBERS WITH THE AREA CODES ARE IN INDIANA AND ILLINOIS,

19   AND ENVIRONS, SO HAVING THE OWEN GREGORIES OF THE WORLD WHO,

20   LIVES IN CHICAGO, TOO, TRAIPSE OUT TO SAN DIEGO TO TESTIFY IS

21   NOT WORKABLE.  OF COURSE, WE COULDN'T SUBPOENA THEM TO COME

22   HERE ANYWAY.

23        THE COURT IS ABSOLUTELY RIGHT IN ITS VIEW THAT THE

24   MANAGEABILITY PROBLEMS, AND I WOULD SAY ALSO THE PREDOMINANCE

25   PROBLEMS, AND THE ASCERTAINABILITY PROBLEMS, PREVENT THIS FROM

1     BEING CERTIFIED AS A CLASS.

2          IF ANYBODY WHO IS A PROPOSED CLASS MEMBER WANTS

3     INDIVIDUAL RELIEF, A SMALL CLAIMS COURT IS A PERFECTLY

4     ACCEPTABLE WAY TO GET IT, AND THERE'S NO INJUNCTION, YOUR

5     HONOR, THAT WOULD EVER BE NEEDED IN A CASE LIKE THIS.  THANK

6     YOU.

7          THE COURT:  THANK YOU, MR. CASPER.

8          MR. MCMORROW:  THANK YOU, YOUR HONOR.  I WOULD JUST

9     LIKE TO ADDRESS A COUPLE OF FINAL POINTS, AND THEN IF THE COURT

10    HAS ANY FURTHER QUESTIONS, I WOULD BE HAPPY TO ANSWER THEM.

11         MR. CASPER SAID -- HAS SAID A LOT UP HERE ABOUT WHAT

12    THE CONSENT THAT COME & STAY PURPORTEDLY OBTAINED WAS FOR, AND

13    HE SAID IT WAS FOR THIRD-PARTY ANNOUNCEMENTS, AND I SUPPOSE IN

14    THAT WAY, ASSUMING THAT MR. CASPER'S CORRECT IN SAYING THAT

15    THAT'S WHAT THE MISSING CONSENT WAS FOR, IT STILL DOESN'T MAKE

16    -- IT STILL DOESN'T CREATE AN INDIVIDUAL ISSUE, WHATEVER THE

17    CONSENT WAS FOR.

18         IF THE COURT WERE TO FIND THAT AN OPEN-ENDED CONSENT TO

19    RECEIVE TEXT MESSAGES FROM ANYBODY AT ANY TIME WERE GIVEN BY

20    THE CLASS MEMBERS, THE COURT COULD STILL DETERMINE THAT ON A

21    CLASS-WIDE BASIS, AND SO THE MISSING EVIDENCE OF THAT, IF THE

22    COURT WANTED TO BELIEVE MR. CASPER'S TESTIMONY HERE, IT

23    WOULDN'T RAISE AN INDIVIDUAL ISSUE, AND IT WOULDN'T CREATE ANY

24    MANAGEABILITY CONCERNS FOR THE COURT.  AND IT STILL SHOWS THAT

25    THE EVIDENCE THEN, IF THE COURT ACCEPTED THAT, WOULD SHOW THAT

1       WHETHER CONSENT FOR THIRD-PARTY ANNOUNCEMENTS BY THE CLASS

2       MEMBERS IS -- IT WOULD STILL BE A COMMON QUESTION HERE.

3              MR. CASPER ALSO SUGGESTED THAT BETWEEN NOW AND THE

4       TRIAL IN THIS MATTER THAT MICROSOFT'S GOING TO FIND OTHER OWEN

5       GREGORIES THAT ARE GOING TO COME UP HERE AND TESTIFY THAT THEY

6       THINK THEY MIGHT HAVE SOMEHOW GIVEN CONSENT TO SOMEBODY.  FIRST

7       OF ALL, THEY'VE ALREADY HAD TWO AND-A-HALF YEARS TO FIND THOSE

8       OTHER OWEN GREGORIES AND NONE HAVE COME FORWARD.

9              SECONDLY, THOSE PEOPLE, ASSUMING THAT THEY DID GIVE

10      CONSENT, AND ASSUMING THEY DID GIVE THE CONSENT THAT MR. CASPER

11      THINKS THAT -- TESTIFIED THAT THEY DID TO COME & STAY, THEY

12      DON'T NEED TO TESTIFY BECAUSE THAT CONSENT -- THE VALIDITY OR

13      INVALIDITY OF THAT CONSENT OF ALL THOSE OWEN GREGORIES CAN

14      STILL BE DETERMINED ON A CLASS-WIDE BASIS.

15             FINALLY, MR. CASPER TAKES ISSUE WITH THE RECORDS

16      KEEPING OF THE CARRIERS TO SAY THAT THERE'S A MANAGEABILITY

17      PROBLEM HERE, BUT HE DOESN'T SAY ANYTHING ABOUT THE THIRD-PARTY

18      SERVICES WHO, AS I DISCUSSED, AND AS MR. SNYDER TESTIFIES TO IN

19      HIS DECLARATION -- FIRST OF ALL, MR. SNYDER TESTIFIED THAT FOR

20      THE MOST PART THAT CARRIERS ARE GOING TO HAVE THIS INFORMATION.

21      IF VERIZON HAS A RETENTION PERIOD OF FIVE YEARS, AND YOU'RE

22      STILL A VERIZON CUSTOMER, IF YOU WERE A VERIZON CUSTOMER AT ANY

23      POINT WITHIN THAT FIVE YEARS, THEY'RE STILL GOING TO HAVE ALL

24      YOUR INFORMATION.  THEY'RE NOT GOING TO DESTROY YOUR -- THEY'RE

25      NOT GOING TO DESTROY THE INFORMATION FROM FIVE YEARS AGO OR

1    FROM SIX YEARS AGO IF YOU'RE STILL THEIR CUSTOMER, AND A LOT OF

2    THESE PEOPLE ARE STILL GOING TO BE THEIR CUSTOMER, SO THE

3    CARRIER SHOULD STILL HAVE QUITE A BIT OF THIS INFORMATION ON

4    THESE CLASS MEMBERS.

5           AND EVEN IF THEY DON'T, IF THERE ARE GAPS THERE, IF

6    THERE ARE CARRIERS THAT DON'T HAVE SOME INFORMATION ABOUT SOME

7    OF THE NUMBERS ON THIS LIST, THE IDENTITIES OF THOSE CLASS

8    MEMBERS CAN QUITE EASILY BE DETERMINED THROUGH REVERSE LOOKUPS

9    THAT ARE DONE BY THIRD PARTIES.  AS I MENTIONED BEFORE, WE DO

10   IT ALL THE TIME WHEN WE SETTLE CLASS ACTIONS IN ORDER TO GIVE

11   NOTICE TO PEOPLE, AND THERE ARE THIRD-PARTY SERVICES OUT THERE

12   WHO CAN PROVIDE THAT INFORMATION.

13          SO WITH ALL THAT HAVING BEEN SAID, YOUR HONOR, I THINK

14   THE EVIDENCE THAT'S PUT BEFORE THE COURT, AND IN CERTAIN CASES

15   THE ABSENCE OF EVIDENCE THAT'S BEEN PUT BEFORE THE COURT, SHOW

16   THAT THE PLAINTIFF HERE HAS MET ALL OF THE REQUIREMENTS OF RULE

17   23(A) AND THE REQUIREMENTS OF RULE 23(B)(3).

18          SO WITH THAT IN MIND, WE WOULD ASK THAT THE COURT

19   CERTIFY THE CLASS, AS SET FORTH IN OUR MOTION FOR CLASS

20   CERTIFICATION AND OUR REPLY BRIEF, AND APPOINT MR. SMITH CLASS

21   REPRESENTATIVE AND APPOINT MR. MEYERS AND MYSELF AS CLASS

22   COUNSEL.  IF THE COURT HAS ANY FURTHER QUESTIONS, I'D BE HAPPY

23   TO ANSWER THEM.

24          THE COURT:  NOT AT THIS TIME COUNSEL, THANK YOU.

25          MR. MCMORROW:  THANK YOU, YOUR HONOR.

```
 1              THE COURT:  IS THERE ANYTHING THAT YOU WOULD LIKE TO

 2      RESPOND TO, MR. CASPER?

 3              MR. CASPER:  THE ONLY THING I WOULD LIKE TO POINT OUT

 4      TO THE COURT IS ON THE ASCERTAINABILITY ISSUE, WHICH ALSO GOES

 5      TO PREDOMINANCE AND MANAGEABILITY, IT'S PLAIN THAT THE RECORDS

 6      THAT THE CARRIERS KEEP ARE NOT GOING TO BE SUFFICIENT FOR A BIG

 7      PART OF THE CLASS, AND THE PLAINTIFFS HAVE FAILED IN THEIR

 8      BURDEN OF PROOF THERE ALTOGETHER.

 9              THE COURT:  I MEAN, WE SHOULD KNOW THAT NOW, SHOULDN'T

10      WE?

11              MR. CASPER:  WE SHOULD.

12              THE COURT:  I MEAN, WE'VE BEEN AT THIS AWHILE AND IF WE

13      COULD GET THAT INFORMATION, WE SHOULD.  I GUESS ONE THING I

14      WONDERED, AND MAYBE THIS IS A QUESTION FOR COUNSEL, HE SAID

15      MAYBE YOU CAN ANSWER, AND YOU CAN COME BACK UP AND ANSWER THIS,

16      TOO, HE'S SAYING IF I HAVE ONE CELL PHONE PROVIDER AND I KEEP

17      IT FOR MY ENTIRE LIFE, THEY WILL KEEP ALL MY RECORDS.  IS THAT

18      TRUE OR NOT?  THAT SOUND OVERLY BURDENSOME.  I CAN'T SAY,

19      BECAUSE I'VE NEVER LOOKED INTO IT, BUT SHOULDN'T WE KNOW THIS

20      NOW?  THAT'S MY CONCERN.

21              MR. CASPER:  YOUR HONOR, YOU'RE EXACTLY RIGHT, WE

22      SHOULD KNOW THIS NOW.  THE REASON WE SHOULD KNOW IT NOW IS

23      BECAUSE IT'S PART OF THE PLAINTIFF'S BURDEN TO PROVE THEIR

24      CASE.  THEY HAVE TO PROVE THAT THE CLASS IS ASCERTAINABLE, AND

25      THEY HAVE TO PROVE THAT COMMON ISSUES PREDOMINATE OVER
```

1       INDIVIDUAL ONES, AND THAT HAS TO BE DONE AT CLASS CERTIFICATION

2       TIME.  *COMCAST VS. BEHREND* AND *ELLIS VS. COSTCO* HERE MAKE THAT

3       PLAIN, AND THEY DIDN'T DO IT.  THE EVIDENCE THAT THEY PROVIDED

4       SHOWS THAT MANY OF THE CARRIERS ARE UNLIKELY TO HAVE THE

5       INFORMATION, FOR EXAMPLE, VERIZON, WHICH KEEPS IT THREE TO FIVE

6       YEARS.  NOW, IF YOU'VE ALWAYS BEEN A VERIZON CUSTOMER AND --

7       MAYBE THEY WILL HAVE SOME INFORMATION FOR YOU THAT GOES BACK

8       BEYOND THAT, BUT WE HAVE NO IDEA HOW MUCH THAT IS.  THE

9       PLAINTIFFS SIMPLY HAVE FAILED IN THEIR BURDEN HERE.

10              THE COURT:  THE OTHER QUESTION I HAD, AND NOBODY'S

11      REALLY ADDRESSED THIS -- AND I KNOW YOU'RE GOING TO COME BACK

12      UP BECAUSE WE'LL GO BACK AND FORTH IN A FEW MOMENTS HERE -- BUT

13      WHAT PERCENTAGE OF PEOPLE TEND TO JUST DROP THEIR CELL PHONES

14      AND PICK UP A NEW NUMBER?  IT HAPPENS, AND IT HAPPENS OFTEN,

15      ESPECIALLY WITH YOUNG PEOPLE.  I ASSUME WE'RE TALKING ABOUT A

16      YOUNGER AGE SET, GIVEN THE NATURE OF THE BUSINESS WE'RE TALKING

17      ABOUT AND THE TEXT MESSAGING, I DON'T KNOW, LET'S JUST ASSUME

18      THAT.  THEY PICK UP A PHONE.  THEY CHANGE PHONES.  NUMBERS

19      CHANGE.  I HAVE NO IDEA HOW YOU WOULD TRACE BEYOND THAT.

20              BUT WHEN YOU TELL ME THAT YOU USE THE REVERSE SYSTEM TO

21      NOTICE ON CLASS ACTIONS, WE ALSO KNOW THAT IN A LOT OF CLASS

22      ACTIONS THAT ARE NOTICED WE GET A PHENOMENALLY SMALL RESPONSE,

23      A TROUBLING, SMALL RESPONSE ON SO MANY MATTERS WHERE COURTS

24      HAVE TRADITIONALLY -- SOME COURTS, NOT ALL COURTS -- SAY "TAKE

25      ANOTHER TRY AT THIS" BECAUSE YOU'VE GOT A RESOLUTION, CASES

1    COME IN, THEY'RE SETTLED, THEY'VE GOT A RESOLUTION, AND THERE'S

2    NO RESPONSE TO THE NOTICE THAT GOES OUT.  AND SO THESE ARE THE

3    CONCERNS THAT I HAVE WHEN I LOOK AT A CASE LIKE THIS AT THE

4    FRONT END, KNOWING THE DIFFICULTIES THAT WE HAVE THROUGH ALL

5    STAGES OF THIS TYPE OF LITIGATION, SO GO AHEAD, MR. CASPER, I

6    DIDN'T MEAN TO INTERRUPT.

7         MR. CASPER:  YOUR HONOR, THE COURT IS RIGHT ON WITH THE

8    ISSUE OF HOW CAN YOU IDENTIFY IN A MANAGEABLE WAY, THAT CAN BE

9    DONE IN A CLASS ACTION, THE SUBSCRIBERS WHO SUBSCRIBE TO THESE

10   PHONES IN 2008, AND THE COURT POINTS OUT THAT ESPECIALLY YOUNG

11   PEOPLE WHO HAVE CELL PHONES TEND TO CHANGE CELL PHONE NUMBERS.

12   WELL, WE HAVE EVIDENCE HERE OF HOW MUCH THAT IS.  WE KNOW THAT

13   27 PERCENT, WHICH THE STATISTICIAN THEN SAID WOULD BE

14   25 PERCENT AT LEAST, IF YOU APPLY IT TO THE WHOLE CLASS, OF THE

15   NUMBERS THAT ARE DISCONNECTED OR NO LONGER IN SERVICE.

16        SO THAT SHOWS THAT HERE -- THAT'S GOING TO BE A VERY

17   SERIOUS PROBLEM HERE.  WE KNOW THAT.  WE HAVE -- THE ONLY WAY

18   YOU COULD DO THIS WOULD BE TO, FIRST, GET ALL THE RECORDS, AND

19   THEN COMB THROUGH ALL THE RECORDS ONE BY ONE BY ONE BY ONE BY

20   ONE, SOME COURTS HAVE SAID THAT ALONE FAILS THE PREDOMINANCE

21   AND ASCERTAINABILITY REQUIREMENT, WHERE YOU HAVE TO GO THROUGH

22   THEM ONE BY ONE BY ONE, BUT HERE THERE'S NO INDICATION THAT THE

23   CARRIERS HAVE THAT INFORMATION TO GO ONE BY ONE, SO THE COURT'S

24   ABSOLUTELY RIGHT ABOUT THAT.

25        THE FALLBACK POSITION I HEARD A FEW MINUTES AGO, WE

1    WILL, WE'VE GOT THESE THIRD-PARTY SERVICES, SO EVEN IF THE

2    CARRIERS DOESN'T HAVE IT WE'LL GET IT FROM ONE OF THOSE

3    THIRD-PARTY SERVICES.  THE ONLY EVIDENCE ABOUT THE

4    THIRD-PARTIES SERVICES THEY'RE REFERRING TO IS PARAGRAPH 34 OF

5    MR. SNYDER'S SUPPLEMENTAL DECLARATION, WHERE HE SAYS THERE

6    EXISTS COMMERCIALLY AVAILABLE THIRD-PARTY INFORMATION SERVICE

7    COMPANIES THAT COLLECT AND MAINTAIN SUBSCRIBER DATA ON BEHALF

8    OF WIRELESS CARRIERS.  HE DOESN'T SAY WHICH WIRELESS CARRIERS

9    THEY MAINTAIN IT ON.  HE DOESN'T SAY HOW LONG THEY KEEP IT.  HE

10   DOESN'T SAY HOW MUCH INFORMATION THEY HAVE.  HE DOESN'T SAY

11   WHETHER OR NOT THE SUBSCRIBER INFORMATION WOULD INCLUDE WHAT

12   THEIR CELL PHONE PLAN WAS.  THERE'S SIMPLY NO PROOF THAT THESE

13   THIRD-PARTY SUBSCRIBERS COULD PROVIDE THE INFORMATION THAT THE

14   CELL PHONE PROVIDERS, THE CARRIERS THEMSELVES, CAN'T PROVIDE.

15          SO WHEN YOU ADD THAT, YOUR HONOR, THE DIFFICULTY OF

16   EVEN FIGURING OUT WHO THE SUBSCRIBERS WERE IN 2008, FIGURING

17   OUT WHAT THEIR CELL PHONE PLAN WAS, AND THEN FIGURING OUT IF

18   THEY GAVE THEIR CONSENT TO RECEIVE THE TELEPHONE MESSAGE, THOSE

19   ALL ADD UP TO AN UNMANAGEABLE CASE THAT, IN ADDITION TO FAILING

20   THE SUPERIORITY REQUIREMENT, FAILS THE PREDOMINANCE AND THE

21   ASCERTAINABILITY REQUIREMENTS.

22          THANK YOU, YOUR HONOR.

23          THE COURT:  COME BACK, COUNSEL, I KNOW YOU WANT TO

24   RESPOND, AND IT'S IMPORTANT.

25          MR. MCMORROW:  I DO VERY MUCH, YOUR HONOR.  THANK YOU.

1           THE COURT:  OF COURSE.

2           MR. MCMORROW:  THE INFORMATION THAT WOULD NEED TO BE

3    GOTTEN ABOUT THE CLASS MEMBERS IN ORDER TO GIVE THEM NOTICES IS

4    JUST THEIR NAMES AND ADDRESSES, AND THAT CAN CERTAINLY BE

5    GOTTEN FROM THE CARRIERS.  BUT I THINK IF YOUR HONOR HAS ANY

6    CONCERN ABOUT WHETHER THE THIRD PARTIES THAT MR. SNYDER

7    IDENTIFIED IN HIS DECLARATION CAN ACTUALLY PROVIDE ACCURATE

8    CONTACT INFORMATION FOR THE CLASS MEMBERS WHO ARE IDENTIFIED IN

9    THE M-QUBE LIST, WE WOULD BE HAPPY TO SUBMIT A DECLARATION FROM

10   -- WE'VE BEEN TALKING ALREADY TO ONE OF THOSE SERVICES, A.B.

11   DATA, AND WE WOULD BE HAPPY TO GET A DECLARATION FROM THEM IF

12   IT WOULD HELP THE COURT IN ITS DETERMINATION OF THIS MOTION.

13           IT'S NOT -- FROM OUR PERSPECTIVE, IT'S NOT A

14   PARTICULARLY DAUNTING TASK TO DETERMINE THOSE NUMBERS -- OR TO

15   DETERMINE THOSE NAMES AND ADDRESSES FROM RECORDS THAT A.B. DATA

16   AND NEWSTAR INFORMATION SERVICES HAVE, SO WE WOULD BE HAPPY TO

17   PROVIDE THAT INFORMATION TO THE COURT, IF IT WOULD HELP.

18           THE COURT:  YOU HAVEN'T TAKEN THAT STEP TO DATE

19   BECAUSE, COUNSEL?

20           MR. MCMORROW:  BECAUSE THERE'S NO REASON TO INCUR THAT

21   COST.  YOU KNOW, WE WERE PLANNING ON INCURRING THAT COST WHEN

22   IT CAME TIME TO GIVE NOTICE TO THE CLASS.  IT'S A COMMERCIAL

23   SERVICE.

24           THE COURT:  I UNDERSTAND.

25           MR. MCMORROW:  IT'S NOT FREE.  BUT WE CAN CERTAINLY --

```
 1              THE COURT:  YOU DIDN'T VIEW IT AS AT ALL NECESSARY

 2     BECAUSE --

 3              MR. MCMORROW:  NO, BECAUSE IN TERMS OF ASCERTAINABILITY

 4     OF THE CLASS, AND THIS GOES BACK TO WHAT THE COURT IN PAPA

 5     JOHN'S SAID, IN TERMS OF ASCERTAINABILITY OF THE CLASS, WE'VE

 6     ASCERTAINED THE CLASS.  AS THE COURT NOTED, THE CLASS IS THE

 7     55,123 NUMBERS ON THAT LIST.  PUTTING A NAME AND ADDRESS TO

 8     THOSE PHONE NUMBERS IS A MATTER FOR ANOTHER DAY.  IT'S NOT A

 9     MATTER FOR CLASS CERTIFICATION.  IT DOESN'T CHANGE

10     ASCERTAINABILITY.  BUT IF IT WOULD ALLAY THE COURT'S CONCERNS

11     ABOUT MANAGEABILITY TO GET TESTIMONY FROM THOSE -- FROM ONE OF

12     THOSE THIRD-PARTY SERVICES SAYING THAT THEY CAN PROVIDE IT, WE

13     WOULD BE HAPPY TO DO IT, AND WE COULD GET THAT TO THE COURT

14     WITHIN A WEEK.

15              THE COURT:  DO YOU KNOW FROM THOSE SERVICES, HAVING AT

16     LEAST TALKED TO THEM PRELIMINARILY, WHAT THEIR SUCCESS RATE IS?

17     WHEN YOU TAKE A BLOCK OF NUMBERS, SUCH AS 55,000 CELL PHONE

18     NUMBERS, THAT I GUESS GO BACK IN TIME -- THESE ARE THE NUMBERS

19     THAT WERE UTILIZED FIVE YEARS AGO, RIGHT?

20              MR. MCMORROW:  YES.

21              THE COURT:  THEY'RE NOT CURRENT NUMBERS NECESSARILY.

22     THEY COULD BE.

23              MR. MCMORROW:  YOU ASKED, YOUR HONOR, ABOUT THE

24     TURNOVER RATE ON CELL PHONE NUMBERS, AND I'M KIND OF SPEAKING A

25     LITTLE OUT OF SCHOOL HERE BECAUSE I'M -- JUST BASED ON WHAT
```

1        I'VE HEARD FROM OTHER PEOPLE IN OTHER CASES, I THINK THE

2   TURNOVER RATE FOR CELL PHONE NUMBERS IS ABOUT 1 PERCENT PER

3   YEAR, SO ABOUT 1 PERCENT OF TURNOVER PER YEAR.

4        THE COURT:  SO OF THE 55,000 MAYBE IT'S ABOUT

5   5 PERCENT, GIVE OR TAKE.

6        MR. MCMORROW:  THAT WOULD BE A GUESS.

7        THE COURT:  NOBODY IS GOING TO HOLD ANYBODY TO IT, JUST

8   TO GIVE US AN ORDER OF MAGNITUDE.

9        MR. MCMORROW:  YES.  AND SO I KNOW THAT -- I CAN'T PUT

10  A NUMBER ON WHAT PERCENTAGE OF THE 55,123 THAT A.B. DATA OR

11  NEWSTAR WOULD BE ABLE TO GET ACCURATE ADDRESSES FOR, BUT IT'S A

12  VERY, VERY HIGH PERCENTAGE.

13       THE COURT:  OKAY.

14       MR. MCMORROW:  AND CERTAINLY IN TERMS -- IT'S A

15  QUESTION OF GIVING NOTICE, OKAY, AND THE SUPREME COURT HAS

16  TALKED ABOUT WHAT DUE PROCESS REQUIRES ABOUT NOTICE, AND I

17  THINK THE NUMBER THAT I RECALL FROM THE CASES ABOUT DUE PROCESS

18  SAY THAT IF YOU'RE ABLE TO SUCCESSFULLY GIVE NOTICE TO

19  70 PERCENT OF THE CLASS THAT THAT MEETS WITH DUE PROCESS.  I

20  DON'T THINK 97 PERCENT OF THE CLASS WOULD PROBABLY BE MUCH OF

21  AN ISSUE HERE.  I THINK THE SOPHISTICATION OF THESE SERVICES,

22  AND THE INFORMATION THAT THEY MAINTAIN, AND THE DATABASES THAT

23  THEY USE, I THINK IT'S VERY LIKELY THAT IT WILL BE AN EXTREMELY

24  HIGH PERCENTAGE, CLOSE TO 100, THAT THEY CAN SUCCESSFULLY

25  IDENTIFY AND GIVE NOTICE TO THE CLASS MEMBERS.

1        AGAIN, YOUR HONOR, AS THE *PAPA JOHN'S* COURT MENTIONS,

2    THIS REALLY IS A MATTER OF NOTICE.  IT'S NOT A MATTER OF

3    ASCERTAINABILITY.  BUT TO THE EXTENT THAT THE COURT THINKS IT

4    COULD PRESENT A MANAGEABILITY PROBLEM, WE WOULD BE HAPPY TO PUT

5    FORWARD A STATEMENT -- AN AFFIDAVIT FROM SOMEONE WITH ONE OF

6    THOSE COMPANIES.

7        WOULD YOU LIKE THAT, YOUR HONOR?

8        THE COURT:  I DON'T KNOW.  LET ME THINK ABOUT IT.  LET

9    ME SEE IF MR. CASPER WANTS TO COMMENT ON THAT.

10       MR. MCMORROW:  OKAY.  THANK YOU, YOUR HONOR.

11       MR. CASPER:  SO, YOUR HONOR, MR. MCMORROW'S SUGGESTION

12   OF GETTING AN AFFIDAVIT FROM ONE OF THESE THIRD-PARTY COMPANIES

13   WOULDN'T HELP AT ALL, AND THE REASON IT WOULDN'T HELP AT ALL IS

14   BECAUSE THOSE COMPANIES KNOW NOTHING ABOUT TEXT PLANS AS FAR AS

15   ANY EVIDENCE IN THE RECORD IS.  SO HIS SUGGESTION IS NOT GOING

16   TO SOLVE THE PROBLEM.

17       THE COURT:  WHAT HE'S TELLING US IS THEY COULD GET US

18   THE NAMES OF THE PEOPLE.

19       MR. CASPER:  WELL, THAT'S WHAT HE SAYS, BUT THE ONLY

20   EVIDENCE ON WHICH HE'S BASING THAT IS PARAGRAPH 34 OF MR.

21   SNYDER'S SUPPLEMENTAL DECLARATION, WHICH DOESN'T HAVE ANY

22   DETAIL THAT WOULD PROVIDE HOW FAR BACK IT GOES, HOW MANY, WHICH

23   CARRIERS, OR ANY OF THAT, SO THIS IS MR. MCMORROW OFFERING

24   SOMETHING THAT THERE'S NO EVIDENCE ON.  AND THEN HE SAID, WELL,

25   IT'S REALLY NOT GOING TO BE TOO MUCH OF A PROBLEM BECAUSE THE

1    TURNOVER RATE MIGHT ONLY BE 1 PERCENT.  AGAIN, THERE'S NO

2    EVIDENCE OF THAT HERE, BUT THERE IS EVIDENCE TO THE CONTRARY.

3    IF THE TURNOVER RATE IS ONLY 1 PERCENT, HOW IS IT THAT

4    27 PERCENT OF THIS PARTICULAR PROPOSED CLASS SAID THEIR NUMBER

5    HAD BEEN DISCONNECTED -- OR WHEN IT WAS CALLED IT WAS

6    DISCONNECTED OR NO LONGER IN SERVICE.  SO THAT'S A NUMBER

7    THAT'S, WHAT, FIVE TIMES THE RATE THAT MR. MCMORROW PROPOSES.

8         SO THE SUGGESTION THAT HE'S MAKING OF GOING OUT AND

9    GETTING A DECLARATION, IN THE FIRST PLACE, IT'S WAY TOO LATE

10   FOR THAT.  IN THE SECOND PLACE, IT'S NOT GOING TO SOLVE THE

11   PROBLEM BECAUSE OF THE TEXT MESSAGE ISSUE, BLOCKING ISSUE, AND

12   ALSO THE TURNOVER RATE IS JUST SO HIGH.

13        THANK YOU, YOUR HONOR.

14        THE COURT:  ANYTHING ELSE, COUNSEL?  I WANT TO THINK

15   ABOUT WHETHER I WANT ANYTHING ELSE.  I'M INCLINED TO KEEP THE

16   RECORD IN FRONT OF ME, COUNSEL, AS IT IS, TAKE IT UNDER

17   SUBMISSION AND THINK IT THROUGH.  YOU'VE RAISED INTERESTING

18   ISSUES ON BOTH SIDES, AND THIS PARTICULAR CASE CREATES AN

19   INTERESTING SITUATION FOR REVIEW BY THE COURT, SO I'LL GO BACK

20   THROUGH IT ALL AGAIN, I CAN PROMISE YOU THAT, SIR.

21        MR. MCMORROW:  I APPRECIATE THAT, YOUR HONOR.  THE

22   TURNOVER -- MR. CASPER SUGGESTS THAT THE TURNOVER RATE OF

23   NUMBERS IS SIGNIFICANTLY HIGHER HERE THAN WHAT I JUST TOLD THE

24   COURT.  THAT'S REALLY A RED HERRING.  IT DOESN'T REALLY MATTER.

25   EVEN IF ALL THE NUMBERS HAVE TURNED OVER SINCE 2008, THE

1      RECORDS OF THOSE CLASS MEMBERS ARE STILL AVAILABLE.  I MEAN,

2      PUTTING A NAME AND ADDRESS -- A CURRENT NAME AND ADDRESS TO THE

3      PERSON THAT OWNED THAT NUMBER IN 2008 IS SOMETHING THAT CAN BE

4      DONE, EITHER THROUGH THE CARRIERS OR THESE THROUGH THIRD

5      PARTIES.  AND, FRANKLY, I DIDN'T EXPECT THAT BECAUSE IT'S AN

6      ISSUE OF IDENTIFYING THEM FOR PURPOSES OF GIVING NOTICE.  IT'S

7      NOT SOMETHING THAT WAS DISCUSSED AT ANY GREAT LENGTH IN THE

8      BRIEFS.  AGAIN, HOWEVER, IF IT IS AN ISSUE FOR THE COURT, WE'RE

9      HAPPY TO SUPPLEMENT THAT INFORMATION.

10     THAT'S THE ONLY INFORMATION THAT'S NEEDED TO IDENTIFY

11     THE CLASS.  WE ALREADY HAVE THE LIST OF NUMBERS TO WHICH THE

12     TEXT MESSAGES WERE SENT.  THE CLASS IS ASCERTAINABLE FROM THAT

13     LIST.  THIS OTHER INFORMATION IS NECESSARY ONLY FOR THE

14     PURPOSES OF IDENTIFYING THE CLASS MEMBERS, NOT FOR ASCERTAINING

15     THE CLASS.

16     THANK YOU, YOUR HONOR.

17     (DISCUSSION HELD OFF THE RECORD.)

18     THE COURT:  AS I PROMISED, COUNSEL, I WILL TAKE THIS

19     MATTER UNDER SUBMISSION.  IT'S AN INTERESTING CASE, AND I'LL GO

20     THROUGH IT ALL AGAIN.  WHAT YOU HEARD TODAY WAS JUST THE

21     COURT'S TENTATIVE.  YOUR COMMENTS/ANSWERS TO QUESTIONS HAVE

22     BEEN VERY HELPFUL THIS MORNING, AND YOU'LL GET A WRITTEN ORDER

23     FROM THE COURT.  I'M GOING TO SAY AGAIN NEXT YEAR, BUT THAT'S

24     NOT THAT FAR AWAY.  THANK YOU.

25     MR. MCMORROW:  IT WON'T BE NEXT DECEMBER, YOUR HONOR.

```
 1          THE COURT:  NO, IT WON'T BE.  EVERYBODY'S FROM OUT OF

 2   TOWN, SAFE TRAVELS BACK, AND WE APOLOGIZE FOR THE SAN DIEGO

 3   WEATHER THIS MORNING.  YOU BOTH DESERVE NICER COMING FROM THE

 4   MIDWEST AND THE EAST.

 5          MR. MCMORROW:  IT STILL BEATS CHICAGO WEATHER, YOUR

 6   HONOR.

 7   (THE HEARING CONCLUDED.)

 8

 9

10

11

12

13

14

15                 C E R T I F I C A T E

16

17          I, GAYLE WAKEFIELD, CERTIFY THAT I AM A DULY
     QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
18   STATES DISTRICT COURT, THAT THE FOREGOING IS A TRUE AND
     ACCURATE TRANSCRIPT OF THE PROCEEDINGS AS TAKEN BY ME IN THE
19   ABOVE-ENTITLED MATTER ON DECEMBER 19, 2013; AND THAT THE FORMAT
     USED COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED
20   STATES JUDICIAL CONFERENCE.

21

22   DATED: DECEMBER 31, 2013      /S/ GAYLE WAKEFIELD
                                   GAYLE WAKEFIELD, RPR, CRR
23                                 OFFICIAL COURT REPORTER

24

25
```