1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11

12

13

14

15

16

NEIL SMITH, individually and on behalf of a class of similarly situated individuals,

Plaintiff,

vs.

MICROSOFT CORPORATION, a Washington corporation,

Defendant.

Case No. 11-CV-1958 JLS (BGS)

**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

(ECF No. 38)

17

18

19

20

21

22

23

24

25

26

27

28

Presently before the Court is Plaintiff Neil Smith's ("Plaintiff" or "Smith") Motion for Class Certification. (ECF No. 38.) Also before the Court are Defendant Microsoft Corp.'s ("Defendant" or "Microsoft") Response in Opposition (ECF No. 48 (sealed)), Defendant's Supplemental Document to its Response in Opposition (ECF No. 55), Plaintiff's Reply in Support (ECF Nos. 63–65 (sealed)), Plaintiff's Evidentiary Objections to the Evidence Submitted in Support of Defendant's Opposition (ECF No. 66 (sealed)), Defendant's Response in Opposition to Plaintiff's Evidentiary Objections (ECF No. 69), and Plaintiff's Reply in Further Support of his Evidentiary Objections (ECF No. 77). Also before the Court are Microsoft's Notice of Supplemental Authority (ECF No. 76) and Plaintiff's Response to Microsoft's Notice (ECF No. 79.) Oral argument was heard on this matter on December 19, 2013. Having considered the parties' arguments and the law, the Court **DENIES** Plaintiff's Motion.

**BACKGROUND**

Smith, a resident of Illinois, brings this putative class action against Microsoft, a Washington corporation, for sending unauthorized text messages promoting Microsoft's Xbox to cellular telephones in violation of the Telephone Consumer Protection Act of 1991 ("TCPA" or "Act"), 47 U.S.C. § 227.[1] (*See generally* Compl., ECF No. 1.)

In September 2008, Microsoft's advertising agencies used text-message advertising company Come&Stay, Inc. ("C&S") to send two versions of a text message advertising Microsoft's new Xbox website ("the Xbox Texts"). (Mot. for Class Cert. 13, ECF No. 34-1.) On September 12, 2008, SMS aggregator m-Qube sent 92,927 of these messages to 91,708 unique phone numbers ("the m-Qube List"). (*Id.*) Smith received one such message. (Compl. ¶ 16, ECF No. 1.) The "from" field of the message identified SMS short code "88202." (*Id.* ¶ 17.) The body of the text message read:

> FREE XBOX GAMES CONTENT! HTTP://XBOX.MOBI/SM1.
> PERSONALIZE YOUR PHONE WITH RINGTONES,
> WALLPAPER, TRAILERS AND GAME UPDATES.
> TO OPT-OUT REPLY END.

Smith claims to have neither requested nor consented to receive the message. (Mot. for Class Cert. 14, ECF No. 34-1.)

Smith brings this claim on behalf of himself and a class of others similarly situated, defining the class as "[a]ll individuals that [*sic*] received a text message from short code 88202 containing the term 'Xbox' on September 12 or September 13, 2008." (*Id.* at 15.) Allegedly, some members of the class suffered actual damages by having to pay their respective wireless carriers a fee for receipt of the text message. (Compl. ¶ 31, ECF No. 1.) Although omitting information about his own wireless plan, Smith states that "consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam." (*Id.* ¶ 3.) Further, Microsoft has caused all members

---

[1] Text messages are calls under the TCPA. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

of the class to suffer actual "harm and damages" by subjecting them to "the aggravation that necessarily accompanies wireless spam." (*Id.*)  Consequently, Smith seeks an injunction requiring Microsoft to cease "all wireless spam activities" and an award of actual and statutory damages to the class members, together with costs and attorneys' fees. (*Id.* at 7.) Smith requests a minimum of $500.00 for each violation of the Act, and up to treble damages. (*Id.* ¶ 32.)

On October 20, 2011, Microsoft moved to dismiss for lack of subject matter jurisdiction. (ECF No. 6.)  The Court vacated the hearing on the motion scheduled for January 5, 2012. (ECF No. 12.)  In a July 20, 2012 Order, the Court denied the motion, finding that Smith had standing to bring this action. (ECF No. 15.) On August 3, 2012, Microsoft answered the Complaint.  (ECF No. 16.)

On December 14, 2012, Magistrate Judge Skomal granted the parties' joint motion for entry of a stipulated protective order.  (ECF No. 23.)  On April 24, 2013, Smith filed the instant Motion for Class Certification.

## LEGAL STANDARD

Class certification is governed by Federal Rule of Civil Procedure 23.  Under Rule 23, the party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one of the three requirements of Rule 23(b) have been met.  In addition to the Rule 23 requirements, the party seeking class certification must provide a workable class definition by showing that the members of the class are identifiable.

Rule 23(a) provides four requirements that must be met in any class action: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

As to Rule 23(b), a plaintiff need only show that any one of the three described scenarios is satisfied.  Smith seeks certification of the proposed class pursuant to Rule

1  23(b)(3), and thus he must demonstrate that (1) "questions of law or fact common to
2  class members predominate over any questions affecting only individual members," and
3  (2) "a class action is superior to other available methods for fairly and efficiently
4  adjudicating the controversy."

5       "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v.*
6  *Dukes*, 131 S. Ct. 2541, 2551 (2011). Rather, "[a] party seeking class certification must
7  affirmatively demonstrate his compliance with the Rule—that is, he must be prepared
8  to prove that there are in fact sufficiently numerous parties, common questions of law
9  or fact, etc." *Id.* The Court must engage in a "rigorous analysis," often requiring some
10 evaluation of the "merits of the plaintiff's underlying claim," before finding that the
11 prerequisites for certification have been satisfied. *Id.* "Although some inquiry into the
12 substance of a case may be necessary[,]" however, "it is improper to advance a decision
13 on the merits to the class certification stage." *Staton v. Boeing Co.*, 327 F.3d 938, 954
14 (9th Cir. 2003) (citations and internal quotation marks omitted).

15                                    **ANALYSIS**

16      Microsoft opposes class certification on multiple grounds, arguing that Plaintiffs
17 have failed to (1) set forth an objectively identifiable and ascertainable class; (2) satisfy
18 Rule 23(a)'s commonality, typicality, and adequacy requirements; (3) satisfy Rule
19 23(b)(3)'s predominance and superiority requirements, or (4) establish standing to bring
20 this action. As the Court finds that Rule 23(b)(3)'s superiority requirement is
21 dispositive of Plaintiffs' class certification motion, the Court does not address all of the
22 parties' arguments, but rather focuses its analysis on this key issue.

23 **I.     Rule 23(b)(3)'s Superiority Requirement**

24      Rule 23(b)(3) requires a party seeking class certification to demonstrate that "a
25 class action is superior to other available methods for fairly and efficiently adjudicating
26 the controversy." "[S]uch a determination lies in an area where the trial court's
27 discretion is paramount." *Rutledge v. Elec. Hose & Rubber Co.*, 511 F.2d 668, 673 (9th
28 Cir. 1975). "This determination necessarily involves a comparative evaluation of

alternative mechanisms of dispute resolution." *Knutson v. Schwan's Home Serv., Inc.*, Civil No. 3:12-cv-0964-GPC-DHB, 2013 WL 4774763, at *10 (S.D. Cal. Sept. 5, 2013) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).  If a class action is merely "just as good as" an alternative method of handling the controversy, certification is improper.  *Rutledge*, 511 F.2d at 673.

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case."  *Hanlon*, 150 F.3d at 1023 (citation omitted).  Federal Rule of Civil Procedure 23(b)(3) provides a non-exhaustive list of factors pertinent to determining superiority, including:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Plaintiff argues that a class action is the superior method for adjudicating this controversy because the claims of Plaintiff and the class involve identical alleged TCPA violations based on a single act by Microsoft and its agents.  (Mot. for Class Cert. 31, ECF No. 34-1.)  Plaintiff argues that most members of the proposed class would find litigating their claims individually prohibitive, and that litigating individual actions would be judicially inefficient.  (*Id.*)

Conversely, Microsoft argues that a class action is not the superior method of resolving this dispute.  First, Microsoft worries that individual testimony is needed to determine (1) whether the numbers at issue could receive text messages in September 2008, and (2) the identities of the subscribers in 2008.  (Def.'s Resp. in Opp'n 19, ECF No. 48 (sealed).)   Further, Microsoft contends that whether each member of the proposed class expressly consented will require individual proof.  (*Id.* at 19–20.) Lastly, Microsoft argues that the unavailability of necessary information precludes

1  certification.  (*Id.* at 22–23.)  The Court agrees with Microsoft and, therefore, finds the
2  superiority requirement to be unsatisfied.

3  **A.**      ***Plaintiffs' Interests in Individually Controlling Prosecution***

4        "Where damages suffered by each putative class member are not large, this factor
5  weighs in favor of certifying a class action." *Zinser v. Accufix Research Inst., Inc.*, 253
6  F.3d 1180, 1190, *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001)
7  (citation omitted).  "The most compelling rationale for finding superiority in a class
8  action" is the "existence of a negative value suit." *Castano v. Am. Tobacco Co.*, 84
9  F.3d 734, 748 (5th Cir. 1996) (citations omitted); *see also Allison v. Citgo Petroleum
10 Corp.*, 151 F.3d 402, 420 (5th Cir. 1998) (citations omitted).  In other words, where
11 there are no other realistic possibilities for redress and plaintiffs would be "unable to
12 proceed as individuals because of the disparity between their litigation costs and what
13 they hope to recover," certification is justified.    *Local Joint Exec. Bd. of
14 Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.
15 2001).

16       The TCPA allows a litigant to seek statutory damages of $500 for each violation,
17 and potentially treble damages if the court finds the defendant to have acted willfully
18 or knowingly.  47 U.S.C. § 227(b)(3).  While this sum may sound paltry, "[t]he
19 [TCPA's] statutory remedy is designed to provide adequate incentive for an individual
20 plaintiff to bring suit on his own behalf." *Forman v. Data Transfer, Inc.*, 164 F.R.D.
21 400, 404 (E.D. Pa. 1995).  Even though the TCPA, unlike many consumer protection
22 statutes, does not provide for attorney's fees, an alternative method of handling the
23 instant controversy exists: namely, individual plaintiffs may bring TCPA cases in small
24 claims court without an attorney. *See, e.g.*, 47 U.S.C. § 227(b)(3); *Mims v. Arrow Fin.
25 Servs., LLC*, 132 S. Ct. 740 (2012); *Cellco P'ship v. Wilcrest Health Care Mgmt. Inc.*,
26 Civil Action No. 09-3534 (MLC), 2012 WL 1638056, at *8 (citing 137 Cong. Rec.
27 S16,204 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)) (explaining that
28 Congress intended plaintiffs to pursue their TCPA claims in state small claims courts);

1    137 Cong. Rec. 30,821–22 (1991).

2         Plaintiff contended during oral argument that small claims court is not a viable

3    alternative forum because (1) proving the use of an automatic telephone dialing system

4    ("ATDS") is prohibitively difficult and costly for an individual plaintiff, and (2) small

5    claims courts generally do not provide injunctive relief, and therefore the remedy is

6    insufficient. (*See* Hr'g Tr. 16, ECF No. 82.)  The Court, however, disagrees.

7         First, the Court believes, at least on the facts before it, that proving the use of an

8    ATDS would not be overly difficult.  On September 12, 2008, C&S had the Xbox Texts

9    sent to 91,708 unique phone numbers. (Mot. for Class Cert. 13, ECF No. 34-1.)  This

10   raises an inference that these numbers were not individually and manually dialed.

11        Second, the Court is unconvinced by Plaintiff's arguments concerning the

12   availability of injunctive relief.   Plaintiff is incorrect that injunctive relief is

13   categorically unavailable in small claims court.   While the law may vary from

14   jurisdiction to jurisdiction, some states allow small claims courts to provide injunctive

15   relief.  *See, e.g.*, Cal. Civ. Proc. Code § 116.220 (granting small claims courts

16   jurisdiction over actions for injunctive relief when provided for by statute).  More

17   importantly, however, on the facts before this Court, an injunction does not seem

18   warranted.  Microsoft sent the Xbox Texts on a single day more than five years ago.

19   Plaintiff has presented no proof that Microsoft has engaged in any other acts in

20   violation of the TCPA in the intervening years.  Thus, the Court believes that small

21   claims court would be a realistic possibility of redress for this particular dispute, as the

22   proposed class members have the incentive and means to bring TCPA suits on their own

23   without expending significant resources.

24        On the other hand, it would certainly be easier, and therefore likely preferable,

25   for individual plaintiffs to permit Plaintiff and proposed class counsel to litigate this

26   issue on their behalf without having to expend any personal effort.  Accordingly, the

27   Court finds this factor to be neutral.

28   ///

1    **B.      Litigation Already Commenced**

2           "This factor is intended to serve the purpose of assuring judicial economy and

3    reducing the possibility of multiple lawsuits." *Zinser*, 253 F.3d at 1191 (citation and

4    internal quotation marks omitted).   A class action may be inappropriate if multiple

5    actions are already pending due to the risk of inconsistent judgments. *Id.* (citation and

6    internal quotation marks omitted).   The prior existence of multiple suits could also

7    signal that individual actions are sufficient. *Id.* (citation and internal quotation marks

8    omitted).   During oral argument, Microsoft stated that no other litigation is pending

9    concerning the Xbox Texts. (Hr'g Tr. 35–36, ECF No. 82.) Accordingly, because there

10   is no risk of inconsistent judgments and there are no pending suits suggesting that

11   individual actions are sufficient, this factor favors certification.

12   **C.      Desirability of Concentrating Litigation in This Forum**

13          In his Complaint, Plaintiff asserts that venue is proper in this forum because

14   "Defendant resides in this District and because a substantial part of the events giving

15   rise to the claim occurred in this District, as the Defendant's agent that transmitted the

16   text message calls also resides in this district."  (Compl. ¶ 10, ECF No. 1.)  Whether

17   venue lies in this district, however, is a different consideration from whether this forum,

18   over all others, makes the most logistical sense.   *See* Alexander Moeser, Note,

19   *Precluding the Absent Claimant from Re-Arguing Class Certification: Pragmatism and*

20   *the "Day in Court" Ideal*, 92 Ky. L.J. 817, 837 (2004) ("A court may find it unfair or

21   unwise to concentrate litigation in its district if for example, while venue and

22   jurisdiction would be technically proper, there might be a district that would be more

23   convenient for all of the parties except the initial plaintiff.").  The Court finds that this

24   factor weighs against certification.

25          While C&S may have resided in this District and sent the Xbox Texts from

26   within this District (Compl. ¶ 10, ECF No. 1), C&S's United States office closed in

27   2009 (Resp. in Opp'n 15, ECF No. 48 (sealed) (citing Decl. of Michael Richmond ISO

28   Resp. in Opp'n ("Richmond Decl.") ¶ 9, ECF No. 48-8 (sealed))), and C&S dissolved

1  entirely in 2012.  (Decl. of Beatrice Delmas-Linel ISO Resp. in Opp'n ("Delmas-Linel

2  Decl.") Ex. 1, ECF No. 46-11.)  C&S's parent company resides in Paris, France.  (*See*

3  *id.*)  Michael Richmond and Shawn McNamara, seemingly the only C&S employees

4  who may be able to shed light on C&S's marketing practices, both reside in Florida.

5  (Richmond Decl. ¶ 2, ECF No. 48-8 (sealed); Decl. of Shawn K. McNamara ISO Resp.

6  in Opp'n ("McNamara Decl.") ¶ 2, ECF No. 46-14.)  And, while Microsoft may "do[]

7  business throughout the United States, including in this District," Microsoft is

8  nonetheless a Washington corporation with its principal place of business in

9  Washington.  (Compl. ¶ 7, ECF No. 1.)

10      Moreover, Smith is a resident of Illinois.  (*Id.* ¶ 6.)  A perusal of the list of

11  potential class members shows that plaintiffs from nearly every area code in the United

12  States are involved in this action, and that "the vast bulk of . . . the proposed class

13  members live in the Midwest."  (*See* Meyers Decl. Ex. 3, ECF No. 65 (sealed); Hr'g Tr.

14  53, ECF No. 82.)  Even the parties' counsel are not tied to this District.  Smith is

15  primarily represented by attorneys from Chicago, and Microsoft by attorneys from

16  Philadelphia.  Thus, it is unlikely that evidence will be found in this District or that this

17  forum will be convenient to anyone.

18      The Ninth Circuit has stated that, "where the potential plaintiffs are located

19  across the country and where the witnesses and the particular evidence will also be

20  found across the country, plaintiffs have failed to establish any particular reason why

21  it would be especially efficient for this Court to hear such a massive class action

22  lawsuit."  *Zinser*, 253 F.3d at 1191–92 (quoting *Haley v. Medtronic, Inc.*, 169 F.R.D.

23  643, 653 (N.D. Cal. 1996)).  For the reasons outlined above, this District has no

24  particular interest in hearing this case.  On the other hand, given that Microsoft resides

25  in Washington, that seems an appropriate and convenient forum for this case that is

26  likely to yield relevant evidence.  Or, given the concentration of plaintiffs in the

27  Midwest and Smith's own residency in Illinois, a court in the Seventh Circuit would be

28  a logical choice to hear this dispute.  Or, given that all former C&S employees reside

1  in Florida, more evidence may be available there than elsewhere, making it a convenient

2  forum.  In sum, this District is not desirable, and the Court can think of numerous

3  jurisdictions that are desirable.

4       At oral argument, Plaintiff argued that "at this point . . . the case has been

5  pending here for over two years, and this Court has become very familiar with the

6  case."  (Hr'g Tr. 16, ECF No. 82.)  Thus, Plaintiff contends that, while "there's no

7  reason to say that this Court was any more desirable than any other court" when the

8  case was filed, at this point the Court "has a lot of specific knowledge and expertise"

9  about the case.  (*Id.* at 20.) While it is true that this case has been pending before this

10  Court since August 2011, in that time the Court has only addressed Microsoft's motion

11  to dismiss for lack of standing and issues related to the present Motion.  (*See* ECF Nos.

12  15, 80.)  Thus, the Court is hardly an "expert," as Plaintiff suggests, concerning this

13  matter.  While the fact that this matter has been pending before this Court for some time

14  may favor of Plaintiff, this consideration alone cannot outweigh the otherwise very

15  significant lack of ties to this District.  Accordingly, this factor favors Microsoft.

16  ### D.    *Likely Management Difficulties*

17       This final factor "encompasses the whole range of practical problems that may

18  render the class action format inappropriate for a particular suit."  *Eisen v. Carlisle &*

19  *Jacquelin*, 417 U.S. 156, 178 (1974)).   Among other considerations, "[t]his

20  'manageability' requirement includes consideration of the potential difficulties in

21  notifying class members of the suit, calculation of individual damages, and distribution

22  of damages."  *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1304

23  (9th Cir. 1990) (citation omitted).  In sum, "when the complexities of class action

24  treatment outweigh the benefits of considering common issues in one trial, class action

25  treatment is not the 'superior' method of adjudication."  *Zinser*, 253 F.3d at 1192

26  (citations omitted).  The Court has several significant qualms about the manageability

27  of this class action, and accordingly this factor favors Microsoft.

28  ///

1     *i.*     *Prior Express Consent*

2       Primarily, the Court has significant evidentiary concerns. In particular, the Court

3 believes that it may be impossible—or, at the least, certainly unduly difficult and

4 burdensome—to resolve the issue of express prior consent. *Lee v. Stonebridge Life*

5 *Insurance Company*, cited by Plaintiff, held that potentially individualized consent

6 issues did not justify denial of class certification because "merits discovery should

7 reveal [whether individuals consented]." 289 F.R.D. 292, 295 (N.D. Cal. 2013). Here,

8 however, it does not seem likely that discovery will provide the necessary answers,

9 because the information simply no longer exists.

10       C&S's United States office closed in 2009. (Resp. in Opp'n 15, ECF No. 48

11 (sealed) (citing Richmond Decl. ¶ 9, ECF No. 48-8 (sealed)).) Robert Fuchs, C&S's

12 U.S. Director of Mobile Marketing, died in December 2011. (*Id.* (citing Richmond

13 Decl. ¶ 3, ECF No. 48-8 (sealed)).) C&S subsequently dissolved in 2012. (Delmas-

14 Linel Decl. ¶ 6, Ex. 8, ECF No. 46-10.) C&S's parent company, Social Mix Media

15 Group "(SMMG"), has retained only C&S's accounting records. (*Id.* ¶ 6, Ex. 8.) A

16 review of those records did not reveal whether C&S was itself the source of the phone

17 numbers in the m-Qube List or whether a third party may have been the original source

18 of those numbers. (*Id.* Ex. 8.) Further investigation into those records has concluded,

19 however, resulting in nothing but dead ends. (*See* Hr'g Tr. 34, ECF No. 82.) Because

20 all other records were destroyed—by SMMG, not Microsoft—no further information

21 is likely to surface. (*Id.* at 35.) In light of this unusual factual scenario, it seems

22 unlikely that the parties have the ability to discover the consent language, if any, that

23 was presented to members of the proposed class.

24       The absence of express prior consent, however, is one of the three elements of

25 a TCPA claim, which Plaintiff bears the burden of satisfactorily establishing for the

26 Court.[2] Indeed, in his response to Microsoft's notice of supplemental authority,

27

28       [2] This Court previously held, in consensus with other courts in this District, that express prior consent was an affirmative defense that the defendant bears the burden of proving. *See Connelly v. Hilton Grand Vacations Co.*, at *3 (S.D. Cal. June 11, 2012) (citations omitted).

Plaintiff concedes that the burden of demonstrating a lack of express prior consent in a TCPA action lies with the plaintiff.  (*See* Resp. to Def.'s Notice of Supp. Auth. 2, ECF No. 79.)  Plaintiff argues, however, that "per the Ninth Circuit's decision in *Meyer* [*v. Portfolio Recovery Associates, LLC*], a plaintiff satisfies his burden in demonstrating lack of consent under the TCPA when the defendant is unable to show a 'single instance' of 'express consent' given prior to sending the text message," effectively shifting the burden in substance, if not in form, to the defendant.  (*Id.*)  This Court, however, finds *Meyer* distinguishable.

First, *Meyer* involved a debt collector defendant.  Pursuant to a 2008 FCC declaratory ruling cited by the Ninth Circuit in *Meyer*, debt collectors bear the burden of proving consent.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, Request of ACA Int'l for Clarification & Declaratory Ruling*, 23 FCC Rcd. 559, 565 (Jan. 4, 2008).  Neither Microsoft nor C&S, however, are debt collectors.  Therefore, this Court is not convinced that the same policy concerns are at play here.  Indeed, that an FCC ruling clarified that debt collectors bear the burden of proving express prior consent would tend to suggest that other defendants do not bear the same burden.

Second, *Meyer* involved a Rule 23(b)(2) class.  *Meyer* accordingly evaluated the consent issue only with regard to the Rule 23(a) commonality and typicality requirements.  This Court's concerns regarding consent, however, relate to the Rule 23(b)(3) inquiries, which the Supreme Court has deemed "far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Commonality may be satisfied if only a single common question exists.  *See Dukes*, 131 S. Ct. at 2556 (quotation omitted).  And, this Court believes that at least a single common question does exist: namely, whether C&S used an ATDS to send the Xbox Texts.  Whether the

---

However, as Microsoft correctly noted during oral argument, that ruling predated the Ninth Circuit's decision in *Meyer v. Portfolio Recovery Associates, LLC*, which noted that express prior consent is actually one of the three elements of a TCPA claim.  *See* 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 277(b)(1)); Hr'g Tr. 18, 34, ECF No. 82.  Thus, Plaintiff's arguments to the contrary are unavailing.  (*See, e.g.*, Hr'g Tr. 13–14, ECF No. 82.)

lack of evidence concerning consent makes this class unmanageable, however, is another inquiry entirely.  Thus, *Meyer*'s single paragraph about consent in the context of Rule 23(a) has little bearing on the more stringent analysis this Court must engage in relative to Rule 23(b).

Accordingly, *Meyer* mandates that it is Plaintiff's burden to show a lack of express prior consent. Without C&S's business records, however, Plaintiff simply will not be able to prove this element of his TCPA claim.  And, even if Plaintiff could somehow prove a lack of prior express consent, it would nonetheless be manifestly unjust to permit more than 55,000 persons to sue a company that is, for the same reasons, incapable of defending itself.  This strongly suggests that the present dispute is generally unfit for resolution via the class action vehicle.

*ii.    Narrowing the Proposed Class to Those Who Received the Xbox Texts*

Second, the "scrubbed" list does not conclusively establish who is a party to this action, and the Court has significant concerns about how this determination would be made.   Plaintiff argues that the wireless "scrub" that removed landline numbers "definitively establishes which numbers sent the text messages were cellular numbers." (Reply 9, ECF No. 63 (sealed).)   However, knowing which numbers were cellular numbers that were *sent* the Xbox Texts is far different from knowing which of those numbers *received* the Xbox Texts.  The class definition covers only "[a]ll individuals that [*sic*] *received*" one of the Xbox Texts, and only persons who received one of the Xbox Texts could have been harmed by Microsoft's alleged TCPA violation.  But the "scrubbed" list does not reveal who actually received one of the Xbox Texts.

For example, it is possible for a cell phone subscriber to disable text messaging capabilities to his cellular number.  (*See, e.g.*, Decl. of David A. Brown ISO Resp. in Opp'n ¶ 3, ECF No. 46-20 (text messaging capability disabled at time Xbox Texts sent); Decl. of Lecia Kaslofsky ISO Resp. in Opp'n ¶ 12, ECF No. 46-13 (six of 163 persons on the m-Qube List whom Microsoft contacted were incapable of receiving text messages in September 2008); *see also* Hr'g Tr. 47–48, ECF No. 82.)  Therefore,

determining whether each of the 55,123 numbers on the "scrubbed" list received one of the Xbox Texts and thus is properly within the class would require the Court and the parties to engage in timely and individualized fact-finding that would be extremely inefficient and unmanageable on a class-wide basis.  Even notifying all potential class members of the lawsuit and asking them to opt-in if they remember receiving one of the Xbox Texts is likely to be ineffective, because it is highly unlikely that, more than five years out, an individual would remember receiving that single unsolicited text message. This suggests that, rather than certifying the class, it may be best to allow individual plaintiffs who know that they received one of the Xbox Texts to decide whether to bring suit.

iii.    *Identifying and Notifying Individual Members of the Class*

Third, the Court is concerned about identifying and providing notice to the class members as individuals, not merely numbers on a list.  Before Plaintiff "scrubbed" the m-Qube List, one of Microsoft's experts calculated that approximately 25% of the numbers were disconnected or no longer in service.  (Def.'s Resp. in Opp'n 10, ECF No. 48 (sealed) (citing Expert Decl. of Prof. Scott Rifkin ¶ 9, ECF No. 46-16).) Further, because more than five years have passed, it is likely that many members of the proposed class have changed their numbers.  Thus, new persons who do not belong in the class might now own numbers encompassed by the class, and persons who should be in the class may no longer own the number that received an Xbox Text.  Thus, while Plaintiff has the phone numbers of people who were sent the Xbox Texts five years ago, he does not have those persons' current information, making identification of the class members a daunting task.

Moreover, in light of the record retention policies of some of the major cellular service providers, it is likely that even subpoenaing the cellular service providers will not yield the necessary identification and contact information.  (*See* Mot. to Strike 12–15, ECF No. 72-2 (sealed); Hr'g Tr. 48–50, ECF No. 82.)  Thus, it would be extraordinarily difficult to identify the class members, communicate to the proposed

1  class members the required Rule 23(c)(2)(B) notices, and send the proposed class
2  members their share of any recovery.  These concerns are relevant to the manageability
3  inquiry.  *See Agne*, 286 F.R.D. at 566.

4        Plaintiff argues that, "to the extent . . . that some of the carriers don't have that
5  information, there are third-party services out there . . . that can do reverse lookups and
6  can get [the necessary] information."  (Hr'g Tr. 23, ECF No. 82.)  But as Microsoft
7  argues in response, this still does not solve the problem, because such third-party
8  services do not have information about subscribers' text messaging plans, and thus the
9  concerns identified above concerning identifying who is a member of the class remain.
10  (*Id.* at 64.)

11  **E.**    ***Conclusion***

12        In light of the Court's concerns, the Court finds that a class action is not the best
13  vehicle for the resolution of this suit.  Only the nonexistence of related lawsuits favors
14  certification, and the Court believes this factor to be a weak one.  On the other hand, the
15  Court has overwhelming concerns about the impossibility of procuring necessary
16  evidence and the manageability of this suit.  The Court therefore finds that Plaintiff has
17  failed to satisfy the superiority requirement, rendering certification of the proposed
18  class inappropriate.  Accordingly, the Court **DENIES** Plaintiff's Motion.

19  **II.**    **Evidentiary Objections**

20        The Court notes that Plaintiff has filed evidentiary objections to various
21  documents and exhibits submitted along with the moving papers.  (ECF No. 66.)
22  Where expert testimony is introduced in support of a motion for class certification, the
23  Court needs to "act as a 'gatekeeper' to exclude junk science" by making sure that
24  testimony is reliable.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir.
25  2011) (citation omitted).  In general, however, strict adherence to the Federal Rules of
26  Evidence is not a prerequisite for class certification, and courts may consider
27  inadmissible evidence in determining whether to certify a class.  *See, e.g.*, *Gonzalez v.*
28  *Millard Mall Servs., Inc.*, 281 F.R.D. 455, 459–60 (S.D. Cal. 2012) (citing *Eisen*, 417

U.S. at 178); *Waine-Golston v. Time Warner Entm't-Advance/New House P'ship*, No. 11cv1057-GPB(RBB), 2012 WL 6591610, at *9 (S.D. Cal. Dec. 18, 2012) (citation omitted); *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) (citations omitted).   Plaintiff's objections do not concern expert testimony. Accordingly, the objected-to evidence is properly before the Court at this stage in the litigation, and the Court **DENIES** Plaintiff's objections.

**CONCLUSION**

In light of the foregoing, the Court **DENIES** Plaintiff's Motion for Class Certification.

**IT IS SO ORDERED**.

DATED:  January 28, 2014

Honorable Janis L. Sammartino
United States District Judge